UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

JOHN ANDRIES BAL, JR.; BUSINESS
WATCHDOG; MERGENT SERVICES,

                  Plaintiffs,

        v.

ITEX CORPORATION; STEVEN WHITE; ERIC
BEST; JOHN WADE; ROBERT BENSON; NYTO
TRADE INCORPORATED; JOHN CASTORO;
IZZY GARCIA,

                  Defendants.

------------------------------------- X

Case No: 13 Civ. 6794 (CM)

## MEMORANDUM OF LAW IN SUPPORT OF ITEX DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

FRANKFURT KURNIT KLEIN & SELZ, P.C.
Edward H. Rosenthal
Jeremy S. Goldman
488 Madison Avenue, 10th Floor
New York, New York 10022
Phone: (212) 980-0120
Fax: (212) 593-9175

*Attorneys for Defendants ITEX Corp., Steven White, Eric Best, John Wade, and Eric Benson*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

PROCEDURAL HISTORY............................................................................................... 3

FACTUAL ALLEGATIONS ........................................................................................... 5

LEGAL STANDARD....................................................................................................... 8

ARGUMENT .................................................................................................................... 8

   I. BAL FAILS TO STATE ANY COMMON LAW CLAIM ....................................... 8

      A.    Bal is Barred from Asserting Claims on Behalf of eBuy-Sell .............. 8

      B.    Bal is Barred from Asserting Claims Accruing Before September 24, 2007 ....... 10

      C.    Bal Fails to State a Claim for His Remaining Common Law Claims ................ 11

          1.    Bal Fails to State a Claim Arising from the Collection of Association Fees from 2002 to 2011 ........................................ 11

          2.    Bal Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Arising from the ITEX Member Agreement and Rules ........................................................... 12

          3.    Bal Fails to State a Claim for Breach of Contract or Breach of Fiduciary Duty Arising from the Washington Arbitration ...................... 13

      D.    The State Law Claims Against White and Benson Must Be Dismissed for Lack of Personal Jurisdiction........................................................... 14

   II. BAL FAILS TO STATE A RICO CLAIM........................................................ 16

      A.    Bal Is Time Barred From Recovering for Any Injuries Discovered or Discoverable Prior to September 24, 2009 ........................................... 16

      B.    Bal Fails to Allege a Pattern of Racketeering Activity ......................... 17

          1.    Bal's Allegations of Embezzlement, Money Laundering and Extortion Do Not Constitute "Racketeering Activity" ............... 18

          2.    Bal's Allegations of Promotion of Illegal Gambling and Collection of Unlawful Debts Do Not Constitute a "Pattern" ........................21

III. BAL CANNOT ASSERT A SHAREHOLDER DERIVATIVE CLAIM *PRO SE* ........ 22

IV. BAL FAILS TO STATE A CONSTITUTIONAL CLAIM ............................................ 24

CONCLUSION ........................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Mfrs. Mut. Ins. Co. v. Sullivan,*
526 U.S. 40 (1999) .................................................................................................... 25

*Andrews v. Ford,*
2009 WL 2870086 (S.D.N.Y. Sept. 3, 2009) ...................................................... 8

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................................ 8

*Bank Brussels Lambers v. Fiddler Gonzalez & Rodriguez,*
305 F.3d 120 (2d Cir. 2002) .............................................................................. 14

*Barrus v. Dick's Sporting Goods, Inc.,*
732 F. Supp. 2d 243 (W.D.N.Y. 2010) ............................................................. 16

*Bartfield v. Murphy,*
578 F. Supp. 2d 638 (S.D.N.Y. 2008) ............................................................... 23

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................................ 8

*Bingham v. Zolt,*
66 F.3d 553 (2d Cir. 1995) ................................................................................ 16

*Broder v. Cablevision Systems Corp.,*
418 F.3d 187 (2d Cir. 2005) .............................................................................. 12

*Capitol Records, LLC v. VideoEgg, Inc.,*
611 F. Supp. 2d 349 (S.D.N.Y. 2009) ............................................................... 14

*Cofacrédit, S.A. v. Windsor Plumbing Supply Co.,*
187 F.3d 229 (2d Cir. 1999) .............................................................................. 22

*Cohen v. Mirage Resorts, Inc.,*
119 Nev. 1 (2003) .............................................................................................. 23

*Cruz v. FXDirectDealer, LLC,*
720 F.3d 115 (2d Cir. 2013) .............................................................................. 17

*Dalton v. Educational Testing Service,*
87 N.Y.2d 384 (1995) ........................................................................................ 13

*Drake v. Laboratory Corp. of America Holdings*,
    417 F. App'x 84 (2d Cir. 2011) ...................................................................14

*E&L Consulting, Ltd. v. Doman Indus. Ltd.*,
    472 F.3d 23 (2d Cir. 2006)..........................................................................8

*Eaves v. Designs for Finance, Inc.*,
    785 F. Supp. 2d 229 (S.D.N.Y. 2011)........................................................9

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011)......................................................13

*Faktor v. Yahoo Inc.*,
    2013 WL 1641180 (S.D.N.Y. Apr. 16, 2013)...........................................13

*First Capital Asset Management v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)......................................................................17

*Frankel v. Cole*,
    313 F. App'x 418 (2d Cir. 2009) ..............................................................16

*GICC Capital Corp. v. Technology Finance Group, Inc.*,
    67 F.3d 463 (2d Cir. 1995)........................................................................17

*Gun Hill Road Service Station, Inc. v. ExxonMobil Oil Corp.*,
    2013 WL 395096 (S.D.N.Y. Feb. 1, 2013)..............................................11

*H.J. Inc. v. Northwestern Bell Telephone Co.*,
    492 U.S. 229 (1989)..................................................................................22

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009).........................................................................8

*Hebrew Institute for Deaf and Exceptional Children v. Kahana*,
    57 A.D.3d 734 (2d Dep't 2008) ................................................................10

*Henneberry v. Sumitomo Corp. of Am.*,
    415 F. Supp. 2d 423 (S.D.N.Y. 2006)......................................................13

*Hudson v. Delta Kew Holding Corp.*,
    2014 WL 1924324 (Sup. Ct. Suffolk Cty, Apr. 22, 2014)........................10

*Jones v. Barnes*,
    463 U.S. 745 (1983)..................................................................................25

*Jones v. Niagara Frontier Transp. Authority*,
    722 F.2d 20 (2d Cir. 1983).........................................................................9

*Jones v. Niagara Frontier Transp. Authority*,
836 F.2d 731 (2d Cir. 1987)............................................................................9

*Karabu Corp. v. Gitner*,
16 F. Supp. 2d 319 (S.D.N.Y 1998)..........................................................14, 15

*Kittay v. Kornstein*,
230 F.3d 531 (2d Cir. 2000)..........................................................................11

*Lattanzio v. COMTA*,
481 F.3d 137 (2d Cir. 2007)............................................................................9

*Lerner v. Fleet Bank, N.A.*,
318 F.3d 113 (2d Cir. 2003)..........................................................................21

*Logicom Inclusive, Inc. v. W.P. Stewart & Co.*,
2004 WL 1781009 (S.D.N.Y. Aug. 10, 2004)..................................................9

*LucidRisk, LLC v. Ogden*,
615 F. Supp. 2d 1 (D. Conn. 2009)...............................................................15

*Malmsteen v. Berdon, LLP*,
477 F. Supp. 2d 655 (S.D.N.Y. 2007)............................................................13

*Maya NY, LLC v. Hagler*,
106 A.D.3d 583 (1st Dep't 2013) .................................................................10

*McPherson v. Coombe*,
174 F.3d 276 (2d Cir. 1999)............................................................................8

*U.S. ex rel. Mergent Services v. Flaherty*,
540 F.3d 89 (2d Cir. 2008)............................................................................22

*Palatkevich v. Choupak*,
2014 WL 1509236 (S.D.N.Y. Jan. 24, 2014) (McMahon, J.) .................17n, 19

*People v. Yannett*,
49 N.Y.2d 296 (1980) ...................................................................................18

*Phillips v. Tobin*,
548 F.2d 408 (2d Cir. 1976)..........................................................................23

*Pridgen v. Andresen*,
113 F.3d 391 (2d Cir. 1997)..........................................................................23

*Retail Software Services, Inc. v. Lashlee*,
854 F.2d 18 (2d Cir. 1988)............................................................................15

*Scheidler v. National Organization for Women, Inc.,*
   537 U.S 393 (2003)......................................................................20

*Sekhar v. U.S.,*
   133 S. Ct. 2720 (2013) ............................................................20, 21

*Smith v. Local 819 I.B.T. Pension Plan,*
   291 F.3d 236 (2d Cir. 2002)..........................................................8

*Spool v. World Child Int'l Adoption Agency,*
   520 F.3d 178 (2d Cir. 2008)......................................................17, 22

*Strother v. Harte,*
   171 F. Supp. 2d 203 (S.D.N.Y. 2001).........................................16

*Suthers v. Amgen,*
   441 F. Supp. 2d 478 (S.D.N.Y. 2006).........................................12

*Sweeney v. Harbin Elec., Inc.,*
   2011 WL 3236114 (D. Nev. Jul. 27, 2011) .............................23, 24

*Thome v. Alexander & Louisa Calder Foundation,*
   70 A.D.3d 88 (1st Dep't 2009) ....................................................11

*U.S. v. Gotti,*
   459 F.3d 296 (2d Cir. 2006)..........................................................20

*U.S. v. Napoli,*
   54 F.3d 63 (2d Cir. 1995)..............................................................19

*USA Certified Merchants, LLC v. Koebel,*
   262 F. Supp. 2d 319 (S.D.N.Y. 2003).........................................17

*Valentini v. Citigroup, Inc.,*
   837 F. Supp. 2d 304 (S.D.N.Y 2011)...........................................13

*Verizon New York, Inc. v. Sprint PCS,*
   43 A.D.3d 686 (1st Dep't 2007) ...................................................10

*Walzer v. UAL Corp.,*
   2008 WL 87944 (S.D.N.Y. Jan 2, 2008) (McMahon, J.)...............23

*Weizmann Institute of Science v. Neschis,*
   229 F. Supp. 2d 234 (S.D.N.Y. 2002)...........................................18

*William Kaufman Organization, Ltd. v. Graham & James LLP,*
   269 A.D.2d 171 (1st Dep't 2000) .................................................13

*Wolff v. Rare Medium, Inc.*,
    210 F. Supp. 2d 490 (S.D.N.Y. 2002)........................................................13

*Zaeretsky v. Zaretsky*,
    2011 WL 8085263 (E.D.N.Y. Oct. 13, 2011), *aff'd*, 529 F. App'x 97 (2d Cir.
    2013) ........................................................................................................16

**Statutes**

18 U.S.C. § 64 ................................................................................................18

18 U.S.C. § 501(c) ..........................................................................................18

18 U.S.C. § 1951(b)(2) ....................................................................................20

18 U.S.C. § 1956 .............................................................................................19

18 U.S.C. § 1961 ......................................................................................7, 17-20

18 U.S.C. § 1962 ......................................................................................7, 17, 21

28 U.S.C. § 1654 .............................................................................................22

28 U.S.C. § 1915(e)(2)(B)(ii) ...........................................................................5

28 U.S.C. § 1983 .........................................................................................24, 25

**Other Authorities**

Federal Rules of Civil Procedure

    8........................................................................................................2, 8, 11, 13

    12(b)(2) .......................................................................................................14-16

    12(b)(6) ...................................................................................................2, 8, 13

    12(e) ...............................................................................................................5

    23.1.............................................................................................................7, 23

N.Y. Civil Practice Law and Rules

    § 213(2) .........................................................................................................10

    § 214(3) .........................................................................................................10

    § 302(a) .........................................................................................................14

Pursuant to Federal Rules of Civil Procedure ("Rules") 8(a), 12(b)(2) and 12(b)(6), Defendants ITEX Corporation ("ITEX"), Steven White ("White"), Eric Best ("Best"), John Wade ("Wade") and Robert Benson ("Benson") (collectively, the "ITEX Defendants") submit this memorandum of law in support of their motion to dismiss the Verified First Amended Complaint ("Amended Complaint" or "FAC") of Plaintiffs John Andries Bal, Jr., Business Watchdog and Mergent Services (collectively, "Bal").[1]

## PRELIMINARY STATEMENT

This case is the latest chapter in Bal's baseless yet relentless assault on the ITEX Defendants. For the reasons set forth below, this Court should dismiss Bal's claims in their entirety and with prejudice.

The gravamen of Bal's complaint arises from a series of purchases that Bal made more than ten years ago in ITEX's marketplace using "ITEX dollars" totaling less than $60,000. Bal has unsuccessfully litigated claims based on these transactions for seven years. Bal first brought suit in New York state court in 2007 (the "State Court Action"), asserting claims for breach of contract and "embezzlement." In 2008, that suit was dismissed in light of an arbitration provision set forth in the ITEX Member Agreement. That dismissal was followed by Bal's untimely appeal, voluntarily-withdrawn arbitration against the ITEX Defendants, second arbitration regarding the same transactions that did not name the ITEX Defendants, and multiple failed motions to reargue, restore and reinstate the State Court Action. The State Court Action

---

[1] While Mr. Bal names Mergent Services and Business Watchdog as plaintiffs, these entities are simply unincorporated alter egos of Bal. As summarized in the Declaration of Jeremy S. Goldman ("Goldman Decl."), dated June 9, 2014, Mr. Bal is a vexatious *pro se* plaintiff who has asserted meritless and redundant claims against ITEX and other parties in case after case over the past twenty years. *See* Goldman Decl. ¶¶ 2-3.

remains dismissed as to the ITEX Defendants, but, for unknown reasons, Bal has declined to arbitrate his claims against ITEX.

Instead, Bal has chosen to bring a redundant action against the ITEX Defendants in this Court, admittedly based "upon the same transactions and occurrences as the [State Court Action]" (FAC ¶ 18). To his central claims involving the ITEX purchases, Bal has concocted a barrage of new allegations, including a fabricated claim of "extortion" arising from the ITEX Defendants' defense against the State Court Action, a claim alleging breach of an implied covenant of good faith and fair dealing arising from various provisions of the ITEX Marketplace Rules and an unlabeled claim arising from Bal's voluntary payment of ITEX association fees over the past ten years. Bal also has attempted to assert a shareholder derivative claim on behalf of ITEX and a "constitutional" claim that ITEX has violated Bal's civil rights during the course of the State Court Action. Most notably, in an effort to secure federal jurisdiction and intimidate the ITEX Defendants, Bal has fabricated a RICO claim.

All of Bal's claims fail as a matter of law. *First*, most of Bal's common law claims are barred either for lack of standing or by the applicable statute of limitations; the remaining common-law claims are fundamentally deficient under Rules 12(b)(6) and 8(a). *Second*, as to Bal's RICO claim, Bal is time barred from recovering for any injury and, in any event, his allegations—all the more opaque due to his failure to file the required RICO Case Statement— fail to establish *any* "pattern of racketeering activity." *Third*, as a *pro se* litigant, Bal is barred as a matter of law from bringing his purported shareholder derivative actions. Finally, the glaring absence of either the deprivation of a constitutional right or any state action defeats Bal's constitutional claims. In sum, to the extent Bal's claims are not time barred, they fail to state a claim for which relief can be granted as a matter of law. Because further amendment of his

complaint would be futile, the Amended Complaint should be dismissed in its entirety, with prejudice.

## PROCEDURAL HISTORY

### The State Court Action

Since 2007, Bal has pursued claims alleging breach of contract and embezzlement against ITEX and other defendants in the Supreme Court for the State of New York, County of New York (the "State Court"). *See* Ex. A.[2] In the State Court Action, Bal alleges that he paid funds into his ITEX account in exchange for advertising services, but that the services were never delivered. As Bal concedes, the current action is based "upon the same transactions and occurrences" as the State Court Action. FAC ¶ 18.

Bal's claims against ITEX were dismissed by the State Court in January 2008 based upon an arbitration agreement entered into between ITEX and Bal as part of the ITEX membership application and agreement. *See* Ex. B at 4. Bal then proceeded to file a procedurally-defective and unsubstantiated motion to reargue, an untimely notice of appeal, and he attempted to commence an arbitration against ITEX with the AAA in New York (the "NY Arbitration"), instead of in Washington State as specified in the relevant agreement. ITEX opposed Bal's motion to reargue and cross-moved for monetary sanctions and an injunction to prevent Bal from making any additional filings in the litigation. In an order dated January 26, 2009, the State Court denied Bal's motion to reargue. *See* Ex. C. Although the State Court denied ITEX's motion for sanctions and an injunction, it warned Bal of the consequences of continuing his frivolous conduct: "Though *pro se*, plaintiff must abide by the orders of this court and other

---

[2] Citations herein to "Ex. __" refer to the corresponding exhibit to the Goldman Declaration.

applicable laws or he will face the consequences (monetary or otherwise) of disobedience, or worse, defiance thereof." *Id.* at 2.

Bal's untimely appeal was dismissed by the New York Appellate Division, First Department in May 2008. *See* Ex. D. His subsequent motion to reinstate the appeal was dismissed by the First Department. *See* Ex. E. Bal voluntarily withdrew the NY Arbitration, but then filed a second demand for arbitration, this time in Washington State (the "Washington Arbitration"), against NYTO Trade Incorporation, John Castoro and Izzy Garcia, all of which are named defendants in this action. ITEX was not named as a respondent in the Washington Arbitration.

In 2011, the State Court restored the State Court Action, erroneously finding that ITEX had waived its right to arbitrate. *See* Ex. F. at 1-2, 4-7. In March 2013, the State Court reinstated its dismissal of the claims against ITEX, concluding that in its prior order it had misapprehended the facts—*i.e.*, ITEX was not named in the Washington Arbitration, so ITEX could not have waived its right to arbitrate—and that ITEX had a right to enforce its arbitration agreement with Bal. *See* Ex. G. In May 2013, Bal filed a motion seeking recusal of the State Court judge and reargument of the State Court's March 2013 order. On February 24, 2014, the State Court denied the motion to for recusal, noting that the motion came "more than five years after the court ruled adversely against" Bal, and adhered to its original decision reinstating its dismissal of the claims against ITEX. Ex. H at 1, 6. On March 19, 2014, Bal filed a notice of appeal of the February 24 Order. *See* Ex. I.

**The Instant Action**

On September 24, 2013, Bal commenced the instant action (the "Instant Action") against the ITEX Defendants and ten other named defendants, along with a petition for a writ of

mandamus against three additional defendants. *See* Compl., September 24, 2013, ECF No. 2.

On October 18, 2013, this Court, *sua sponte*, dismissed Bal's claims against defendants the State

of New York; the State of New Jersey; the U.S. Securities and Exchange Commission; the Law

Office of Frankfurt Kurnit Klein & Selz, P.C.; Cameron Myler; Jeremy S. Goldman; the Law

Office of Joseph Maira; Joseph Maira; and Soma Syed for failure to state a claim, pursuant to 28

U.S.C. § 1915(e)(2)(B)(ii). Ex. K at 4–7, 9. The Court also dismissed Bal's claim against

defendant Daily News for lack of subject-matter jurisdiction. *Id.* at 7–9.

On December 20, 2013, the ITEX Defendants moved for a more definite statement of the

Complaint pursuant to Rule 12(e). *See* ECF No. 10. On January 12, 2014, Bal wrote a letter to

the Court requesting leave to file an amended complaint. The Court granted Bal's request,

mooting the pending motion for a more definite statement. *See* ECF Nos. 29, 30. Bal and

newly-added plaintiffs Mergent Services and Business Watchdog filed the Amended Complaint

on April 11, 2014.

## FACTUAL ALLEGATIONS[3]

ITEX owns and operates a barter exchange marketplace. Bal maintained an account with

ITEX. FAC ¶¶ 1, 7. Bal allegedly owns sole proprietorship named "Mergent Services" and

founded "Business Watchdog," a "consumer advocacy organization." FAC ¶ 1.

In Count I, Bal alleges a variety of common law claims arising from his dealings with the

ITEX Defendants. This hodgepodge of allegations may be summarized as follows:

- In December 2002 (FAC ¶ 29), November 2003 (FAC ¶ 31) and December 2004 (FAC ¶
  32), ITEX sold Bal or eBuy-Sell, Inc. ("eBuy-Sell")—a corporation of which Bal is "sole
  owner" (FAC ¶ 30)—a total of $56,650 in advertising services (including a $1,650

---

[3] The following statement of facts is based upon the allegations in the Amended Complaint and
filings in the State Court Action, which are annexed to the Goldman Declaration.

commission). On April 7, 2007, either defendants (FAC ¶¶ 31-32) or a third party (FAC ¶ 29) refused to provide this advertising, giving rise to liability for conversion, conspiracy and aiding and abetting conversion, and breach of contract. FAC ¶¶ 29, 31-33.

- In April 2007, eBuy-Sell paid ITEX $721 (including a $21 commission) for gift certificates that turned out to be "unusable"; in May 2007, ITEX converted that money by refusing to refund it to eBuy-Sell. FAC ¶ 36.

- On or about June 6, 2007, purportedly in retaliation for Bal's refusal to voluntarily dismiss the State Court Action (FAC ¶ 30), ITEX tortiously interfered with Bal's business relationships by freezing eBuy-Sell's account, which contained $1,686.58. Since May 7, 2011, ITEX has refused to refund Bal the remaining balance in the account, thereby breaching an unidentified contract with eBuy-Sell and converting eBuy-Sell's money. FAC ¶ 37, 40.

- Bal is entitled to the return of $5,100 in "association payments" he paid to ITEX monthly from April 2002 through May 2011. FAC ¶¶ 34-35.

- ITEX has breached the implied covenant of good faith and fair dealing by including in its Marketplace Rules provisions stating that ITEX may terminate a member's account in its sole discretion and setting forth a procedure by which owners of terminated accounts have one year to "spend down" any remaining account balance. FAC ¶¶ 38-42.

- In March and April 2010, White and Benson, officers of ITEX, breached "their fiduciary and contractual duty to plaintiff" by sending the arbitrator in the Washington Arbitration $1,650 and offering an additional $55,000 "to influence the outcome of the arbitration." FAC ¶¶ 47.

In Count II, Bal attempts to establish a RICO violation, 18 U.S.C. §§ 1961-68, by recasting many of his common law claims as crimes and adding two categories of new allegations. *First*, he alleges that on five occasions between February 2011 and February 2012, certain defendants sent emails to ITEX members in New York and New Jersey promoting various illegal gambling events, and then laundered the proceeds of these events by reporting them on their tax returns. FAC ¶¶ 90-92.[4] *Second*, Bal alleges that ITEX converted or embezzled money from, or otherwise harmed, various third parties completely unrelated to Bal or his businesses. FAC ¶¶ 76-81, 95-97.

In Count III, Bal attempts to assert a shareholder derivative action under Rule 23.1 on behalf of ITEX against Defendants White, Best and Wade. Bal alleges that White, Best and Wade violated their fiduciary duties as directors and officers of ITEX by failing to comply with SEC Rule 14a-7, "rig[ging], or attempt[ting] to rig, the outcome" of a December 13, 2013 election, "conspiring and embezzling [ITEX's] funds to improperly influence an arbitration of their business associates," failing "to comply with the applicable licensing requirement for financial institutions," and "illegally conducting business in forty-seven (47) states." FAC ¶¶ 100-142.

In Count IV, Bal alleges that ITEX failed to advise the court in the State Court Action that it was an unauthorized foreign corporation, leading to "a denial of plaintiff's right to a fair and speedy resolution of the issues presented" in that action. FAC ¶ 145. Bal further alleges that ITEX "'sewer served' the Notice of Entry" in that action, causing Bal's failure to file a timely Notice of Appeal and "thereby denying plaintiff of his right to appeal." FAC ¶ 147.

---

[4] Bal's money laundering allegations, strewn throughout the Amended Complaint, state that the ITEX Defendants laundered money not by *failing* to report the income on ITEX's tax returns, but by reporting that income as "legally obtained." *See* FAC ¶¶ 55, 70, 73, 85, 90-92.

## LEGAL STANDARD

Rule 12(b)(6) mandates dismissal of a cause of action if it does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mere conclusory averments are insufficient to meet this pleading threshold; rather, a claim must be supported by specific factual allegations, which if accepted as true, are sufficient to support the accusation's plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

While Rule 8 encourages pleading brevity, the Supreme Court has made clear that a complaint must plead enough information to give the defendant notice of "which of its actions gave rise to the claims upon which the complaint is based" and address the basic questions of who, did what, to whom (or with whom), where, and when. *Twombly*, 550 U.S. at 565 n.10; *E&L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 32 (2d Cir. 2006).

Because Bal is proceeding *pro se,* the Court must liberally construe his pleadings "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999). "However, a *pro se* plaintiff's speculative or conclusory claims will not suffice." *Andrews v. Ford,* 2009 WL 2870086 (S.D.N.Y. Sept. 3, 2009).

## ARGUMENT

### I.

### BAL FAILS TO STATE ANY COMMON LAW CLAIM

**A. Bal is Barred from Asserting Claims on Behalf of eBuy-Sell**

Bal has asserted numerous common law claims arising from a December 13, 2004 sale of advertising services to eBuy-Sell (FAC ¶¶ 32, 48(F)); an April 2007 sale of gift certificates to

eBuy-Sell (FAC ¶¶ 36, 48(J)); a June 6, 2007 freezing of eBuy-Sell's account (FAC ¶¶ 30, 48(D)); and the withholding since May 7, 2011 of eBuy-Sell's remaining account balance (FAC ¶¶ 37, 40, 48(K)).

These claims must be dismissed because Bal lacks standing to assert them. eBuy-Sell is a corporation organized under the laws of the State of New York. *See* Certificate of Incorporation, eBuy-Sell.com (Ex. J).[5] Plaintiff John Bal is eBuy-Sell's "sole owner" and CEO. *See id.*; FAC ¶ 30. However, it is well-established that "[a] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation." *Jones v. Niagara Frontier Transp. Authority*, 836 F.2d 731, 736 (2d Cir. 1987) (collecting cases). This is true "even though [the shareholder] may have faced the risk of financial loss as a result." *Id.* Applied here, plaintiff John Bal, despite his status as "sole owner" of eBuy-Sell, does not have standing to assert claims based on the alleged damage to the corporation.

Even if eBuy-Sell were a plaintiff, its claim still could not be prosecuted here because it is not represented by an attorney. Even where a single individual "is the sole stockholder and chief executive officer" of a corporation, "it is established that [the] corporation, which is an artificial entity that can only act through agent, cannot proceed *pro se*." *Jones v. Niagara Frontier Transp. Authority*, 722 F.2d 20, 22 (2d Cir. 1983); *see Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007). Accordingly, whether or not eBuy-Sell is a party plaintiff, its claims must be dismissed.

---

[5] The Court may consider a certificate of incorporation on a motion to dismiss. *See Eaves v. Designs for Finance, Inc.*, 785 F. Supp. 2d 229, 244 (S.D.N.Y. 2011) ("When deciding a motion to dismiss, the Court is entitled to consider . . . facts of which judicial notice may properly be taken[.]"); *Logicom Inclusive, Inc. v. W.P. Stewart & Co.*, 2004 WL 1781009, at *1, *3 (S.D.N.Y. Aug. 10, 2004) (taking judicial notice of certificate of incorporation on motion to dismiss).

In any event, as demonstrated below, even if Bal *could* assert eBuy-Sell's claims, the claims based on the December 13, 2004, April 2007 and June 6, 2007 events would be time barred.

**B.**   **Bal is Barred from Asserting Claims Accruing Before September 24, 2007**

Bal asserts claims for breach of contract, conspiracy to commit conversion and aiding and abetting conversion against the ITEX Defendants for their alleged refusal to provide advertising services and gift certificates to Bal (or to eBuy-Sell) and for their refusal to refund payments for those services. FAC ¶¶ 29, 31, 32, 36. Bal also asserts a tortious interference claim against ITEX for freezing eBuy-Sell's account. FAC ¶ 30. All of these claims are time barred.

Breach of contract claims are subject to a six-year statute of limitations, running from the date of the alleged breach. *See* CPLR § 213(2); *Verizon New York, Inc. v. Sprint PCS*, 43 A.D.3d 686, 687 (1st Dep't 2007). Bal alleges that the ITEX Defendants' breaches of contract arising from the advertising sales occurred on April 7, 2007 (FAC ¶¶ 31, 32), more than six years prior the filing of his original complaint in this action on September 24, 2013, and thus outside the limitations period.

Conversion claims, including conspiracy and aiding and abetting conversion, are subject to a three-year statute of limitations, running from the date of the alleged conversion. *See* CPLR § 214(3); *Maya NY, LLC v. Hagler*, 106 A.D.3d 583, 585 (1st Dep't 2013); *Hebrew Institute for Deaf and Exceptional Children v. Kahana*, 57 A.D.3d 734, 735 (2d Dep't 2008) (conspiracy claim "stands or falls with the underlying tort"); *Hudson v. Delta Kew Holding Corp.*, 2014 WL 1924324, at *4 (Sup. Ct. Suffolk Cty, Apr. 22, 2014) (aiding and abetting claim "is governed by the same statute of limitations that is applicable to the underlying tort"). Bal alleges that the conversion of the payment for gift certificates took place on May 26, 2007. FAC ¶ 36. He further alleges that the conspiracy and aiding and abetting conversion of the payment for

advertising services took place on some date "subsequent[]" to April 7, 2007. FAC ¶¶ 29, 31, 32. This date could be no later than May 25, 2007, when Bal filed the State Court Action based on these transactions. Because all of these claims accrued more than three years prior to the filing of the Complaint, they also are time barred.

Tortious interference with business relationship claims are subject to a three-year statute of limitations, running from "when the defendant performs . . . the alleged interference." *Thome v. Alexander & Louisa Calder Foundation*, 70 A.D.3d 88, 108 (1st Dep't 2009) (citing CPLR § 214(4)); *see Gun Hill Road Service Station, Inc. v. ExxonMobil Oil Corp.*, 2013 WL 395096, at *17 (S.D.N.Y. Feb. 1, 2013). Bal alleges that ITEX interfered with his business relationship with eBuy-Sell on June 6, 2007, when ITEX froze eBuy-Sell's account. FAC ¶ 30. Because this claim, too, accrued more than three years prior to the filing of the Complaint, it is time barred.

## C. Bal Fails to State a Claim for His Remaining Common Law Claims

### 1. Bal Fails to State a Claim Arising from the Collection of Association Fees from 2002 to 2011

Bal alleges that he paid $5,100 to ITEX in association fees between April 2002 and May 2011 and that he is entitled to be repaid that money. *See* FAC ¶¶ 34-35. Bal sets forth no additional facts regarding this claim, and he does not allege any particular basis for the cause of action other than, perhaps, the claim that ITEX is not authorized to do business in New York. *Id.*

Under Rule 8(a)(2), a pleading must contain a "plain statement of the claim showing that the pleader is entitled to relief." That is, "a plaintiff must disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000). As to the collection of association fees, Bal's allegations do not meet this standard, and the claim must be dismissed.

2. <u>Bal Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Arising from the ITEX Member Agreement and Rules</u>

Bal complains about two provisions of the ITEX Marketplace Rules: Section 2.4 gives ITEX the discretion to terminate a member account. Section 5.4 concerns the ability of an ITEX member with a terminated account to "spend down" the remaining balance in his or her account after termination. Bal contends that "[b]y connecting [these] two Rules, Itex embezzles funds belonging to its members" and has thereby breached the implied covenant of good faith and fair dealing. FAC ¶¶ 41-43.

The implied covenant of good faith and fair dealing, implicit in all contracts, "can only impose an obligation consistent with other mutually agreed upon terms in the contract. It does not add to the contract a substantive provision not included by the parties." *Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 198-99 (2d Cir. 2005) (citations and internal quotation marks omitted). "[C]ourts have refused attempts to impose liability on a party that engaged in conduct permitted by a contract, even when such conduct is allegedly unreasonable." *Suthers v. Amgen*, 441 F. Supp. 2d 478, 485 (S.D.N.Y. 2006).

Bal's implied covenant claim is simply an attempt to impose liability on the ITEX Defendants for adhering to contractual provisions to which Bal expressly and voluntarily agreed. Rather than alleging that the ITEX Defendants took some action which had "the effect of destroying or injuring the right of [Bal] to receive the fruits of the contract," *Dalton v. Educational Testing Service*, 87 N.Y.2d 384, 389 (1995), Bal simply laments Section 5.4 is unfair and should be stricken. Indeed, the primary remedy sought for the purported breach is not damages, but "an order declaring Itex's Spend Down Status null and void." FAC ¶ 48(O). Because the implied covenant does not allow Bal to re-write his contract, this claim must be dismissed as well. *See Dalton*, 87 N.Y.2d at 389; *Broder*, 418 F.3d at 198-99.

3.    Bal Fails to State a Claim for Breach of Contract or Breach of Fiduciary Duty
      Arising from the Washington Arbitration

Bal's allegations that White and Benson "violated their fiduciary and contractual duty" to

Bal by interfering with the Washington Arbitration (FAC ¶ 47) fail to state a claim.

"For a breach of contract claim, Plaintiff must provide specific allegations as to an

agreement between the parties, the terms of that agreement, and what provisions of the

agreement were breached as a result of the acts at issue." *Valentini v. Citigroup, Inc.*, 837 F.

Supp. 2d 304, 327 (S.D.N.Y 2011). Failure to allege the relevant terms of the contract warrants

dismissal under both Rules 12(b)(6) and 8(a). *See Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d

490, 494-95 (S.D.N.Y. 2002) (Rule 12(b)(6)); *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655,

666 (S.D.N.Y. 2007) (Rule 8(a)). Here, Bal fails to identify the contract allegedly breached—let

alone the specific provisions breached—by White and Benson's alleged interference with the

Washington Arbitration. The breach of contract claim arising from these facts therefore must be

dismissed.

The breach of fiduciary duty claim is based on identical facts as the breach of contract

claim and must be dismissed as duplicative. *See, e.g., William Kaufman Organization, Ltd. v.

Graham & James LLP*, 269 A.D.2d 171, 173 (1st Dep't 2000); *Ellington Credit Fund, Ltd. v.

Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 196 (S.D.N.Y. 2011). Moreover, even if

the claim were not duplicative, Bal has not and cannot allege any facts that would give rise to a

fiduciary relationship between Bal and White or Benson. *See Henneberry v. Sumitomo Corp. of

Am.*, 415 F. Supp. 2d 423, 460 (S.D.N.Y. 2006) ("Absent extraordinary circumstances . . . parties

dealing at arms length in a commercial transaction lack the requisite level of trust or confidence

between them necessary to give rise to a fiduciary obligation."); *Faktor v. Yahoo Inc.*, 2013 WL

1641180, at *3 (S.D.N.Y. Apr. 16, 2013) (dismissing breach of fiduciary duty claim for failure to

plead fiduciary relationship). Indeed, Bal fails to allege *any* relationship between himself and White and Benson as individual defendants, and Bal's fiduciary duty claims therefore fail as a matter of law.

**D.** **The State Law Claims Against White and Benson Must Be Dismissed for Lack of Personal Jurisdiction**

The state law claims against the individual ITEX Defendants White and Benson must also be dismissed pursuant to Rule 12(b)(2) because the FAC fails to allege any basis for personal jurisdiction over these defendants in their individual capacities.

"[T]he party asserting jurisdiction has the burden of demonstrating that it exists." *Drake v. Laboratory Corp. of America Holdings*, 417 F. App'x 84, 85 (2d Cir. 2011). Where, as here, jurisdiction is challenged pursuant to Rule 12(b)(2) before the parties have conducted discovery, a plaintiff must still make a *prima facie* showing by pleading "good faith allegations sufficient to establish jurisdiction." *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 357 (S.D.N.Y. 2009).

As to the state law claims, the Court must determine whether there is a statutory basis for jurisdiction under New York law. *Bank Brussels Lambers v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002). Under New York's long-arm statute, CPLR § 302(a), specific jurisdiction is proper "when the plaintiff's claim relates directly to the defendant's New York contacts, however limited." *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 322 (S.D.N.Y 1998) (Sotomayor, J.).

To impute jurisdiction to an individual defendant based on his or her acts in a corporate capacity—as Bal attempts here—the plaintiff must show that the individuals were "'primary actor[s]' in the specific matter in question" who "exercised some control over the corporation in the matter." *Karabu*, 16 F. Supp. 2d at 323 (quoting *Kreutter v. McFadden Oil. Corp.*, 71 N.Y.

2d 460, 467 (1988)); *see Retail Software Services, Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988). "[C]ontrol cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation." *Karabu*, 16 F. Supp. 2d at 324 (collecting cases). Courts have "routinely granted 12(b)(2) motions for lack of personal jurisdiction where the plaintiff made only broadly worded and vague allegations about a defendant's participation in the specific matter at hand." *Id.*

Here, Bal has failed to make a *prima facie* showing that personal jurisdiction exists over White or Benson. For the most part, Bal's allegations are limited to "broadly worded and vague" assertions that White and Benson participated in ITEX's 2002, 2003 and 2004 advertising sales; nowhere does Bal allege that White or Benson was a "primary actor" in those transactions. *See* FAC ¶¶ 29, 31, 32; *Karabu*, 16 F. Supp. 2d at 324. While Bal alleges that Benson submitted a fraudulent affidavit in the State Court Action "[i]n furtherance of this scheme" (FAC ¶ 29), merely submitting an affidavit in the State Court Action does not transform Benson into a "primary actor" regarding the alleged conversion. *See, e.g., LucidRisk, LLC v. Ogden*, 615 F. Supp. 2d 1, 6 (D. Conn. 2009) (alleged "misconduct by . . . defendants during [related] state court litigation . . . . is not a reasonable or fair basis for creating personal jurisdiction over the defendants in a separate federal suit"). Moreover, Bal's allegations that White and Benson directly interfered with the Washington Arbitration in 2010 are irrelevant to the jurisdictional analysis: the Washington Arbitration took place in Washington State, and the alleged communications do not establish any contacts with New York. Other than these sparse allegations, Count I is devoid of any specific connection between White and Benson and the dispute at issue, let alone between White and Benson and New York. In any event, White and

Benson have no such connections. *See* White Decl. ¶¶ 1-6, Benson Decl. ¶¶ 1-6. Accordingly, the state law claims against White and Benson must be dismissed pursuant to Rule 12(b)(2) .

## II.

## BAL FAILS TO STATE A RICO CLAIM[6]

### A. Bal Is Time Barred From Recovering for Any Injuries Discovered or Discoverable Prior to September 24, 2009

Civil RICO claims are subject to a four-year statute of limitations, "triggered when plaintiffs discover or should have discovered their RICO injury." *Frankel v. Cole*, 313 F. App'x 418, 419-20 (2d Cir. 2009) (citing *Rotella v. Wood*, 528 U.S. 549, 554, 557 (2000)). Because RICO claims require multiple underlying violations, the Second Circuit "recognize[s] a 'separate accrual' rule under which a new claim accrues, triggering a new four-year limitations period, each time plaintiff discovers, or should have discovered, a new injury caused by the predicate RICO violations." *Bingham v. Zolt*, 66 F.3d 553, 559 (2d Cir. 1995). However, "[a] necessary corollary of the separate accrual rule is that *plaintiff may only recover for injuries discovered or discoverable within four years of the time suit is brought*." *Id.* at 560 (emphasis added). Accordingly, to the extent Bal's RICO claims stem from injuries discovered or discoverable prior to September 24, 2009, four years from the filing of the initial complaint in this action, they are time barred. *See id.* at 559; *Strother v. Harte*, 171 F. Supp. 2d 203, 209 (S.D.N.Y. 2001).

Here, Bal alleges *no* RICO injury within that four-year window; to the contrary—each alleged injury was discovered or discoverable prior to September 24, 2009. *See* FAC ¶¶ 66 (April 7, 2007), 70 (same), 73 (same), 87-88 (June 2007). While Bal alleges various acts

---

[6] To date, Bal has not submitted any RICO Case Statement, as required by Judge McMahon's Individual Rule III.B and RICO Case Standing Order. This failure has prejudiced the ITEX Defendants and warrants dismissal. *See, e.g., Zaeretsky v. Zaretsky*, 2011 WL 8085263, at *2-*4 (E.D.N.Y. Oct. 13, 2011), *aff'd*, 529 F. App'x 97 (2d Cir. 2013); *Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp 2d 243, 259 (W.D.N.Y. 2010).

committed against third parties (including eBuy-Sell)[7] in 2011, 2012 and 2014, Bal does not

allege any resulting injury to *his own* business or property. *See* FAC ¶¶ 75, 76-81, 96-97.

Similarly, although Bal alleges that the ITEX Defendants "promoted illegal interstate gambling

and collected unlawful debts" in 2011 and 2012, he fails to allege any injury he suffered from

those acts. *See* FAC ¶¶ 90-92. Thus, even if Bal had otherwise stated a RICO claim—as shown

below, he has not—the claims are time barred.

## B.    Bal Fails to Allege a Pattern of Racketeering Activity

Bal has not stated whether his RICO claim arises under 18 U.S.C. § 1962(a), (b) or (c).[8]

However, "[u]nder any prong of § 1962, a plaintiff in a civil RICO suit must establish a 'pattern

of racketeering activity.'" *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463,

465 (2d Cir. 1995); *see* 18 U.S.C. § 1962(a)-(c). A "pattern of racketeering activity" "requires at

least two acts of racketeering activity . . . the last of which occurred within ten years . . . after

the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). "The acts of

racketeering activity that constitute the pattern must be among the various criminal offenses

listed in § 1961(1)." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir.

---

[7] As explained in Section I.A., eBuy-Sell's injuries are distinct from Bal's, and Bal lacks
standing to assert claims based on those injuries.

[8] Although Bal fails to identify the prong under which his RICO claim falls, the claim also fails
for reasons specific to those prongs. Under § 1962(a) and (b), Bal fails to "allege a use or
investment injury that is distinct from any injury resulting from the racketeering predicate acts
themselves." *USA Certified Merchants, LLC v. Koebel*, 262 F. Supp. 2d 319, 331 (S.D.N.Y.
2003). Under § 1962(c), Bal has not "alleged the existence of two distinct entities" as to ITEX,
*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013), because the alleged enterprise
merely "consist[s] of that corporate defendant together with related companies, employees, or
agents." *Palatkevich v. Choupak*, 2014 WL 1509236, at *15 (S.D.N.Y. Jan. 24, 2014)
(McMahon, J.) (citations omitted); *see* FAC ¶¶ 50, 52. And because Bal does not state a cause of
action for a substantive violation of RICO under § 1962(a), (b), or (c), any RICO conspiracy
claim under § 1962(d) also fails. *See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d
159, 182 (2d Cir. 2004).

2008).  In the section of the Amended Complaint entitled "Racketeering Activity" (FAC ¶¶ 53-

98), Bal sets forth an array of purported predicate acts, including embezzlement, money

laundering, extortion and promotion of illegal gambling.  However, as pleaded by Bal, none of

these acts support a RICO claim.

    1.    <u>Bal's Allegations of Embezzlement, Money Laundering and Extortion Do Not
Constitute "Racketeering Activity"</u>

      a.    *Embezzlement is not a Predicate Act*

Under RICO's definitions section, 18 U.S.C. § 1961(1), embezzlement constitutes

"racketeering activity" only if it violates 18 U.S.C. § 64 (relating to embezzlement from pension

and welfare funds) or 18 U.S.C. § 501(c) (relating to embezzlement from union funds).  Simple

embezzlement is not a RICO predicate act.  *See id.*; *Weizmann Institute of Science v. Neschis*,

229 F. Supp. 2d 234, 255 (S.D.N.Y. 2002) ("Neither larceny by embezzlement nor larceny by

false promise falls within the RICO statutory definition of racketeering activity.").

Although Bal alleges a host of "embezzlements" on the part of the ITEX Defendants, Bal

does not and cannot allege that these "embezzlements" involved pension, welfare or union funds.

To the contrary—he repeatedly alleges that the ITEX Defendants refused to give back money

that Bal (or third parties) had paid.  *See* FAC ¶¶ 65-68, 69-71, 72-74, 75, 76-81, 82-85.  In other

words, Bal claims the "conversion by the embezzler of property belonging to another which has

been entrusted to the embezzler to hold on behalf of the owner": classic larceny by

embezzlement under state law.  *People v. Yannett*, 49 N.Y.2d 296, 301 (1980).  These acts do not

constitute "racketeering activity."

      b.    *Bal Fails to State a Claim for Money Laundering*

Bal alleges that ITEX laundered money by reporting on its tax returns (1) income from its

alleged embezzlements, (2) income from states in which it is unauthorized to do business, and

18

(3) income from illegal gambling events. *See FAC* ¶¶ 54-62, 65-68, 69-71, 72-74, 90-92. These allegations fail to state a money laundering offense as a matter of law.

Unlike embezzlement, money laundering may constitute "racketeering activity." *See* 18 U.S.C. § 1961(1) (including 18 U.S.C. § 1956, "relating to the laundering of monetary instruments"). To allege a violation of 18 U.S.C. § 1956, Bal must plead, among other things, that "the defendant *conducted a financial transaction* in interstate commerce" and that "the transaction involves the *proceeds of [specified] unlawful activity*." *Palatkevich v. Choupak*, 2014 WL 1509236, at *18 (S.D.N.Y. Jan. 24, 2014) (McMahon, J.) (emphasis added); *see* 18 U.S.C. § 1956(a)(1)(A). "Specified unlawful activity" includes all the crimes enumerated in 18 U.S.C. § 1961(1), along with a variety of other crimes, but it does not include larceny by embezzlement. 18 U.S.C. § 1956(c)(7); *see U.S. v. Napoli*, 54 F.3d 63, 68 (2d Cir. 1995). Nor does it include doing business in a state without authorization. *See* 18 U.S.C. § 1956(c)(7). Accordingly, to the extent that Bal contends that the unlawful "proceeds" to be derived from embezzlement or doing business without authorization (FAC ¶¶ 54-62, 65-68, 69-71, 72-74), those allegations do not support a charge for money laundering.

Moreover, as to *all* his money laundering allegations, Bal has failed to allege any "financial transaction" conducted by ITEX with the purportedly unlawful proceeds. *See* 18 U.S.C. § 1956(a)(1). Rather, Bal alleges that ITEX reported those proceeds on its tax returns. The act of filing a tax return is not a "purchase, sale, loan, pledge, gift, transfer or other disposition," and it does not involve "the movement of funds by wire or other means," the use monetary instruments, or "the transfer of title to any real property." 18 U.S.C. § 1956(c)(3)-(4) (defining "transaction" and "financial transaction"). In this way, even if any proceeds alleged

here *were* from a "specified unlawful activity," the *conduct* alleged would still not constitute laundering under the statute.

      c.     *Bal Fails to State a Claim for Extortion*

Bal's allegations that Castoro and ITEX threatened to sue Bal and freeze eBuy-Sell's ITEX account if Bal did not withdraw the State Court Action (FAC ¶¶ 86-89) fail to establish "extortion" as a matter of law.

Extortion may constitute "racketeering activity" under 18 U.S.C. § 1961(1). The crime is defined in the Hobbs Act, 18 U.S.C. § 1951(b)(2), as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." The Hobbs Act requires "that a person must 'obtain' property from another party to commit extortion." *Scheidler v. National Organization for Women, Inc.*, 537 U.S 393, 404 (2003). "Obtaining property requires 'not only the deprivation but also the acquisition of property.'" *Sekhar v. U.S.*, 133 S. Ct. 2720, 2725 (2013) (quoting *Scheidler*). In other words, the defendant must have "received 'something of value' from [the victim] that they could exercise, transfer, or sell." *Scheidler*, 537 U.S. at 405; *see Sekhar*, 133 S. Ct. at 2725. The Supreme Court has explained that to ignore this requirement would "eliminate the recognized distinction between extortion and the separate crime of coercion," the latter of which "involves the use of force or threat of force to restrict another's freedom of action." *Id.* at 405.

Here, the alleged acts do not constitute extortion. The only "property" of which Bal alleges to have been deprived is his right to prosecute his claim against ITEX and others in state court. *See* FAC ¶ 87. Bal has not and cannot allege that Castoro and ITEX sought to "[do] anything affirmative with that right." *U.S. v. Gotti*, 459 F.3d 296 at 324 (2d Cir. 2006). Bal does not and could not allege that ITEX intended to "exercise, sell, transfer, or take some other analogous action" with Bal's right to sue. *Id.* Indeed, the Supreme Court just last year cited

"compelling union members *to drop lawsuits* against union leadership" as a classic example of

coercion, as distinct from extortion. *Sekhar*, 133 S. Ct. at 2726 (citing *People v. Kaplan*, 240

App. Div. 72, *aff'd* 264 N.Y. 675 (1934)) (emphasis added). The alleged acts here are identical.

Bal has failed to allege any act of extortion as a matter of law.

 2. Bal's Allegations of Promotion of Illegal Gambling and Collection of Unlawful Debts Do Not Constitute a "Pattern"

 When Bal's defective allegations of embezzlement, money laundering and extortion are

put aside, what remains of the ITEX Defendants' purported "racketeering activity" are Bal's

claims that "Itex, NYTO, Castoro, and Garcia promoted illegal interstate gambling and collected

unlawful debts," which Bal alleges based upon a series of emails to ITEX members sent between

February 2011 and February 2012 (the "Gambling Predicates"). FAC ¶¶ 90-92. However, Bal

cannot base a RICO claim on these allegations, both because Bal lacks standing to assert them

and because they fail to constitute a "pattern" of racketeering activity.

 a. *Bal Has No Standing to Assert the Gambling Predicates*

 In order to demonstrate standing on a RICO claim, "a plaintiff must plead, at a minimum,

'(1) the defendant's violation of § 1962, (2) an injury to *the plaintiff's* business or property, and

(3) causation of the injury by the defendant's violation.'" *Lerner v. Fleet Bank, N.A.*, 318 F.3d

113, 120 (2d Cir. 2003) (quoting *Commercial Cleaning Services, L.L.C. v. Colin Service

Systems, Inc.*, 271 F.3d 374, 380 (2d Cir. 2001)) (emphasis added). Here, Bal has alleged no

injury whatsoever to his business or property resulting from the Gambling Predicates. *See* FAC

¶¶ 90-92. Thus, Bal lacks standing to assert a RICO claim based on these acts.

 b. *The Gambling Predicates Do Not Constitute a "Pattern"*

 In order to establish a "pattern" of racketeering activity, "[t]he acts of racketeering

activity that constitute the pattern . . . must be 'related, and either amount to or pose a threat of

continuing criminal activity." *Spool*, 520 F.3d at 183 (quoting *Cofacrédit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)). "The latter so-called 'continuity' requirement can be satisfied either by showing a 'close-ended' pattern—a series of related predicate acts extending over a substantial period of time—or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Id.*

Here, Bal has alleged neither close- nor open-ended continuity and thus has not alleged a "pattern" of racketeering. Bal has not pleaded close-ended continuity because the Gambling Predicates took place over the course of only twelve months and do not conceivably involve a "complex, multi-faceted conspiracy." *Spool*, 520 F.3d at 184 (2d Cir. 2008); *accord H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989). Bal has not pleaded open-ended continuity because the alleged enterprise—ITEX, White, Best, Wade, Benson, NYTO and Castoro (FAC ¶¶ 50, 52)—"primarily conducts a legitimate business," a barter exchange marketplace, and Bal has not pleaded any facts "from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Cofacrédit*, 187 F.3d at 243; *see Spool*, 520 F.3d at 185-86 (same).

## III.

### BAL CANNOT ASSERT A SHAREHOLDER DERIVATIVE CLAIM *PRO SE*

Title 28 of the U.S. Code, Section 1654, limits the circumstances under which civil litigants may appear without counsel. "Because the statute permits parties only to 'plead and conduct their *own* cases personally,'. . . an individual who is not licensed as an attorney may not appear on another person's behalf in the other's cause." *U.S. ex rel. Mergent Services v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008) (affirming dismissal of Bal's *qui tam* claim on basis of

his *pro se* status). Because a shareholder derivative claim under Rule 23.1 is asserted on behalf of another "person"—the corporation—"[p]ro se litigants are absolutely barred from bringing derivative actions." *Walzer v. UAL Corp.*, 2008 WL 87944, at *2 (S.D.N.Y. Jan 2, 2008) (McMahon, J.); *see Phillips v. Tobin*, 548 F.2d 408, 411 (2d Cir. 1976); *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997).

While Bal repeatedly characterizes his claims as derivative in nature (*see, e.g.*, FAC ¶¶ 3, 101, 103,105, 142), this Court must look to the "body of the Complaint" to confirm that the claim is in fact derivative. *Sweeney v. Harbin Elec., Inc.*, 2011 WL 3236114, at *1 (D. Nev. Jul. 27, 2011).[9] Under Nevada law, "[a] derivative claim is one brought by a shareholder on behalf of the corporation to recover for harm done to the corporation." *Cohen v. Mirage Resorts, Inc.*, 119 Nev. 1, 19 (2003). If a complaint "seeks damages for wrongful conduct that caused harm to the corporation, it is derivative." *Id.*; *see also Sweeney*, 2011 WL 326114, at *2 (derivative action is one "brought for injury to the corporation as opposed to injury to the stockholder" and which "results in a recovery by the corporation," not "recovery by the stockholder").

Count III of the Amended Complaint is a derivative claim. To the extent Bal's allegations are comprehensible, they contend that White, Best and Wade "violated their fiduciary duty *to Itex*" in various ways (FAC ¶ 107) (emphasis added), including by attempting to rig the outcome of an election (FAC ¶¶ 113-16), "enrich[ing] themselves at Itex's expense" through its business dealings (FAC ¶¶ 117-20), embezzling funds for their own personal purposes (FAC ¶¶ 124-29), conducting business without necessary licenses (¶¶ 130-138) and concealing income (FAC ¶¶ 139-41). Bal fails to plead any "special injury" from this conduct, "but only an injury

---

[9] "Whether a claim is derivative or direct is a question of state law," governed the "the law of the state of incorporation," in this instance Nevada. *Bartfield v. Murphy*, 578 F. Supp. 2d 638, 645 (S.D.N.Y. 2008); *see* FAC ¶ 7.

suffered by all shareholders in proportion to their interest in the corporation." *Sweeney*, 2011 WL 326114, at *3. Indeed, the relief sought by Bal in Count III would inure no differently to Bal than to other ITEX shareholders. *See* FAC ¶ 142 A-Q. Thus, as Bal repeatedly acknowledges, he has attempted to assert a derivative claim. Because he is proceeding *pro se*, these claims must be dismissed.

## IV.

## BAL FAILS TO STATE A CONSTITUTIONAL CLAIM

In its October 18, 2013 Order of Service, this Court dismissed Bal's constitutional claims against the attorneys and law firms formerly named as defendants in this case (the "Attorney Defendants") for failure to state a claim. (Godman Decl. Ex. K.) Construing Bal's claims as brought under 28 U.S.C. § 1983, the Court held that Bal had alleged neither that "a right secured by the Constitution or laws of the United States was violated" nor that "the right was violated by a person acting under the color of state law," as required to plead a claim under § 1983. *Id.* at 6 (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Bal now attempts to evade this holding by asserting precisely the same deficient constitutional claims against the ITEX Defendants as were asserted against the Attorney Defendants. *Compare* Compl. ¶¶ 48-52, *with* FAC ¶¶ 144-45, 147. These recycled allegations fail to state a claim for the same reasons previously articulated by this Court.

*First*, Bal does not allege the violation of any federally-guaranteed right. While "[t]he right to a 'speedy and public trial' in criminal prosecutions is a right guaranteed by the Sixth Amendment . . . . Plaintiff[s] [have] not alleged that [they were] criminally prosecuted." Ex. K at 6 (citing *Klopfer v. North Carolina*, 386 U.S. 213, 223-24 (1967)). "Since the Sixth Amendment applies only to criminal actions, [Bal has] failed to state a claim that [his] constitutional right to a speedy trial was violated." *Id.* Likewise, Bal claims a violation of his

"right to appeal" a civil court's dismissal, but that right does not even exist for a criminal conviction, let alone a civil judgment. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).

*Second*, Bal does not allege that the ITEX Defendants "acted under color of a state 'statute ordinance, regulation, custom, or usage.'" Ex. K at 6 (quoting 42 U.S.C. § 1983). "Private parties are not generally liable under the statute." *Id.* (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838-42 (1982); *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978)). Of course, ITEX is a private party, and Bal's allegations, in their entirety, describe "merely private conduct." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999). For these reasons, Bal fails to state any constitutional claim.

## CONCLUSION

For the foregoing reasons, the ITEX Defendants respectfully request that the Court grant its motion to dismiss the Amended Complaint in its entirety. Despite being given the opportunity to amend his pleadings, Bal merely pleads baseless, unsupportable claims. Bal must not be permitted to extend his assault on the ITEX Defendants any further. His claims should be dismissed with prejudice and without leave to replead.

Dated: June 9, 2014

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By:___  /s/ Edward H. Rosenthal_____
      Edward H. Rosenthal
      Jeremy S. Goldman
      488 Madison Avenue, 10th Floor
      New York, New York 10022
      Phone: (212) 980-0120
      Fax: (212) 593-9175
      erosenthal@fkks.com
      jgoldman@fkks.com

      *Attorneys for Defendants*