UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
BUSINESS WATCHDOG, MERGENT SERVICES,
And JOHN ANDRIES BAL, JR.,                     Case Number: 13 CV 6794 (CM)

               -Plaintiffs-,

ITEX CORPORATION, STEVEN WHITE,
personally and in the capacity of CEO, CFO, and
Chairman of the Board, ERIC BEST, personally
and in the capacity of Director, JOHN WADE, personally
and in the capacity of Director, ROBERT BENSON,
personally and in the capacity of Vice President, NYTO
TRADE INCORPORATED, JOHN CASTORO aka
NYTO TRADE INCORPORATED aka NYTO
TRADE INCORPORATION aka NYTO TRADE
EXCHANGE and 44 TRADE CORPORATION, aka
NYTO TRADE, INC.., personally and in the capacity
of President, and IZZY GARCIA, personally and in the
capacity of Manager,
                  -Defendants-.
--------------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF NYTO TRADE INCORPORATED, JOHN CASTORO and IZZY GARCIA, DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT


LAW OFFICE OF JOSEPH MAIRA
1229 Avenue Y, Ste. 5C
Brooklyn, NY 11225
Phone: 718-368-2322
Counsel for the Defendants NYTO
TRADE INCORPORATED, JOHN
CASTORO, and IZZY GARCIA

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 7

PROCEDURAL HISTORY .................................................................................... 9

FACTUAL ALLEGATIONS ................................................................................. 11

LEGAL STANDARD ......................................................................................... 13

ARGUMENT .................................................................................................... 14

   I . BAL FAILS TO STATE ANY COMMON LAW CLAIM ............................................. 14

      A.   Bal is Barred from Asserting Claims on Behalf of eBuy-Sell .................................. 14

      B.   Bal is Barred from Asserting Claims Accruing Before September 24, 2007 ........... 15

      C.   Bal Fails to State a Claim for His Remaining Common Law Claims ...................... 16

         1.   Bal Fails to State a Claim for Breach of the Implied Covenant of
Good Faith and Fair Dealing Arising from the ITEX Member
Agreement and Rules ............................................................................... 16

   II . BAL FAILS TO STATE A RICO CLAIM ......................................................... 19

      A.   Bal Is Time-Barred From Recovering for Any Injuries Discovered or
Discoverable Prior to September 24, 2009 ........................................................ 20

      B.   Bal Fails to Allege a Pattern of Racketeering Activity ...................................... 20

         1.   Bal's Allegations of Embezzlement, Money Laundering and Extortion
Do Not Constitute "Racketeering Activity" .............................................. 21

            a. Embezzlement is not a Predicate Act………………………….......…21

            b. Bal Fails to State a Claim for Money Laundering……………………23

            c. Bal Fails to State a Claim for Extortion……………………………24

         2.   Bal's Allegations of Promotion of Illegal Gambling and Collection
of Unlawful Debts Do Not Constitute a "Pattern"………………24

            a.     Bal Has No Standing as to the Gambling Predicates……25

        b.     The Gambling Predicates Do Not Constitute a "Pattern"..26

III . BAL FAILS TO STATE A CONSTITUTIONAL CLAIM .......................................... 26

CONCLUSION ....................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999)…………………………………27

*Andrews v. Ford*, 2009 WL 2870086 (S.D.N.Y. Sept. 3, 2009)………………………………15

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)..15

*Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243, 259 (W.D.N.Y. 2010)…………19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)………………………………………...15

*Bingham v. Zolt*, 66 F.3d 553, 559 (2d Cir. 1995)……………………………………………19

*Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 198-99 (2d Cir. 2005)…………………18

*Cofacrédit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)………25

*Commercial Cleaning Services, L.L.C. v. Colin Service Systems, Inc.*, 271 F.3d 374, 380 (2d Cir. 2001)……………………………………………………………………………………24

*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013)........................................20

*Dalton v. Educational Testing Service*, 87 N.Y.2d 384, 389 (1995)………………………..18

*E&L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 32 (2d Cir. 2006)………………15

*First Capital Asset Management v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004)....20

*Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978))…………………………………27

*Frankel v. Cole*, 313 F. App'x 418, 419-20 (2d Cir. 2009) …………………………………...19

*GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 465 (2d Cir. 1995)..20

*Gun Hill Road Service Station, Inc. v. ExxonMobil Oil Corp.*, 2013 WL 395096, at *17 (S.D.N.Y. Feb. 1, 2013)……………………………………………………………………..17

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)...................................................................15

*Hebrew Institute for Deaf and Exceptional Children v. Kahana*, 57 A.D.3d 734, 735 (2d Dep't 2008)………………………………………………………………………………………17

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989)…………………25

*Hudson v. Greiner,* 2000 WL 1838324, at *2 (S.D.N.Y. Dec. 13, 2000))…………………17

*Jones v. Barnes*, 463 U.S. 745, 751 (1983)……………………………………….......26

*Klopfer v. North Carolina*, 386 U.S. 213, 223-24 (1967)…………………………………26

*Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003)……………………………..24

*Maya NY, LLC v. Hagler*, 106 A.D.3d 583, 585 (1st Dep't 2013)…………………………16

*McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)…………………………………15

*Palatkevich v. Choupak*, 2014 WL 1509236, at *15 (S.D.N.Y. Jan. 24, 2014) ………………20, 22

*People v. Kaplan*, 240 App. Div. 72, *aff'd* 264 N.Y. 675 (1934)……………………………24

*People v. Yannett*, 49 N.Y.2d 296, 301 (1980)…………………………………………………21

*Rendell-Baker v. Kohn*, 457 U.S. 830, 838-42 (1982)……………………………………27

*Rotella v. Wood*, 528 U.S. 549, 554, 557 (2000)……………………………………………19

*Scheidler v. National Organization for Women, Inc.*, 537 U.S 393, 404 (2003)……………23

*Sekhar v. U.S.*, 133 S. Ct. 2720, 2725 (2013)………………………………………………23

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)……………………15

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008)……….20, 25

*Strother v. Harte*, 171 F. Supp. 2d 203, 209 (S.D.N.Y. 2001)………………………………19

*Suthers v. Amgen*, 441 F. Supp. 2d 478, 485 (S.D.N.Y. 2006)………………………………18

*Thome v. Alexander & Louisa Calder Foundation*, 70 A.D.3d 88, 108 (1st Dep't 2009) …..17

*U.S. v. Gotti*, 459 F.3d 296 at 324 (2d Cir. 2006)…………………………………………24

*U.S. v. Napoli*, 54 F.3d 63, 68 (2d Cir. 1995)………………………………………………22

*USA Certified Merchants, LLC v. Koebel*, 262 F. Supp. 2d 319, 331 (S.D.N.Y. 2003)……20

*Verizon New York, Inc. v. Sprint PCS*, 43 A.D.3d 686, 687 (1st Dep't 2007)……………..16

*Weizmann Institute of Science v. Neschis*, 229 F. Supp. 2d 234, 255 (S.D.N.Y. 2002)……21

*West v. Atkins*, 487 U.S. 42, 48 (1988)………………………………………………………..22

*Zaeretsky v. Zaretsky*, 2011 WL 8085263, at *2-*4 (E.D.N.Y. Oct. 13, 2011), *aff'd*, 529 F. App'x 97 (2d Cir. 2013) …………………………………………………………………………19

STATUTES, REGULATIONS, AND RULES

8 U.S.C. § 501(c)……………………………………………………………………21

18 U.S.C. § 1951(b)(2)………………………………………………………………19

18 U.S.C. § 1956……………………………………………………………………..21

18 U.S.C. § 1956(a)(1)(A)……………………………………………………………22

18 U.S.C. § 1956(a)(1).........................................................................................22

18 U.S.C. § 1956(c)(3)-(4)....................................................................................22

18 U.S.C. § 1956(c)(7)………………………………………………………………22

18 U.S.C. § 1961(1)…………………………………………………………20, 21, 23

18 U.S.C. § 1961(5)…………………………………………………………………20

18 U.S.C. §§ 1961-68………………………………………………………………14

18 U.S.C. § 1962(a)-(c)……………………………………………………………20, 22

18 U.S.C. § 1962(a), (b), or (c)……………………………………………………20

18 U.S.C. § 64………………………………………………………………………21

28 U.S.C. § 1915(e)(2)(B)(ii)………………………………………………………12

28 U.S.C. § 1983……………………………………………………………………26

42 U.S.C. § 1983……………………………………………………………………27

Fed. R. Civ. P. 8(a)..............................................................................................8, 9

Fed. R. Civ. P. 12(b)(2)................................................................................................8, 9

Fed. R. Civ. P. 12(b)(6)...........................................................................................8, 9, 15

Fed. R. Civ. P. 12(e)…………………………………………………………………12

CPLR § 213(2)…………………………………………………………………………16

CPLR § 214(3)…………………………………………………………………………16

CPLR § 214(4)…………………………………………………………………………17

Pursuant to Federal Rules of Civil Procedure ("Rules") 8(a), 12(b)(2) and 12(b)(6), Defendants NYTO Trade Incorporated ("NYTO"), John Castoro ("Castoro"), and Izzy Garcia ("Garcia") (collectively, the "NYTO Defendants") submit this memorandum of law, in support of their motion to dismiss the Amended Complaint of Plaintiffs John Andries Bal, Jr., Business Watchdog and Mergent Services (collectively, "Bal").

## **PRELIMINARY STATEMENT**

This is yet another attempt by Bal to continue his baseless assaults against NYTO Defendants. NYTO Defendants respectfully refer this Court to ITEX Defendants motion to dismiss dated June 9, 2014.  NYTO Defendants fully adopt and join ITEX Defendants motion to dismiss, memorandum of law, and exhibits attached thereto. For the reasons set forth below, this Court should dismiss all claims with prejudice.

NYTO is a ITEX broker/franchisee and all brokers/franchisees and ITEX members are subject to ITEX rules and regulations, membership agreement and arbitration agreement. ITEX members work with a local ITEX broker/franchise. Bal was a ITEX member and worked with NYTO.  Bal made a series of purchases more than ten years ago on ITEX's online marketplace using "ITEX dollars" totaling less than $60,000.  Bal has unsuccessfully litigated claims based on these transactions for seven years.  Bal first brought suit in New York state court in 2007 (the "State Court Action"), asserting claims for breach of contract and "embezzlement" based on those purchases.  In 2008, that suit was dismissed in light of an arbitration provision set forth in the ITEX Member Agreement.  That dismissal was followed by Bal's untimely appeal, voluntarily-withdrawn arbitration against NYTO Defendants, second arbitration regarding the same transactions that Bal did not pursue against NYTO Defendants, and multiple failed motions to reargue, restore and reinstate the State Court Actions against the NYTO Defendants.

Instead, Bal has chosen to bring a redundant action against the NYTO Defendants in federal court, admittedly based "upon the same transactions and occurrences as the [State Court Action]."[1] To his central claims involving the ITEX purchases, Bal has concocted a barrage of new allegations, including a fabricated claim of "extortion" arising from the NYTO Defendants' defense against the State Court Action, a claim alleging breach of an implied covenant of good faith and fair dealing arising from various provisions of the ITEX Marketplace Rules and an unlabeled claim arising from Bal's voluntary payment of ITEX association fees over the past ten years. Bal also has attempted to assert a "constitutional" claim that NYTO has violated Bal's civil rights during the course of the State Court Action. Most notably, in an effort to secure federal jurisdiction and intimidate the NYTO Defendants, Bal has fabricated a claim under the Racketeer Influenced and Corrupt Organizations ("RICO") Act.

All of Bal's claims fail as a matter of law. First, most of Bal's common law claims are barred either for lack of standing or by the applicable statute of limitations; the remaining common-law claims are fundamentally deficient under Rules 12(b)(6) and 8(a). Second, as to Bal's RICO claim, Bal is time barred from recovering for any injury and, in any event, his allegations—all the more opaque due to Bal's failure to file the required RICO Case Statement—fail to establish *any* "pattern of racketeering activity." Finally, the glaring absence of either the deprivation of a constitutional right or any state action defeats Bal's constitutional claims. In sum, to the extent Bal's claims are not time-barred, they fail to state a claim for which relief can be granted as a matter of law. Because further amendment of his

---

[1] Amended Complaint ("FAC") ¶ 18

complaint would be futile, the Amended Complaint should be dismissed in its entirety, with prejudice.

## PROCEDURAL HISTORY

**The State Court Action**

NYTO Defendants respectfully refer this Court to ITEX Defendants motion to dismiss and procedural history. Since 2007, Bal has pursued claims alleging breach of contract and embezzlement against NYTO defendants in the Supreme Court for the State of New York, County of New York (the "State Court"). As Bal concedes, the current action is based "upon the same transactions and occurrences" as the State Court Action.  FAC ¶ 18.

Bal's claims against NYTO were dismissed by the State Court in January 2008 in light of an arbitration agreement entered into between NYTO and Bal as part of the ITEX membership application and agreement. Bal then filed a procedurally-defective and unsubstantiated motion to reargue, an untimely notice of appeal, and attempted to commence an arbitration against NYTO with the AAA in New York (the "NY Arbitration") as a consumer-related dispute, instead of in Washington State pursuant to the Commercial Rules of the AAA.  NYTO opposed Bal's motion to reargue and made a cross-motion for monetary sanctions and an injunction to prevent Bal from making any additional filings in the litigation.  In an order dated January 26, 2009, the State Court denied Bal's motion to reargue. Although the State Court also denied NYTO's motion for sanctions and an injunction, it warned Bal of the consequences of continuing his frivolous conduct:  "Though *pro se*, plaintiff must abide by the orders of this court and other applicable laws or he will face the consequences (monetary or otherwise) of disobedience, or worse, defiance thereof."

Bal's untimely appeal was dismissed by the New York Appellate Division, First Department in May 2008. His subsequent motion to reinstate the appeal was dismissed by the First Department. Bal voluntarily withdrew the NY Arbitration, but then filed a second demand for arbitration, this time in Washington State (the "Washington Arbitration"), against NYTO Trade Incorporation, John Castoro and Izzy Garcia, all of which are named defendants in this action.  Bal did not prosecute his arbitration claims against NYTO Defendants despite having numerous opportunity and time. *See* Affidavit of Charles M. Cruikshank III, Esq. (NYTO Arbitration Attorney) ( January 17, 2011)  (Syed Decl. Ex. A).

In May 2012, NYTO Defendants were forced to file an order to show cause for preliminary injunction against Bal as Bal had waged a barrel of Internet and email war against NYTO Defendants defaming reputation, character and engaging in tortuous business interference.  The Supreme Court denied the motion because there was no pending case in the State Supreme Court as NYTO did not bring a lawsuit against Bal, was not required to file an answer to Bal's complaint and NYTO defendants had made no counterclaims against Bal. *See* Order at 1, *Mergent Servs.*, No. 07/601777 (Mar. 26, 2013) (Syed Decl. Ex. B). *See also* Order at 1, *Mergent Servs.*, No. 07/601777 (Mar. 26, 2013) (Syed Decl. Ex. C).

 In May 2013, Bal filed a motion seeking recusal of the State Court judge and reargument of the State Court's March 2013 order.  On February 27, 2014, the State Court denied the motion to for recusal, noting that the motion came "more than five years after the court ruled adversely against" Bal, and adhered to its original decision reinstating its dismissal of the claims against ITEX. On March 19, 2014, Bal filed a notice of appeal of the February 27 Order.

11

**The Instant Action**

On September 24, 2013, Bal commenced an action in this Court (the "Instant Action") against the NYTO Defendants and other ITEX defendants, along with a petition for a writ of mandamus against three additional defendants. On October 18, 2013, this Court, *sua sponte*, dismissed Bal's claims against defendants the State of New York; the State of New Jersey; the U.S. Securities and Exchange Commission; the Law Office of Frankfurt Kurnit Klein & Selz, P.C.; Cameron Myler; Jeremy Goldman; the Law Office of Joseph Maira; Joseph Maira; and Soma Syed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

On December 20, 2013, the ITEX Defendants moved for a more definite statement of the Complaint pursuant to Rule 12(e). NYTO Defendants joined ITEX Defendants motion for a more definite statement of the Complaint.  On January 12, 2014, Bal wrote a letter to the Court requesting leave to file an amended complaint.  The Court granted Bal's request, mooting the pending motion for a more definite statement.  Bal has added a litany of other corporations to Defendant Castoro's names to appear legitimate in his various baseless claims in the Federal Court.   Bal and newly-added plaintiffs Mergent Services and Business Watchdog filed the Amended Complaint on April 11, 2014.

## **FACTUAL ALLEGATIONS**[2]

ITEX owns and operates and online barter exchange marketplace. NYTO is a broker/franchise of ITEX.  Bal maintained an account with ITEX.   FAC ¶¶ 1, 7.  Bal alleges that he is the owner of a sole proprietorship named "Mergent Services" and the founder of "Business Watchdog", a "consumer advocacy organization."  FAC ¶ 1.

---

[2] The following statement of facts is based upon the allegations in the Amended Complaint and filings in the State Court Action, which are annexed to the ITEX Motion to Dismiss.

In Count I, Bal alleges a variety of common law claims arising from his dealings with the NYTO Defendants.  This hodgepodge of allegations may be summarized as follows:

- In December 2002 (FAC ¶ 29), November 2003 (FAC ¶ 31), and December 2004 (FAC ¶ 32), ITEX sold Bal or eBuy-Sell, Inc. ("eBuy-Sell")—a corporation of which Bal is "sole owner" (FAC ¶ 30))—a total of $56,650 in advertising services, including $1,650 commission.  On April 7, 2007, either defendants (FAC ¶¶ 31-32) or a third party (FAC ¶ 29) refused to provide this advertising, giving rise to liability for conversion, conspiracy and aiding and abetting conversion, and breach of contract.  FAC ¶ 29, 31-33.

- In April 2007, eBuy-Sell paid ITEX $721 (including a $21 commission) for a gift certificate that turned out to be "unusable"; in May 2007, ITEX converted that money by refusing to refund it to eBuy-Sell.  FAC ¶ 36.

- On or about June 4, 2007, Castoro threatened Bal to drop the State lawsuit.  On or about June 6, 2007, purportedly as retaliation for Bal's refusal to voluntarily dismiss the State Court Action (FAC ¶ 30), ITEX tortuosly interfered with Bal's business relationships by freezing eBuy-Sell's account, which contained $1,686.58.  Since May 7, 2011, ITEX has refused to refund Bal the remaining balance in the account, thereby breaching an unidentified contract with eBuy-Sell and converting eBuy-Sell's money.  FAC ¶ 37.

- Castoro executed his threat and tortuosly interfered with Bal's business relationship with eBuy-Sell.  FAC ¶ 30.

- Bal is entitled to the return of $5,190 in "association payments" they paid to ITEX monthly from April 2002 through May 2011.  FAC ¶¶ 34-35.

13

- NYTO, Castoro, Castoro's phantom corporations and Garcia have breached the implied covenant of good faith and fair dealing, breached fiduciary and contractual duties, and tortuously interfered with Bal's business relationships.

In Count II, Bal attempts to establish a RICO violation, 18 U.S.C. §§ 1961-68, by recasting many of his common law claims as crimes and adding two categories of new allegations. *First*, he alleges that on five occasions between February 2011 and February 2012, certain defendants sent e-mails to ITEX members in New York and New Jersey promoting various illegal gambling events, and then laundered the proceeds of these events by reporting them on their tax returns. FAC ¶¶ 90-92.[3] *Second*, Bal alleges that ITEX converted or embezzled money from or otherwise harmed, various third parties completely unrelated to Bal or his businesses (FAC ¶¶ 76-81, 95-97).

In Count IV, Bal alleges that NYTO failed to advise the court in the State Court Action that it was an unauthorized foreign corporation, leading to "a denial of plaintiff's right to a fair and speedy resolution of the issues presented" in that action. FAC ¶ 145. Bal further alleges that NYTO tried to limit Bal's 1st Amendment rights by filing a Temporary Restraining Order and Preliminary Injunction. FAC ¶ 146.

## LEGAL STANDARD

Rule 12(b)(6) mandates dismissal of a cause of action if it does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mere conclusory averments are insufficient to meet this pleading threshold; rather, a claim must be supported by specific factual allegations, which if accepted

---

[3] Bal's money laundering allegations, strewn throughout the Amended Complaint, state that the NYTO Defendants laundered money not by *failing* to report the income on NYTO's tax returns, but by reporting that income as "legally obtained." *See* FAC ¶¶ 55, 70, 73, 85, 90-92.

as true, are sufficient to support the accusation's plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

While Rule 8 encourages pleading brevity, the Supreme Court has made clear that a complaint must plead enough information to give the defendant notice of "which of its actions gave rise to the claims upon which the complaint is based" and address the basic questions of who, did what, to whom (or with whom), where, and when. *Twombly*, 550 U.S. at 565 n.10; *E&L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 32 (2d Cir. 2006).

Because Bal is proceeding *pro se,* the Court must liberally construe his pleadings "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999). "However, a *pro se* plaintiff's speculative or conclusory claims will not suffice." *Andrews v. Ford*, 2009 WL 2870086 (S.D.N.Y. Sept. 3, 2009) (citing *Hudson v. Greiner,* 2000 WL 1838324, at *2 (S.D.N.Y. Dec. 13, 2000)).

## ARGUMENT

### I.

### BAL FAILS TO STATE ANY COMMON LAW CLAIM

**A.**      ***Bal is Barred from Asserting Claims on Behalf of eBuy-Sell***

NYTO joins and adopts ITEX Defendants memorandum of law that claims by Bal on behalf of eBuy-Sell must be dismissed because Bal lacks standing to assert them.

Even if Bal *could* assert eBuy-Sell's claims, the claims based on the December 13, 2004, April 2007 and June 6, 2007 events would be time barred.

**B.**     *Bal is Barred from Asserting Claims Accruing Before September 24, 2007*

Bal asserts claims for breach of contract, conspiracy to commit conversion and aiding and abetting conversion against the NYTO Defendants for their alleged refusal to provide advertising services and gift certificates to Bal (or to eBuy-Sell) and for their refusal to refund payments for those services.  FAC ¶¶ 29, 30, 31, 32, 36.  Bal also asserts a tortious interference claim against ITEX for its freezing of eBuy-Sell's account.  FAC ¶ 30.  All of these claims are time barred.

Breach of contract claims are subject to a six-year statute of limitations, running from the date of the alleged breach.  *See* CPLR § 213(2); *Verizon New York, Inc. v. Sprint PCS*, 43 A.D.3d 686, 687 (1st Dep't 2007).  Bal alleges that the NYTO Defendants' breaches of contract arising from the advertising sales occurred on April 7, 2007 (FAC ¶¶ 31, 32), more than six years prior to the filing of his original complaint in this action on September 24, 2013, and thus outside the limitations period.

Conversion claims, including conspiracy and aiding and abetting conversion, are subject to a three-year statute of limitations, running from the date of the alleged conversion. *See* CPLR § 214(3); *Maya NY, LLC v. Hagler*, 106 A.D.3d 583, 585 (1st Dep't 2013); *Hebrew Institute for Deaf and Exceptional Children v. Kahana*, 57 A.D.3d 734, 735 (2d Dep't 2008) (conspiracy claim "stands or falls with the underlying tort"); *Hudson v. Delta Kew Holding Corp.*, 2014 WL 1924324, at *4 (Sup. Ct. Suffolk Cty, Apr. 22, 2014) (aiding and abetting claim "is governed by the same statute of limitations that is applicable to the underlying tort").  Bal alleges that the conversion of the payment for gift certificates took place on May 26, 2007.  FAC ¶ 36.  He further alleges that the conspiracy and aiding and abetting conversion of the payment for advertising services took place on some date "subsequent[]" to April 7, 2007.  FAC ¶¶ 29, 31, 32.  This date could be no later than May

25, 2007, when Bal filed the State Court Action based on these transactions.  Because all of these claims accrued more than three years prior to the filing of the Complaint, they also are time-barred.

Tortious interference with business relationship claims are subject to a three-year statute of limitations, running from "when the defendant performs . . .  the alleged interference."  *Thome v. Alexander & Louisa Calder Foundation*, 70 A.D.3d 88, 108 (1st Dep't 2009) (citing CPLR § 214(4)); *see Gun Hill Road Service Station, Inc. v. ExxonMobil Oil Corp.*, 2013 WL 395096, at *17 (S.D.N.Y. Feb. 1, 2013).  Bal alleges that NYTO interfered with his business relationship with eBuy-Sell on June 6, 2007, when ITEX froze eBuy-Sell's account.  FAC ¶ 30.  Because this claim, too, accrued more than three years prior to the filing of the Complaint, it is time-barred.

**C.**     ***Bal Fails to State a Claim for His Remaining Common Law Claims***

> **1.**     **Bal Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Arising from the ITEX Member Agreement and Rules**

Bal complains that two provisions of the ITEX Marketplace Rules.  Section 2.4 gives ITEX the discretion to terminate a member account.  Section 5.4 concerns the ability of an ITEX member with a terminated account to "spend down" the remaining balance in his or her account after termination.  Bal contends that "[b]y connecting [these] two Rules, Itex embezzles funds belonging to its members" and has thereby breached the implied covenant of good faith and fair dealing.  FAC ¶¶ 41-43.

The implied covenant of good faith and fair dealing, implicit in all contracts, "can only impose an obligation consistent with other mutually agreed-upon terms in the contract. It does not add to the contract a substantive provision not included by the parties."  *Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 198-99 (2d Cir. 2005) (citations and internal

quotation marks omitted).  "[C]ourts have refused attempts to impose liability on a party that engaged in conduct permitted by a contract, even when such conduct is allegedly unreasonable." *Suthers v. Amgen*, 441 F. Supp. 2d 478, 485 (S.D.N.Y. 2006).

Bal's implied covenant claim is simply an attempt to impose liability on the NYTO Defendants for adhering to reasonable contractual provisions to which Bal expressly and voluntarily agreed.  Rather than alleging that the NYTO Defendants took some action which had "the effect of destroying or injuring the right of [Bal] to receive the fruits of the contract," *Dalton v. Educational Testing Service*, 87 N.Y.2d 384, 389 (1995), Bal simply laments that the Spend Down Status provision is unfair and should be stricken.  Indeed, the primary remedy sought for the purported breach is not damages, but "an order declaring Itex's Spend Down Status null and void."  FAC ¶ 48(O).  Because the implied covenant does not allow Bal to re-write his contract, this claim must be dismissed as well.  *See Dalton*, 87 N.Y.2d at 389; *Broder*, 418 F.3d at 198-99.

## II.

## BAL FAILS TO STATE A RICO CLAIM[4]

A.   *Bal Is Time-Barred From Recovering for Any Injuries Discovered or Discoverable Prior to September 24, 2009*

Civil RICO claims are subject to a four-year statute of limitations, "triggered when plaintiffs discover or should have discovered their RICO injury."  *Frankel v. Cole*, 313 F. App'x 418, 419-20 (2d Cir. 2009) (citing *Rotella v. Wood*, 528 U.S. 549, 554, 557 (2000)).

---

[4] To date, Bal has not submitted any RICO Case Statement, as required by Judge McMahon's Individual Rule III.B and RICO Case Standing Order.  This failure has prejudiced the NYTO Defendants' ability to respond to the RICO claim and warrants dismissal.  *See, e.g.*, *Zaeretsky v. Zaretsky*, 2011 WL 8085263, at *2-*4 (E.D.N.Y. Oct. 13, 2011), *aff'd*, 529 F. App'x 97 (2d Cir. 2013); *Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243, 259 (W.D.N.Y. 2010).

Because RICO claims rely on multiple underlying violations, the Second Circuit "recognize[s] a 'separate accrual' rule under which a new claim accrues, triggering a new four-year limitations period, each time plaintiff discovers, or should have discovered, a new injury caused by the predicate RICO violations." *Bingham v. Zolt*, 66 F.3d 553, 559 (2d Cir. 1995). However, "[a] necessary corollary of the separate accrual rule is that ***plaintiff may only recover for injuries discovered or discoverable within four years of the time suit is brought***." *Id.* at 560 (emphasis added). Accordingly, to the extent Bal's RICO claims stem from injuries discovered or discoverable prior to September 24, 2009, four years from the filing of the initial complaint in this action, they are time-barred. *See id.* at 559; *Strother v. Harte*, 171 F. Supp. 2d 203, 209 (S.D.N.Y. 2001).

Here, Bal alleges ***no*** RICO injury within that four-year window; on the contrary, his alleged injuries were discovered or discoverable prior to September 24, 2009. *See* FAC ¶¶ 66 (April 7, 2007), 70 (same), 73 (same), 87-88 (June 2007). While Bal alleges various acts committed against third parties (including eBuy-Sell)[5] in 2011, 2012, and 2014, Bal does not allege any resulting injury to *his own* business or property. *See* FAC ¶¶ 75, 76-81, 96-97. Similarly, although Bal alleges that the NYTO Defendants "promoted illegal interstate gambling and collected unlawful debts" in 2011 and 2012, he fails to allege any injury he suffered from those acts. *See* FAC ¶¶ 90-92. Thus, even if Bal had otherwise stated a RICO claim—as shown below, he has not—the claims are time-barred.

---

[5] As explained in Section I.A., eBuy-Sell's injuries are distinct from Bal's, and Bal lacks standing to assert claims based on those injuries.

**B.**     ***Bal Fails to Allege a Pattern of Racketeering Activity***

Bal has not stated whether his RICO claim arises under 18 U.S.C. § 1962(a), (b), or

(c).[6]  But "[u]nder any prong of § 1962, a plaintiff in a civil RICO suit must establish a

'pattern of racketeering activity.'"  *GICC Capital Corp. v. Technology Finance Group, Inc.*,

67 F.3d 463, 465 (2d Cir. 1995); *see* 18 U.S.C. § 1962(a)-(c).  A "pattern of racketeering

activity" "requires at least two acts of racketeering activity . . .  the last of which occurred

within ten years . . .  after the commission of a prior act of racketeering activity."  18 U.S.C.

§ 1961(5).  "The acts of racketeering activity that constitute the pattern must be among the

various criminal offenses listed in § 1961(1)."  *Spool v. World Child Int'l Adoption Agency*,

520 F.3d 178, 183 (2d Cir. 2008).  In the section of the Amended Complaint entitled

"Racketeering Activity" (FAC ¶¶ 53-98), Bal sets forth an array of purported predicate acts,

including embezzlement, money laundering, extortion and promotion of illegal gambling.

However, as pleaded by Bal, none of these acts support a RICO claim.

**1.**     **Bal's Allegations of Embezzlement, Money Laundering and Extortion Do Not Constitute "Racketeering Activity"**

a.     ***Embezzlement is not a Predicate Act***

---

[6] Although Bal fails to identify the prong under which his RICO claim falls, the claim also fails for reasons specific those prongs.  Specifically, under § 1962(a) and (b), Bal has failed to "allege a use or investment injury that is distinct from any injury resulting from the racketeering predicate acts themselves."  *USA Certified Merchants, LLC v. Koebel*, 262 F. Supp. 2d 319, 331 (S.D.N.Y. 2003).  Under § 1962(c), Bal has not "alleged the existence of two distinct entities" as to NYTO, *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013), because the alleged enterprise merely "consist[s] of that corporate defendant together with related companies, employees, or agents."  *Palatkevich v. Choupak*, 2014 WL 1509236, at *15 (S.D.N.Y. Jan. 24, 2014) (McMahon, J.) (citations omitted); *see* FAC ¶¶ 50, 52.  And because Bal does not state a cause of action [under for] a substantive violation of RICO under § 1962(a), (b), or (c), any RICO conspiracy claim under § 1962(d) also fails.  *See First Capital Asset Management v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004).

Under RICO's definitions section, 18 U.S.C. § 1961(1), embezzlement constitutes "racketeering activity" only if it violates 18 U.S.C. § 64 (relating to embezzlement from pension and welfare funds) or 18 U.S.C. § 501(c) (relating to embezzlement from union funds). Simple embezzlement is not a RICO predicate act. *See id.*; *Weizmann Institute of Science v. Neschis*, 229 F. Supp. 2d 234, 255 (S.D.N.Y. 2002) ("Neither larceny by embezzlement nor larceny by false promise falls within the RICO statutory definition of racketeering activity.").

Although Bal alleges a host of "embezzlements" on the part of the NYTO Defendants, Bal does not and cannot allege that these "embezzlements" involved pension, welfare or union funds. To the contrary, he repeatedly alleges that the NYTO Defendants refused to give back money that Bal (or third parties) had deposited. *See* FAC ¶¶ 65-68, 69-71, 72-74, 75, 76-81. In other words, Bal claims the "conversion by the embezzler of property belonging to another which has been entrusted to the embezzler to hold on behalf of the owner": classic larceny by embezzlement under state law. *People v. Yannett*, 49 N.Y.2d 296, 301 (1980). These acts do not constitute "racketeering activity."

          b.     ***Bal Fails to State a Claim for Money Laundering***

Bal alleges that NYTO laundered money by reporting on its tax returns (1) income from its alleged embezzlements, (2) income from states in which it is unauthorized to do business, and (3) income from illegal gambling events. *See* FAC ¶¶ 65-68, 69-71, 72-74, 90-92. These allegations fail to state a money laundering offense as a matter of law.

Unlike embezzlement, money laundering may constitute "racketeering activity." *See* 18 U.S.C. § 1961(1) (including 18 U.S.C. § 1956, "relating to the laundering of monetary instruments"). To allege a violation of 18 U.S.C. § 1956, Bal must plead, among other things, that "the defendant *conducted a financial transaction* in interstate commerce" and

that "the transaction involves the *proceeds of [specified] unlawful activity*." *Palatkevich v. Choupak*, 2014 WL 1509236, at *18 (S.D.N.Y. Jan. 24, 2014) (McMahon, J.) (emphasis added); *see* 18 U.S.C. § 1956(a)(1)(A). "Specified unlawful activity" includes all the crimes enumerated in 18 U.S.C. § 1961(1), along with a variety of other crimes, but it does not include larceny by embezzlement.  18 U.S.C. § 1956(c)(7); *see U.S. v. Napoli*, 54 F.3d 63, 68 (2d Cir. 1995).  Nor does it include doing business in a state without authorization.  *See* 18 U.S.C. § 1956(c)(7).  Accordingly, to the extent that Bal contends that the unlawful "proceeds" to be derived from embezzlement or doing business without authorization (FAC ¶¶ 54-62, 65-68, 69-71, 72-74), those allegations do not support a charge for money laundering.

Moreover, as to *all* his money laundering allegations, Bal has failed to allege any "financial transaction" conducted by NYTO with the purportedly unlawful proceeds. *See* 18 U.S.C. § 1956(a)(1).  Rather, Bal alleges that NYTO reported those proceeds on its tax returns.  The act of filing a tax return is not a "purchase, sale, loan, pledge, gift, transfer or other disposition," and it does not involve "the movement of funds by wire or other means," the use monetary instruments, or "the transfer of title to any real property."  18 U.S.C. § 1956(c)(3)-(4) (defining "transaction" and "financial transaction").  In this way, even if any proceeds alleged here *were* from a "specified unlawful activity," the *conduct* alleged would still not constitute laundering under the statute.

c.   ***Bal Fails to State a Claim for Extortion***

Bal's allegations that Castoro and ITEX threatened to sue Bal and freeze eBuy-Sell's ITEX account if Bal did not withdraw the State Court Action (FAC ¶¶ 86-89) fail to establish "extortion" as a matter of law.

22

Extortion may constitute "racketeering activity" under 18 U.S.C. § 1961(1).  The crime is defined in the Hobbs Act, 18 U.S.C. § 1951(b)(2), as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  The Hobbs Act requires "that a person must 'obtain' property from another party to commit extortion."  *Scheidler v. National Organization for Women, Inc.*, 537 U.S 393, 404 (2003).  "Obtaining property requires 'not only the deprivation but also the acquisition of property.'"  *Sekhar v. U.S.*, 133 S. Ct. 2720, 2725 (2013) (quoting *Scheidler*).  In other words, the defendant must have "received 'something of value' from [the victim] that they could exercise, transfer, or sell."  *Scheidler*, 537 U.S. at 405; *see Sekhar*, 133 S. Ct. at 2725.  The Supreme Court has explained that to ignore this requirement would "eliminate the recognized distinction between extortion and the separate crime of coercion," the latter of which "involves the use of force to restrict another's freedom of action."  *Id.* at 405.

Here, the alleged acts do not constitute extortion.  The only "property" of which Bal alleges to have been deprived is his right to prosecute his claim against Castoro and others in state court.  *See* FAC ¶ 87.  Bal has not and cannot allege that Castoro and ITEX sought to "[do] anything affirmative with that right."  *U.S. v. Gotti*, 459 F.3d 296 at 324 (2d Cir. 2006).  Bal does not and could not allege that Castoro intended to "exercise, sell, transfer, or take some other analogous action" with Bal's right to sue.  *Id.*  Indeed, the Supreme Court just last year cited "compelling union members *to drop lawsuits* against union leadership" as a classic example of coercion, as distinct from extortion.  *Sekhar*, 133 S. Ct. at 2726 (citing *People v. Kaplan*, 240 App. Div. 72, *aff'd* 264 N.Y. 675 (1934)) (emphasis added).  The alleged acts here are identical.  Bal has failed to allege any act of extortion as a matter of law.

2.    **Bal's Allegations of Promotion of Illegal Gambling and Collection of Unlawful Debts Do Not Constitute a "Pattern"**

When Bal's defective allegations of embezzlement, money laundering and extortion are put aside, what remains of the NYTO Defendants' purported "racketeering activity" are Bal's claims that "Itex, NYTO, Castoro, and Garcia promoted illegal interstate gambling and collected unlawful debts," which Bal alleges based upon a series of e-mails to ITEX members sent between February 2011 and February 2012 (the "Gambling Predicates"). FAC ¶¶ 90-92. However, Bal cannot base a RICO claim on these allegations, both because Bal lacks standing to assert them and because they fail to constitute a "pattern" of racketeering activity.

a.    *Bal Has No Standing as to the Gambling Predicates*

In order to demonstrate standing on a RICO claim, "a plaintiff must plead, at a minimum, '(1) the defendant's violation of § 1962, (2) an injury to *the plaintiff's* business or property, and (3) causation of the injury by the defendant's violation.'" *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003) (quoting *Commercial Cleaning Services, L.L.C. v. Colin Service Systems, Inc.*, 271 F.3d 374, 380 (2d Cir. 2001)) (emphasis added). Here, Bal has alleged no injury whatsoever to his business or property resulting from the Gambling Predicates. *See* FAC ¶¶ 90-92. Thus, Bal lacks standing to assert a RICO claim based on these acts.

b.    *The Gambling Predicates Do Not Constitute a "Pattern"*

In order to establish a "pattern" of racketeering activity, "[t]he acts of racketeering activity that constitute the pattern . . . must be 'related, and either amount to or pose a threat of continuing criminal activity." *Spool*, 520 F.3d at 183 (quoting *Cofacrédit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)). "The latter so-called 'continuity'

requirement can be satisfied either by showing a 'close-ended' pattern—a series of related predicate acts extending over a substantial period of time—or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Id.*

Here, Bal has alleged neither close- nor open-ended continuity and thus has not alleged a "pattern" of racketeering. Bal has not pleaded close-ended continuity because the Gambling Predicates took place over the course of only twelve months and do not conceivably involve a "complex, multi-faceted conspiracy." *Spool*, 520 F.3d at 184 (2d Cir. 2008); *accord H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989). Bal has not pleaded open-ended continuity because the alleged enterprise—ITEX, White, Best, Wade, Benson, NYTO and Castoro (FAC ¶¶ 50, 52)—"primarily conducts a legitimate business," an online barter exchange marketplace, and Bal has not pleaded any facts "from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Cofacrédit*, 187 F.3d at 243; *see Spool*, 520 F.3d at 185-86 (same).

## III.

### BAL FAILS TO STATE A CONSTITUTIONAL CLAIM

In its October 18, 2013 Order of Service, this Court dismissed Bal's constitutional claims against the attorneys and law firms formerly named as defendants in this case (the "Attorney Defendants") for failure to state a claim. Order of Service 6-7, Oct. 18, 2013, ECF No. 5. Construing Bal's claims as brought under 28 U.S.C. § 1983, the Court held that Bal had alleged neither that "a right secured by the Constitution or laws of the United States was violated" nor that "the right was violated by a person acting under the color of state law," as required to plead a claim under § 1983. Order of Service 6 (citing *West v. Atkins*, 487 U.S.

42, 48 (1988)).  Bal now attempts to evade this holding by asserting precisely the same deficient constitutional claims against the NYTO Defendants as were asserted against the Attorney Defendants.  *Compare* Compl. ¶¶ 48-52, *with* FAC ¶¶ 144-45, 147.  These recycled allegations fail to state a claim for the same reasons previously articulated by this Court.

First, Bal does not allege the violation of any federally-guaranteed right.  While "[t]he right to a 'speedy and public trial' in criminal prosecutions is a right guaranteed by the Sixth Amendment . . . . Plaintiff[s] [have] not alleged that [they were] criminally prosecuted."  Order of Service 6 (citing *Klopfer v. North Carolina*, 386 U.S. 213, 223-24 (1967)).  "Since the Sixth Amendment applies only to criminal actions, [Bal has] failed to state a claim that [his] constitutional right to a speedy trial was violated."  *Id.*  Likewise, Bal's claim a violation of his "right to appeal" a civil court's dismissal, but that right does not even exist for a criminal conviction, let alone a civil judgment.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).

*Second*, Bal does not allege that the NYTO Defendants "acted under color of a state 'statute ordinance, regulation, custom, or usage.'"  Order of Service 6 (quoting 42 U.S.C. § 1983).  "Private parties are not generally liable under the statute."  *Id.* (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838-42 (1982); *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978)). Of course, NYTO is a private party, and Bal's allegations, in their entirety, describe "merely private conduct."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999).  For these reasons, Bal fails to state any constitutional claim.

*Finally*, Bal claims that NYTO Defendants violated Bal's 1st Amendment right by "…maliciously filing requests for a Temporary Restraining Order and Preliminary Injunction."  FAC ¶ 146.  This claim similarly fails for the reasons stated above.

## <u>CONCLUSION</u>

For the foregoing reasons, the NYTO Defendants respectfully request that the Court grant its motion to dismiss the Amended Complaint in its entirety.  Despite being given the opportunity to amend his pleadings, Bal merely pleads baseless, unsupportable claims.  Bal must not be permitted to extend his assault on the NYTO Defendants any further.  His claims should be dismissed with prejudice and without leave to replead.

Dated: June 9, 2014

s/s

_____
By: Soma S. Syed, Esq., Of Counsel
LAW OFFICE OF JOSEPH MAIRA
1229 Avenue Y, Ste. 5C
Brooklyn, NY 11225
Phone: 718-368-232
soma.syedesq@gmail.com
somasyed@hotmail.com
Mogul12218@aol.com
*Attorneys for Defendants*