UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

BUSINESS WATCHDOG, MERGENT                    :
SERVICES, and JOHN ANDRIES BAL, JR.,                         13 Civ. 6794 (CM)
                                              :
                          Plaintiffs,
                                              :
                -v-
                                              :

ITEX CORPORATION, STEVEN WHITE,               :
personally and in the capacity of CEO, CFO,
and Chairman of the Board, ERIC BEST,         :
personally and in the capacity of Director,
JOHN WADE, personally and in the capacity     :
of Director, ROBERT BENSON, personally
and in the capacity of Vice President, NYTO   :
TRADE INCORPORATED, JOHN CASTORO              :
aka NYTO TRADE INCORPORATION aka
NYTO TRADING CORPORATION aka NYTO             :
TRADE EXCHANGE and 44 TRADE
CORPORATION, aka NYTO TRADE, INC.,            :
personally and in the capacity of President,
and IZZY GARCIA, personally and in the        :
capacity of Manager,
                                              :
                          Defendants.
                                              :
-----------------------------------------------------------x


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**


John Andries Bal, Jr., Agent
85 Kenmare Street Apt. 35
New York, New York 10012
(212) 966-7576
MERGENTserv@msn.com

The plaintiffs are JOHN ANDRIES BAL, JR. ("Bal"), Mergent Services ("Mergent Services"), a sole proprietorship owned by Bal, and Business Watchdog ("Business Watchdog"), a consumer advocacy organization founded by Bal (collectively, the "plaintiffs"). Bal is a private United States citizen who is acting in the capacities of *Private Attorney General*[1], agent for JOHN ANDRIES BAL, JR., and assignee of eBuy-Sell.com, Inc. ("eBuy-Sell").

Bal is the sole owner of eBuy-Sell. On July 7, 2014, eBuy-Sell made an assignment of this lawsuit to Bal (Plaintiffs' Aff. at Exhibit 1)[2]. Therefore, Bal is permitted to represent eBuy-Sell.

New York's First Department and the Second Department each have held that an individual assignee of a corporation may sue without a lawyer, "despite the fact that the assignment may have been made to circumvent the statutory prohibition against a corporation appearing *pro se*." *Traktman v. City of New York*, 182 A.D.2d 814, 815 (2d Dep't 1992); *see also Kinlay v. Henley*, 57 A.D.3d 219, 220, 868 N.Y.S.2d 62 (1st Dep't 2008); *Kamp v. In Sportswear Inc.*, 39 A.D.2d 869, 332 N.Y.S.2d 983 (1st Dep't 1972), *rev'g on dissenting opinion below*, 70 Misc.2d 898, 335 N.Y.S.2d 306 (App. Term 1972).

---

[1] Private Attorney General is an equitable doctrine that allows a private citizen to bring a lawsuit in the public's interest. The Private Attorney General doctrine first appeared in the decision of the Honorable Jerome Frank of the 2nd Circuit U.S. Court of Appeals (*Assoc. Indus. of New York* v. *Ickes*, 134 F.2d 694, 704 (2d Cir. 1943). More recently, in *Holmes v. SIPC*, 503 U.S. 283 (1992), a RICO case, Justice O'Connor pointed to Congress' purpose of bringing "the pressure of 'private attorneys general' on a serious national problem for which public prosecutorial resources" are inadequate.
[2] Plaintiffs' Aff. at _____ refers to the Exhibits attached to Plaintiffs' Affirmation in *Opposition* to Defendants' Motions to Dismiss dated August 11, 2014.

The defendants are ITEX Corporation ("ITEX"), Steven White ("White"), CEO, CFO, and Chairman of the Board of Directors of ITEX, Eric Best ("Best"), Director of ITEX, John Wade ("Wade"), Director of ITEX, Robert Benson ("Benson"), Vice President of ITEX, NYTO Trade Incorporated ("NYTO"), John Castoro ("Castoro"), former Vice President of ITEX and current President of NYTO, and Izzy Garcia ("Garcia"), Manager of NYTO (collectively, the "defendants", "RICO defendants", or "derivative defendants").

### ITEX and NYTO have Forfeited their Right to File Motions to Dismiss the Complaint

A motion to dismiss is a special proceeding.  ITEX and NYTO are *unauthorized foreign corporations* unlawfully conducting business in New York State ("NYS") that forfeited their right to file motions to dismiss the complaint as a result of evading payment of NYS taxes and tax filings.  New York Business Corporation Law ("BCL"), *Actions or Special Proceedings by Unauthorized Foreign Corporations § 1312,* states:

> "(a) A foreign corporation doing business in this state without authority **shall not maintain any action or special proceeding in this state** . . ." (emphasis added)

On December 29, 1999, the NYS Department of State ("DOS") annulled ITEX's authority to do business in NYS as a *domestic corporation* (Plaintiffs' Aff. at Exhibit 6) as a result of evading payment of taxes and tax filings.  On June 26, 2002, the DOS annulled ITEX's authority to do business in NYS *as a foreign corporation* (Plaintiffs' Aff. at Exhibit 7) for evading payment of taxes and tax filings.  NYTO, located in Rahway, New Jersey, never obtained the authority from the DOS to do business in NYS (Plaintiffs' Aff. at Exhibit 8).

Despite the DOS annulments of ITEX's authority to do business in NYS and NYTO's failure to obtain DOS authority to do business in NYS, both ITEX and NYTO have unlawfully conducted continuous business activities in NYS for over a decade. ITEX and NYTO evaded payment of taxes and tax filings on an estimated **$100 million** in sales and **$2.4 million** in association fees.

If the ITEX and NYTO motions are not voided by operation of BCL § 1312, Bal presents the following:

### The Defendants' Motions to Dismiss are Premature

Bal has produced enough evidence at this pleading stage to support the allegations against the defendants.  Additional evidence is in the hands of the defendants.  Should the court require additional evidence, Bal respectfully requests that defendants' motions to dismiss the complaint be *stayed* until discovery has been completed.

### Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept[ ] as true the factual allegations in the complaint and draw[ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-259 (2d Cir. 2006).  "A complaint may not be dismissed under the Rule unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts" entitling her to relief. *Id.* at 250 (internal quotations omitted)."

This is a *pro se action*.  The Supreme Court in *Haines v. Kerner, et al.*, 404 U.S. 519; 92 S. Ct. 594 (1972), citing *Conley*, stated *pro se* pleadings are held "to less

stringent standards than formal pleadings drafted by lawyers" and "however inartfully pleaded" pleadings should not be dismissed unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.", see *Conley v. Gibson*, 355 U.S. 41, 45-46.

Herein, if Bal "inartfully" pleads a cause of action, he respectfully requests an opportunity to amend his pleadings.

### Preliminary Statement

Bal has been an ITEX member either as Mergent Services or eBuy-Sell since April 18, 2002 (Plaintiffs' Aff. at Exhibit 2) and a shareholder since January 24, 2013 (Plaintiffs' Aff. at Exhibit 9).  ITEX is a member of the barter industry. According to the International Reciprocal Trade Association ("IRTA"), the leading barter trade association, 400,000 companies worldwide participate in the barter industry and earn an estimated $12 billion dollars annually.

Bal, a businessman, chose to join ITEX specifically because of its advertising incentives.  If Bal bought advertising from an ITEX member, 50% of the advertising costs would be reimbursed to him.  Early in Bal's membership he designed an advertising campaign to sell high-end residential air purifiers and purchased about $17,000 of advertising from ITEX members.  The ads ran and the advertising campaign was successful.  As required by ITEX's advertising incentives, Bal was reimbursed 50% of his advertising costs.

Subsequently, Bal paid for additional advertising that ITEX refused to provide.  That led to litigation that lasted six years.  The litigation was terminated for reasons *other than the merits of the complaint*.  During this six-year period

- 4 -

Bal discovered that defendants White, Best, Wade, Benson, NYTO, Castoro, and Garcia are a criminal enterprise that is harming ITEX, shareholders, and members.

### Bal's Claims are not Time-barred

The defendants incorrectly assert that several of Bal's claims are beyond either a three-year or six-year statute of limitations. However, applying the statutory tolling period, only 8 months and 3 days have run. Therefore, Bal's claims are well within a three-year or six-year statute of limitations.

On May 25, 2007, Bal filed an action in the New York State Supreme Court – New York County against the defendants that, among other claims, sought the return of $56,650 because ITEX refused to provide the advertising that Bal purchased (*Mergent Services and John Bal v. ITEX Corporation, NYTO Trade Incorporation, John Castoro, Izzy Garcia, et al.*) ("State Court" or "State Court lawsuit").

*The clock began to run on April 7, 2007* when ITEX breached the agreement to provide Bal with advertising. Bal filed the State Court action on May 25, 2007 (this did not stop the clock). *The clock stopped on June 12, 2007* when the defendants filed an arbitration demand in the State Court lawsuit (an elapsed period of 2 months and 5 days).

*The clock started again on March 26, 2013* when the State Court dismissed the lawsuit regarding the issue of arbitrability (Plaintiffs' Aff. at Exhibit 14). *The clock stopped again on September 24, 2013* when Bal filed the instant action presently before the court (an elapsed period of 5 months and 28 days).

Combining both periods, only *8 months and 3 days* can be counted towards the running of any statute of limitations.  This defeats the defendants' assertions that Bal's claims are beyond either a 3-year or 6-year statute of limitations.

The period in which the arbitrability of a claim is being determined by the courts is statutorily tolled.  The Court of Appeals has held that the time arbitrability is being argued is a tolling period. See *Joseph Francese, Inc. v. Enlarged City School District of Troy,* 95 N.Y.2d 59, 710 N.Y.S.2d 315 (2000).

Bal submitted a motion to reargue the State Court's March 26, 2013 decision.  On February 24, 2014, the State Court granted Bal's motion to reargue several issues, including the issue of arbitrability, but adhered to the decision of March 26, 2013.  Using the State Court's final termination on February 24, 2014, *only 2 months and 5 days can be counted towards a statute of* limitations.

On September 24, 2013, *less than six months after the State Court dismissed Bal's complaint*, Bal filed the instant action presently before this court. The State Court's dismissal was not based on "a final judgment upon the merits."  The instant action is based upon the same "series of transactions or occurrences" as those raised in the State Court lawsuit and independent  claims.

New York Civil Practice Law and Rules ("CPLR") § 205(a), in part, states:

> "New action by plaintiff.  If an action timely commenced is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the **plaintiff . . . may commence a new action upon the same transaction or occurrence or series of**

- 6 -

transactions or occurrences within six months . . ."
(emphasis added)

### Count I
### Breaches of contract

The court is respectfully referred to Plaintiffs' Affidavit in *Opposition* to Defendants Motions to Dismiss dated August 11, 2014.  Therein, the allegations in Count I are more fully developed and supported.

Subsequent to earlier purchases of advertising, Bal made three purchases of advertising for future use: $24,000 on December 26, 2002 (Plaintiffs' Aff. at Exhibit 10), $25,000 on November 21, 2003 (Plaintiffs' Aff. at Exhibit 11), and $6,000[3] on December 13, 2004 (Plaintiffs' Aff. at Exhibit 12).  Including $1,650 in commissions, the purchases totaled $56,650.

On or about April 7, 2007, ITEX breached each of these agreements by refusing to provide Bal with the advertising that he paid for or return his $56,650. Bal's direct appeal to White was denied (Plaintiffs' Aff. at 34).

On May 25, 2007, Bal filed the State Court lawsuit (Plaintiffs' Aff. at 13). After six years of grappling with the applicability of arbitration, on March 26, 2013, the State Court ordered the parties to arbitrate their dispute and dismissed the complaint (Plaintiffs' Aff. at Exhibit 14).  ITEX demanded the arbitration, the State Court granted ITEX's demand, and, since the March 26, 2013 order, ITEX has done nothing to pursue arbitration.

In effect, the State Court has ordered the parties down a dead-end street. The State Court previously ordered the parties to arbitrate their dispute.  The

---

3  This purchase was made by eBuy-Sell.

arbitration was halted because NYTO, Castoro, and Garcia claimed they were unable to pay the arbitration fees. My financial situation has worsened and I am also unable to pay the arbitration fees.

On June 4, 2007, ten days after filing the State Court lawsuit against ITEX, NYTO, Castoro, Garcia, et al., Castoro telephoned and angrily threatened that if Bal did not withdraw the State Court lawsuit that he would, "Sue [Bal] for millions of dollars and put [eBuy-Sell] out of business by freezing the account."

Bal declined to withdraw the State Court lawsuit because ITEX would not return his funds.

On June 6, 2007, ITEX froze eBuy-Sell's account. In an email, Castoro stated eBuy-Sell's account was "frozen do [sic] to pending litigation" (Plaintiffs Aff. at Exhibit 15). eBuy-Sell's account remains frozen and the $1,686.58 balance unlawfully withheld (Plaintiffs' Aff. at Exhibit 16).

ITEX's freezing of eBuy-Sell's account tortuously interfered with eBuy-Sell's interstate business relationships. ITEX's 22,000 members are eBuy-Sell's customers. ITEX's freezing of eBuy-Sell's account prevented eBuy-Sell from making sales to, and purchases from, 22,000 ITEX members.

**ITEX harmed both Mergent Services and eBuy-Sell**

Bal, d/b/a Mergent Services, purchased $24,000 of advertising on December 26, 2002 (Plaintiffs' Aff. at Exhibit 10) and $25,000 of advertising of November 21, 2003 (Plaintiffs' Aff. at Exhibit 11). The purchases, plus $1,470 commissions, totaled $50,470. As a result of ITEX's breaches of contract, Bal

seeks the return of the $50,470 plus $580,000, to September 2013 and continuing, in lost profits.

eBuy-Sell purchased $6,000 of advertising on December 13, 2004 (Plaintiffs' Aff. at Exhibit 12).  The purchase, plus $180 commission, totaled $6,180.  As a result of ITEX's breach of contract and tortuous interference with business relationships eBuy-Sell seeks the return the $6,180, the account balance of $1,686.58, $700 in unusable Onyx Restaurant certificates, $472 from Manhattan Mini Storage not credited back on September 10, 2008, and in excess of $75,000, to September 2013 and continuing, in lost profits.

Bal has met the threshold to state a claim for breach of contract.  To state a claim for breach of contract, New York law requires that a Bal allege: (1) the existence of an agreement between Bal and defendant; (2) due performance of the contract by the Bal; (3) breach of the contract by the defendant; and (4) damages resulting from the breach.  *Command Cinema Corp. v. VCA Labs, Inc.,* *464 F.Supp.2d 191, 198 (S.D.N.Y.2006)* (citing *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir.2000).

It is well settled in New York that in a breach of contract case a Bal may recover not only losses sustained, but also gains prevented.  *Lieberman v. Templar Motor Co.*, 236 NY 139;  *Witherbee v. Meyer*, 155 NY 446;  *Wakeman v. Wheeler & Wilson Mfg. Co.,* 101 NY 205.  Where damage is certain, recovery will not be denied because the amount is uncertain.  The breaching party bears the risk of the uncertainty created by his breach.  *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264-265;  *Story Parchment Co. v. Paterson Parchment*

*Paper Co.,* 282 U.S. 555;  *Lee v. Seagram & Sons*, 552 F2d 447, 455-456;

*Berley Indus. v. City of New York*, 45 NY2d 683, 687;  *Spitz v. Lesser*, 302 NY

490, 494;  *Wakeman v. Wheeler & Wilson Mfg. Co., supra,* pg. 209.

## Count II
## Racketeering Influenced and Corrupt Organizations Act ("RICO")

The court is respectfully referred to Plaintiffs' RICO Case Statement.  Plaintiffs'

RICO Case Statement will be filed on or before August 25, 2014.

## Count III
## Derivative Shareholder Action

As demonstrated in the complaint, Bal alleges that White, Best, and Wade

(the "derivative defendants") violated their fiduciary duty to ITEX.

("[T]he purpose of the derivative action [is] to place in the hands of the

individual shareholder a means to protect the interest of the corporation from the

misfeasance and malfeasance of 'faithless directors and mangers'" (quoting

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949)); *Kamen v.*

*Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (same); *Jones v. H. F.*

*Ahmanson & Co.*, 1 Cal. 3d 93 (1969).

A derivative action allows shareholders to monitor and redress harm to

the corporation caused by management where it is unlikely that management will

redress the harm itself.  *Meyer v. Fleming*, 327 U.S. 161, 167 (1946).

The derivative defendants have not disputed the allegations of fiduciary

breaches against them.  They merely claim that Bal, a *pro se* litigant, cannot

represent ITEX in a derivative action.

Bal states that as private citizen and Private Attorney General he has standing to represent ITEX.

However, case law and practice dictate that it is Frankfurt Kurnit Klein & Selz, a law firm that has represented ITEX for many years, which cannot represent ITEX.

An issue that recurs is the extent to which the same lawyer or law firm can represent the corporation, the alleged wrongdoers, both the corporation and the alleged wrongdoers, or some other combination of parties. When serious claims that directors or officers have harmed the corporation, as herein, the corporation needs counsel separate from the directors and officers.

It would be is a conflict-of-interest for Frankfurt Kurnit Klein & Selz to represent ITEX. The Model Rules of Professional Conduct as adopted by the House of Delegates of the American Bar Association afford some guidance. Under Rule 1.7(b):

> "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person . . ."

In *Lewis v. Shaffer Stores Company,* 218 F. Supp. 238, 239 (S.D.N.Y. 1963), a derivative shareholder action, plaintiff moved for an order striking the subject corporation's answer and the appearance of Breed Abbott Morgan, a law firm that represented the corporation for many years. Plaintiff demanded "the Corporation to appear by genuinely independent counsel." The question before the court is whether Breed Abbott Morgan should appear for the corporation. The court concluded that "under the circumstances, including the [serious]

- 11 -

nature of the charges, and the vigor with which they are apparently being pressed and defended, I believe that it would be wise for the Corporation to retain independent counsel, who have had no previous connection with the Corporation, to advise it as to the position which it should take in this controversy. See *Garlen v. Green Mansions, Inc.*, 9 A.D.2d 760, 193 N.Y.S.2d 116 (1st Dept. 1959); *Marco v. Dulles*, 169 F. Supp. 622 (S.D.N.Y. 1959), appeal dismissed 268 F.2d 192 (2d Cir. 1959).

Counsel seeking to represent both the corporation and its directors in a derivative suit is faced with a potential conflict of interest. Since a derivative suit is brought by stockholders on behalf of the corporation, any benefit or award inures to the corporation. Thus, any efforts by counsel to minimize directorial liability have the concomitant effect of minimizing any recovery by the corporation.

The wrongdoing of the derivative defendants should not go unpunished. Under the circumstances, the derivative defendants cannot speak for ITEX. As demonstrated in case law presented herein, the interests of justice would be best served by appointment of independent counsel.

### Count IV
### Violations of Constitutional and Civil Rights
### (against ITEX, NYTO, Castoro, and Garcia)

ITEX, NYTO, Castoro, and Garcia (the "defendants") violated Bal's constitutional and civil rights.

**Civil Rights**

The defendants violated New York Civil Rights – Article 2 § 10, *Justice to Be Administered without Favor and Speedily* (the "Civil Rights Law"). In relevant part, the Civil Rights Law states:

> "Justice to be administered without favor and **speedily**. Neither justice nor right should be sold to any person, nor denied, nor deferred." (emphasis added)

Bal filed the State Court lawsuit on May 25, 2007. On March 26, 2013, nearly six years later, the complaint was dismissed. The dismissal was not based on the merits of the complaint.

Despite the passage of six years, seven of the eight defendants did not answer the complaint and no discovery was conducted.

The six-year delay was caused by the defendants' bad faith submissions to the State Court of a *special proceeding* to compel arbitration and a *fraudulent "alleged" contract* that contained an arbitration clause.

The defendants knew, or should have known, their status as an *unauthorized foreign corporation* prohibited them from submitting a special proceeding to compel arbitration and that the alleged contract was fraudulent.

**New York Business Corporation Law ("BCL") § 1312 prohibited ITEX and NYTO from filing a special proceeding**

The defendants caused a six-year delay by concealing from the State Court that they are *unauthorized foreign corporations* unlawfully conducting business in NYS and are <u>prohibited from filing a special proceeding to compel arbitration</u>.

BCL § 1312, *Actions or Special Proceedings by Unauthorized Foreign*

*Corporations*, in relevant part, states:

> "(a) A foreign corporation doing business in this state without authority **shall not maintain any action or special proceeding in this state**." (emphasis added)

On December 29, 1999 the NYS Department of State ("DOS") annulled ITEX's authority to do business in NYS as a *domestic* corporation (Plaintiffs Aff. at Exhibit 6) for evading payment of taxes and tax filings and on June 26, 2002 annulled ITEX's authority to do business in NYS as a *foreign* corporation (Plaintiffs' Aff. at Exhibit 7) for evading taxes and tax filings. Despite both annulments, ITEX has continued robust business activities in NYS.

NYTO never obtained the required authority from DOS to do business in NYS (Plaintiffs' Aff. at Exhibit 8). Despite not having the authority, to date, NYTO has continued doing robust business activities in NYS since 1999 and continually evaded payment of taxes and tax filings.

**The fraudulent alleged contract**

The defendants caused a six-year delay by misleading the State Court by repeatedly asserting an "alleged" contract (Plaintiffs' Aff. at Exhibit 17, Exhibit E) submitted by them was valid.

The State Court relied upon the alleged contract as the authority to compel arbitration. In 2009, Bal commenced an arbitration that was conducted by the American Arbitration Association. Subsequently, the arbitration was suspended due to NYTO's, Castoro's, and Garcia's refusal to pay their share of the arbitration fees.

The defendants knew, or should have known, the alleged contract they submitted to the State Court was fraudulent and their submission of it was misleading and would cause delay:

a)  Bal never saw the alleged contract before ITEX submitted it to the State Court and, therefore, could not have agreed to it.

b)  The alleged contract, by its own terms, is *invalid*.  As a significant term, it states the "agreement between the parties" must be "signed by both parties" (Plaintiffs' Aff. at 17, Exhibit E para. #8).

The alleged contract was never agreed to, never signed, and never dated by an "Authorized agent of ITEX" as required.  It was never agreed to, never signed, and never dated by Bal as required. Therefore, *by its own terms*, the alleged contract is *invalid*.

c)  Defendant Benson admitted the "UPDATED: May 17, 2002" date printed on the alleged contract (Plaintiffs' Aff. at 17, Exhibit E, last page) is *erroneous* and the date the alleged contract was actually created is unknown.  Benson guessed the alleged contract was created "sometime in early 2004" (Plaintiffs' Aff. at Exhibit 17, para. #16).

Therefore, the effective date, a critical element of any contract, is *ambiguous*.

The alleged contract was written and drafted entirely by ITEX.  All ambiguities go against the drafter.

Under New York law "the initial interpretation of a contract 'is a matter of law for the court to decide.'" *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996) (quoting *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 299 (2d Cir. 1996)); see also *Curry Rd. Ltd. v. K Mart Corp.,* 893 F.2d 509, 511 (2d Cir. 1990) ("Whether a contract is ambiguous is a question of law."). A court should construe a contract as a matter of law only if the contract is unambiguous on its face. See *Metro. Life Ins. Co. v. RJR Nabisco Inc.,* 906 F.2d 884, 889 (2d Cir. 1990). A contract is unambiguous if it "has 'a definite precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (alteration in original) (quoting *Breed v. Ins. Co. of N. Am.,* 385 N.E.2d 1280, 1282 (N.Y. 1978)); see also *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.,* 994 F.2d 105, 109 (2d Cir. 1993); *Metro. Life Ins. Co.,* 906 F.2d at 889. Where the contractual language is subject to more than one reasonable meaning and where extrinsic evidence of the parties' intent exists, the question of the proper interpretation should be submitted to the trier of fact. *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 573 (2d Cir. 1993); *Abner, Herrman &*

*Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 336 (S.D.N.Y. 2004).

d) Even if an "Authorized agent of ITEX" and Bal signed and dated the alleged contract, it would be void due to fraud.  ITEX concealed that it is unauthorized to do business 47 states, including NYS.

It is well settled in New York that "a misrepresentation of material fact, which is collateral to the contract and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud". See *Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (1986); *First Bank of Americas v. Motor Car Funding*, 257 A.D.2d 287, 690 N.Y.S.2d 17 (1st Dep't 1999).

The defendants' concealment that they are *unauthorized foreign corporations* and their submission of a *fraudulent contract* caused a six-year delay in the State Court lawsuit and violated Bal's civil rights.

**NYTO violated Bal's constitutional rights
by "sewer serving" a Notice of Entry**

On November 15, 2007, Bal notified the State Court and all the parties, including Cameron Myler, Esq. ("ITEX's attorney"), that he would be out-of-the-country and unavailable from November 19, 2007 to March 15, 2008 (Plaintiffs' Aff. at Exhibit 36).

During January and February 2008, while Bal was out-of-the-country, ITEX's attorney and Bal were communicating via email and discussing a possible settlement.  On February 1, 2008, ITEX's attorney emailed Bal a January 14,

2008 decision (misdated January 14, 2007) of the State Court that granted

ITEX's special proceeding to compel arbitration and dismissed Bal's complaint.

Importantly, the decision was twice stamped:

> "UNFILED JUDGMENT
> This judgment has not been entered by the
> Country Clerk and notice of entry cannot be
> served based hereon." (Plaintiffs' Aff. at Exhibit
> 37).

As intended, ITEX misled Bal into believing the Notice of Entry was not

filed.  Upon returning to New York on March 15, 2008, Bal discovered that ITEX

deceived him.  Despite regularly communicating with ITEX by email and  Bal's

providing ITEX with his email address for the service of papers, ITEX served the

Notice of Entry by mailing it to Bal's New York address and, knowing that he was

out-of-the-country, did not serve or notify him by email.

This was *sewer service.*

The Notice of Entry was mailed to Bal's New York address on February 6,

2008.  By the time he returned to New York on March 15, 2008 more than thirty

days passed and, as ITEX intended, Bal was precluded from both rearguing the

State Court's decision *and* appealing it to the Appellate Division.

The right to petition the courts is protected by the First Amendment. See

*California Transport v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).  ITEX

deprived Bal's right under the First Amendment to petition the State Court and

NYS Supreme Court, Appellate Division, First Department ("Appellate Division").

The constitutional guarantee of due process of law, found in the Fifth and

Fourteenth Amendments to the U.S. Constitution, interpreted to include protection

under the Bill of Rights, prohibit arbitrarily or unfairly depriving individuals of their basic constitutional rights to life, liberty, and the pursuit of happiness.  ITEX violated the Fifth and Fourteenth Amendments by arbitrarily and unfairly depriving Bal of basic constitutional rights to life, liberty, and the pursuit of happiness.

The right to sue and defend in the courts is one of the highest and most essential privileges of citizenship.  See *Chambers v. Baltimore & O.R.R.*, 207 U.S. 142, 148 (1907); *McKnett v. St. Louis & S.F. Ry.*, 292 U.S. 230, 233 (1934). ITEX's sewer service of the Notice of Appeal deprived Bal of the "highest and most essential privileges of citizenship", "The right to sue and defend in the courts."

**NYTO, Castoro, and Garcia attempted
to chill Bal's First Amendment speech rights**

On March 13, 2012, NYTO, Castoro, and Garcia (the "defendants") maliciously requested a Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI") to chill Bal's First Amendment speech rights.

At first opportunity, the State Court disposed of the defendants' frivolous claims.  On March 26, 2013, the State Court denied the defendants motion for a TRO and PI and stated:

> "Movants [the defendants] have asserted no claim by way of any complaint or counterclaim by them against plaintiff, and they therefore cannot show that they are likely to prevail on such claim." (Plaintiffs' Aff. at Exhibit 35)

This was a failed and malicious effort to chill Bal's First Amendment speech rights to prevent him from communicating and doing business with his

customers – 22,000 ITEX members. The defendants lacked probable cause and a substantial basis in law. The prosecution of their TRO and PI was for the purpose of harassing, intimidation, punishing, or otherwise maliciously inhibiting Bal's speech and associational rights.

The defendants' request for a TRO and PI terminated in Bal's favor. To succeed on a claim for malicious prosecution, a plaintiff must show that the defendant initiated a proceeding that terminated in favor of the plaintiff. See *Engel v. CBS*, 93 NY2d 195, 204 [1999]; See *Black v. Green Harbour Homeowners' Assn.*, 37 AD3d 1013, 1014 [2007]; See also *I.G. Second Generation Partners, L.P. v. Duane Reade*, 17 AD3d 206, 207 [2005]).

It has been long established that infringements on speech rights "are the most serious and the least tolerable infringement on First Amendment rights." See *Nebraska Press Assn. v. Stuart*, 427 US 539, 559 [1976]; See also *Whitney v. California*, 274 US 357, 376 [1927, Brandeis, J., concurring] ["(to) justify suppression of free speech there must be reasonable ground to fear that serious evil will result if free speech is practiced"]) and a party seeking to obtain such a restraint bears a correspondingly heavy burden of demonstrating justification for its imposition (*Organization for a Better Austin v. Keefe*, 402 US 415, 419 [1971]; *Near v. Minnesota ex rel. Olson*, 283 US 697, 713 [1931]).

Dated: August 11, 2014

John Andries Bal, Jr., Agent
85 Kenmare Street #35
New York, New York 10012
(212) 966-7576

Docket No. 13 CV 6794 (CM)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x

BUSINESS WATCHDOG, MERGENT
SERVICES, and JOHN ANDRIES BAL, JR.,

Plaintiffs,

-v-

ITEX CORPORATION, STEVEN WHITE
personally and in the capacity of CEO, CFO,
and Chairman of the Board, ERIC BEST,
personally and in the capacity of Director,
JOHN WADE, personally and in the capacity
of Director, ROBERT BENSON, personally
and in the capacity of Vice President, NYTO
TRADE INCORPORATED, JOHN CASTORO
aka NYTO TRADE INCORPORATION aka
NYTO TRADING CORPORATION aka NYTO
TRADE EXCHANGE and 44 TRADE
CORPORATION, aka NYTO TRADE, INC.,
personally and in the capacity of President,
and IZZY GARCIA, personally and in the
capacity of Manager,

Defendants.

------------------------------------------x

MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

JOHN ANDRIES BAL, JR., pro se
85 Kenmare Street #35
New York, NY 10012
(212) 966-7576
MERGENTserv@msn.com



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
Pro Se Intake Unit

*SCANNED*

**To:**   The Honorable <u>Judge Colleen McMahon</u>

**From:**  <u>S. Coretto,</u> Pro Se Intake Clerk, Docket Services, Ext. <u>1177</u>

**Date:**  <u>8/12/2014</u>

### Re: Bal v. ITEX Corporation et al       1:13-cv-06794-CM



     The attached document, which was received by this Office on <u>8/11/2014,</u> has been submitted to the Court for filing.  The document is deficient as indicated below. Instead of docketing the document for public access, it has been docketed as a court-view only docket entry. I am forwarding it to you for your consideration. See Fed. R. Civ. P. 5(d)(2)(B), (4).

( )   No original signature.

( )   No Affirmation of Service/ Proof of Service.

( X )   **Other:** <u>Pro Se Plaintiff appears to introduce additional plaintiffs as corporations on his caption.</u> <u>Please advise as to whether accept filing or return. Corporations can not appear Pro Se.</u>

     If you memo-endorse the filing, you do not need to return this memorandum to the Pro Se Office. Once your memo-endorsement is docketed and filed, all ECF users on the case will be notified.

     In the alternative, please return this memorandum with the attached papers to this Office, indicating at the bottom what action should be taken.

( ✓ )   **ACCEPT FOR FILING**        ( )   **RETURN TO** *PRO SE* **LITIGANT**

Comments:

_____

_____

_____

_____
United States District Judge
Dated: 8/12/14

_____
United States Magistrate Judge
Dated: