UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

JOHN ANDRIES BAL, JR.; BUSINESS
WATCHDOG; MERGENT SERVICES,

          Plaintiffs,

     v.

ITEX CORPORATION; STEVEN WHITE; ERIC
BEST; JOHN WADE; ROBERT BENSON; NYTO
TRADE INCORPORATED; JOHN CASTORO;
IZZY GARCIA,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

Case No: 13 Civ. 6794 (CM)


**REPLY MEMORANDUM OF LAW IN SUPPORT OF ITEX DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**


FRANKFURT KURNIT KLEIN & SELZ, P.C.
Edward H. Rosenthal
Jeremy S. Goldman
Andrew D. Jacobs
488 Madison Avenue, 10th Floor
New York, New York 10022
Phone:  (212) 980-0120
Fax:  (212) 593-9175

*Attorneys for Defendants ITEX Corp., Steven White,
Eric Best, John Wade, and Robert Benson*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

ARGUMENT ......................................................................................................... 1

I.      ITEX Has The Right to Defend This Action ..................................................... 1

II.     Bal's Claims Against White and Benson Must Be Dismissed ........................... 2

III.    Bal Cannot Assert eBuy-Sell's Claims ............................................................ 3

IV.     Bal's Common-Law Claims Fail ...................................................................... 3

        A.      Bal's Claims Accruing Before September 24, 2007 are Time-Barred ................. 3

        B.      Bal Has Not Stated a Fiduciary Duty Claim .......................................... 5

        C.      Bal Has Not Stated an Implied Covenant Claim .................................... 6

V.      Bal's RICO Claim Fails ................................................................................... 7

VI.     Bal Cannot Assert a Derivative Claim ............................................................. 8

VII.    Bal's Constitutional Claims Fail ...................................................................... 9

CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. New York State Educ. Dept.*,
   2010 WL 624020 (S.D.N.Y. Feb. 23, 2010) ........................................................................2

*Bernstein v. City of N.Y.*,
   2007 WL 1573910 (S.D.N.Y. May 24, 2007) .....................................................................10

*Biddle Sawyer Corp. v. Charkit Chemical Corp.*,
   1991 WL 60369 (S.D.N.Y Apr. 2, 1991).............................................................................7

*EBC I, Inc. v. Goldman Sachs & Co.*,
   5 N.Y.3d 11 (2005) ..............................................................................................................5

*Hoxworth v. Blinder Robinson & Co.*,
   980 F.2d 912 (3d Cir. 1990).................................................................................................8

*Jones v. Niagara Frontier Trasnp. Authority*,
   722 F.2d 20 (2d Cir. 1983)...................................................................................................3

*Joseph Francese, Inc. v. Enlarged City School Dist. of Troy*,
   95 N.Y.2d 59 (2000) ............................................................................................................4

*Leroy v. Paytel III Mgmt Assocs., Inc.*,
   1992 WL 367090 (S.D.N.Y. Nov. 24, 1992) .......................................................................8

*Madden v. Creative Services, Inc.*,
   872 F. Supp. 1205 (W.D.N.Y. 1993) ..................................................................................10

*Northern Shipping Funds I, LLC v. Icon Capital Corp.*,
   921 F. Supp. 2d 94 (S.D.N.Y. 2013)....................................................................................5

*Palm Bay Intern., Inc. v. Marchesi Di Barolo S.P.A.*,
   796 F. Supp. 2d 396 (E.D.N.Y. 2011) .................................................................................6

*Pandozy v. Segan*,
   518 F. Supp. 2d 550 (S.D.N.Y 2007), *aff'd*, 340 F. App'x 723 (2d Cir. 2009).....................10

*Paul v. Bank of America Corp.*,
   2011 WL 684083 (E.D.N.Y 2011).......................................................................................6

*Pharr v. Evergreen Gardens, Inc.*,
   2004 WL 42262 (S.D.N.Y. Jan. 7, 2004), *aff'd*, 123 F. App'x 420 (2d Cir.
   2005) ....................................................................................................................................8

*Reese v. Harper Surface Finishing Systems*,
  129 A.D.2d 159 (2d Dep't 1987) ............................................................2

*Rodriquez v. Wong*,
  No. 107164/2010, 2011 WL 12449775 (Sup. Ct. N.Y. Cty Feb. 9, 2011) ................9

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007) ................................................................2

*Ruti v. Knapp*,
  193 A.D.2d 662 (2d Dep't 1993) ............................................................2

*Sanchez v. Walentin*,
  2012 WL 336159 (S.D.N.Y. Jan. 31, 2012), *aff'd*, 526 F. App'x 49 (2d Cir. 2013) ....................................................................................3

*Sanchez v. Walentin*,
  526 F. App'x 49 (2d Cir. 2013) ............................................................3

*Schwartz v. Guterman*,
  109 Misc. 2d 1004 (Sup Ct. N.Y. Cty 1981), *aff'd*, 86 A.D.2d 804 (1st Dep't 1982) ....................................................................................9

*Zahl v. Kosovsky*,
  2011 WL 779784 (S.D.N.Y. Mar. 3, 2011), *aff'd*, 471 F. App'x 34 (2d Cir. 2012) ....................................................................................8

**Statutes**

18 U.S.C. § 1962(c) ...........................................................................7

42 U.S.C. § 1983 .............................................................................9

CPLR § 204(b) .............................................................................4, 5

CPLR § 205(a) .............................................................................4, 5

N.Y. Business Corporation Law § 1312 ......................................................1, 2

N.Y. Civil Rights Law Art. 2 § 10 ...........................................................10

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................2

**Other Authorities**

Siegel, Practice Commentarries, CPLR C401:1 ................................................2

## PRELIMINARY STATEMENT

In their opening brief, the ITEX Defendants show that Bal's state law claims are either time barred or fail to state any cognizable claim (Dkt. 37 ("Mot.") 10-16); that his RICO claims are both time barred and fail for a host of independent reasons (Mot. 16-22); that he cannot assert a shareholder derivative claim *pro se* (Mot. 22-24); and that he has alleged neither a deprivation of right nor state action so as to support a constitutional claim (Mot. 24-25). Bal has failed to respond timely or at all to some of these arguments in his opposition, abandoning his claims against White and Benson and submitting his RICO argument nearly a month after his opposition was due. To the extent he does respond, Bal misreads New York law to bar ITEX from defending this action and undersigned counsel from representing it, exploits the procedural mechanism of assignment to flout federal law regarding corporate *pro se* representation, and otherwise distorts the basis and nature of his claims to avoid dismissal.

## ARGUMENT

### I.
### ITEX HAS THE RIGHT TO DEFEND THIS ACTION

As an initial matter, Bal argues that under New York Business Corporation Law § 1312, ITEX has "forfeited [its] right to file motions to dismiss the complaint" because it is a foreign corporation doing business in New York without authority. Dkt. 66 ("Opp.") 2-3. This is a misreading of the law. The plain language of § 1312(b) makes clear that "[t]he failure of a foreign corporation to obtain authority to do business in this state . . . *shall not prevent the foreign corporation from defending any action or special proceeding* in this state." N.Y. Bus. Corp L. § 1312(b) (emphasis added). A motion to dismiss is, of course, a quintessential example

of "defending [an] action."[1]  Indeed, New York courts have allowed unauthorized foreign corporations to go much further than simply filing a motion to dismiss in defending an action under § 1312.  *See, e.g.*, *Reese v. Harper Surface Finishing Systems*, 129 A.D.2d 159, 161-65 (2d Dep't 1987) (allowing third-party complaint); *Ruti v. Knapp*, 193 A.D.2d 662, 663 (2d Dep't 1993) (allowing motion to compel arbitration).  Section 1312, therefore, does not strip ITEX of its right to defend itself against Bal's baseless claims.

## II.
## BAL'S CLAIMS AGAINST WHITE AND BENSON MUST BE DISMISSED

Bal asserts various state law claims against White and Benson.  In their opening brief, the ITEX Defendants set forth in detail why this Court does not have personal jurisdiction over White and Benson as to Bal's state law claims.  *See* Mot. 14-16.  However, nowhere in the memorandum of law, affirmation, or exhibits that Bal has submitted in opposition to the motion to dismiss does Bal give even a passing reference to these arguments.[2]  As a result, he has abandoned his state law claims against White and Benson, and the Court should dismiss those claims.  *See, e.g.*, *Adams v. New York State Educ. Dept.*, 2010 WL 624020, at 21 n.12 (S.D.N.Y. Feb. 23, 2010) (dismissing claim where *pro se* plaintiffs failed to respond to argument presented in motion to dismiss) (collecting cases).  Upon dismissal of Bal's state law claims, the only

---

[1] Bal's assertion that "a motion to dismiss is a special proceeding" is incorrect: a motion to dismiss is a request for relief within an action, not a "civil judicial proceeding in which a right can be established or an obligation enforced in summary fashion."  Siegel, Practice Commentaries, CPLR C401:1.

[2] In his opposition, Bal submitted not only a memorandum of law, but also a 39-page affirmation and over two hundred pages of exhibits.  Bal uses his affirmation to circumvent this Court's page limits on memoranda of law, setting forth additional facts and arguments regarding his implied covenant and breach of fiduciary duty claims.  Because the affirmation and exhibits are neither "attached to the complaint," "incorporated in it by reference," nor "integral to the complaint," they may not be considered on this Fed. R. Civ. P. 12(b)(6) motion.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  Nevertheless, to the extent Bal's improper submissions raise new arguments, the ITEX Defendants will address them in this reply brief.

remaining claim against White and Benson are Bal's RICO claim, which, for the reasons discussed in Part V, must also be dismissed.

## III.
## BAL CANNOT ASSERT EBUY-SELL'S CLAIMS

In their opening brief, the ITEX Defendants argued that eBuy-Sell's claims must be dismissed, in part due to the well-settled rule that a corporation cannot proceed *pro se* (*see Jones v. Niagara Frontier Trasnp. Authority*, 722 F.2d 20, 22 (2d Cir. 1983)).  *See* Mot. 8-9.  A week before his opposition was due, in a plain effort to circumvent this rule, Bal purported to assign eBuy-Sell's claims in this case to himself.  Opp. 1; Bal Aff. Ex. 1.  But the Second Circuit has "specifically barred the assignment of claims by a corporation to a layperson so as to permit the layperson to proceed *pro se*." *Sanchez v. Walentin*, 526 F. App'x 49, 51 (2d Cir. 2013) (citing *Jones*) (Summary Order), and the New York decisions cited by Bal (*see* Opp. 1) are inapt in this federal forum.  Indeed, the Second Circuit's bar on assignment applies where, as here, the plaintiff's claims sound in both federal and state law.  In *Sanchez*, for example, "[t]he complaint . . . allege[d] RICO violations and a litany of claims sounding in contract and fraud."  *Sanchez v. Walentin*, 2012 WL 336159, at *2 (S.D.N.Y. Jan. 31, 2012), *aff'd*, 526 F. App'x 49 (2d Cir. 2013) (*pro se* plaintiff could not pursue a corporation's claims, despite his purported assignment, because "[t]o allow plaintiff to appear *pro se* in this suit would allow him to flout a well-established and purposeful public policy by means of a procedural device.")

## IV.
## BAL'S COMMON-LAW CLAIMS FAIL

### A.    Bal's Claims Accruing Before September 24, 2007 are Time-Barred

As shown in the ITEX Defendants' opening brief, the relevant New York statutes of limitations bar Bal's various claims for breach of contract, conversion, and tortious interference.

*See* Mot. 10; Dkt. 38 ("FAC") ¶¶ 29, 30, 31, 32, 36.  Bal's argument to the contrary is based on a misinterpretation of the law.  *See* Opp. 5-7.

Bal argues that the statute of limitations on his claims was tolled for the nearly seven years between the date that the ITEX Defendants moved to compel arbitration in the State Court Action (June 6, 2007) and the date that the State Court adhered to its January 14, 2008 decision dismissing Bal's claims and compelling arbitration (February 24, 2014).  *See* Opp. 5-6.  For support, Bal cites CPLR § 204(b), which provides, "[w]here it shall have been determined that a party is *not* obligated to submit a claim to arbitration, the time which elapsed between the demand for arbitration and the final determination that *there is no obligation to arbitrate* is not a part of the time within which an action upon such claim must be commenced."  (Emphasis added).  In other words, CPLR § 204(b) "tolls the applicable period of limitation between the time a demand for arbitration is made and a final determination that the dispute is *not* the proper subject of arbitration."  *Joseph Francese, Inc. v. Enlarged City School Dist. of Troy*, 95 N.Y.2d 59, 62 (2000) (emphasis added).  By its plain terms, § 204(b) does not toll a limitations period where a court has determined that a dispute *is* arbitrable, as is the case here:  On January 14, 2008, the State Court dismissed all claims against ITEX and compelled arbitration as to those claims.  *See* Dkt. 38 ("Goldman Decl.") Ex. B.  Accordingly, § 204(b) does not toll the statute of limitations on Bal's claims.[3]

---

[3] Bal further argues that because he filed the current action within six months of the State Court's March 26, 2013 order reaffirming its January 14, 2008 dismissal of Bal's claims, the statute of limitations may be set aside under CPLR § 205(a).  *See* Mot. 6-7.  CPLR § 205(a) provides plaintiffs, under certain circumstances, six months after the termination of a lawsuit to commence a new action upon the same transaction or occurrence. Bal's State Court claims against ITEX were dismissed in their entirety on January 14, 2008 (Goldman Decl. Ex. B), and Bal's appeal of that decision was dismissed on May 22, 2008 (Goldman Decl. D).  Six years have passed since then. Bal's meritless and abusive attempts to reinstate his claims in State Court provide no basis to revive his claims under § 205(a).

Because CPLR §§ 204(b) and 205(a) are inapplicable here, there is no basis to toll or otherwise extend the limitations period for any of Bal's claims. Rather, for the reasons set forth in the ITEX Defendants' moving papers (*see* Mot. 10-11), Bal's claims accruing prior to September 24, 2007 (*see* FAC ¶¶ 29, 31, 32, 36) are time barred.

**B.**   **Bal Has Not Stated a Fiduciary Duty Claim**

In the Amended Complaint, Bal asserts a breach of fiduciary duty claim against White and Benson individually. *See* FAC ¶¶ 47, 48(P). As discussed in the Motion to Dismiss, putting aside this Court's lack of jurisdiction over White and Benson, this claim fails both because it is duplicative of Bal's breach of contract claim and because White and Benson owe no fiduciary duty to Bal. *See* Mot. 13-14. In his improper affirmation, Bal now attempts to cast his breach of fiduciary duty claim as against ITEX. *See* Dkt. 66 ("Bal. Aff.") ¶¶ 14-17, 39.

To the extent the Court considers it, Bal's new argument is meritless. Under New York law, "the elements of a cause of action for breach of fiduciary duty are: '(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom.'" *Northern Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 100 (S.D.N.Y. 2013). "A fiduciary relationship 'exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y.3d 11, 19 (2005). Here, Bal has made no non-conclusory allegations that a fiduciary relationship existed between him and ITEX, and he has alleged no damages whatsoever from ITEX's alleged attempt to "influence the outcome of [the NYTO] arbitration." Bal. Aff. ¶ 39; *see* FAC ¶ 47. He thus fails to state a claim.

In any event, even assuming there was some fiduciary relationship between Bal and ITEX, that relationship existed only "with regard to matters 'within the scope of the relation.'"

*Palm Bay Intern., Inc. v. Marchesi Di Barolo S.P.A.*, 796 F. Supp. 2d 396, 416 (E.D.N.Y. 2011) (quoting *Northeast Genera Corp. v. Wellington Advertising Inc.*, 82 N.Y.2d 158, 172-73 (1993)), *aff'd*, 480 F. App'x 643 (2d Cir. 2012).  Bal's business relationship with ITEX derived solely from Bal's status as a member of ITEX's barter exchange.  However, Bal's breach of fiduciary duty claim arises out of the ITEX's alleged actions in the NYTO Arbitration, not out of any actions ITEX took in the operation of the exchange.  *See* FAC ¶ 47; Bal Aff. ¶ 39.  ITEX's alleged conduct in connection with the NYTO Arbitration therefore falls outside the scope of any conceivable fiduciary relationship.  *See Palm Bay Intern., Inc.*, 796 F. Supp. 2d at 415-17.

## C.     Bal Has Not Stated an Implied Covenant Claim

In response to the ITEX Defendants' argument that his implied covenant of good faith and fair dealing claim should be dismissed as a mere attempt to re-write his contract with ITEX, Bal again changes the basis of his claim in his improper affirmation.  *See* Bal Aff. ¶¶ 18-23.  Bal now argues that ITEX has breached the implied covenant and good faith and fair dealing "by concealing from its members . . . that ITEX is unlawfully conducting business in 47 states."  *Id.* at ¶ 20.  But "[w]here the conduct complained of does not breach any express provision [of plaintiff's contract], the implied covenant of good faith will not be breached without some showing of intent to harm the other contracting party or a reckless disregard of it."  *Paul v. Bank of America Corp.*, 2011 WL 684083, at *6 (E.D.N.Y 2011) (citing *Carvel Corp. v. Diversified Memt. Group. Inc.*, 930 F.2d 228, 230 (2d Cir.1991)).  Bal has identified no term of any contract to which he is a party that ITEX has breached by allegedly "unlawfully conducting business in 47 states," and he has made no allegation that ITEX intended to harm him or recklessly disregarded his interests in so doing.  As such, his reformulated implied covenant claim, to the extent this Court considers it, must be dismissed.

6

**V.**

**BAL'S RICO CLAIM FAILS**

In response to the RICO arguments in the opening brief, Bal refers the Court in his opposition to "Plaintiffs' RICO Case Statement," which was due May 12, 2014, pursuant to Judge McMahon's Individual Rule III.B.  *See* Opp. 10; Bal. Aff. ¶¶ 40-41.  Bal did not submit his RICO Case Statement until September 9, 2014, nearly a month after he submitted his opposition papers and nearly four months after its May 12 deadline. *See* Dkt. 71.  Rather than clarify his RICO allegations, Bal's RICO Case Statement makes them yet more abstruse, adding ill-fitting statutes that were allegedly violated (*see* Dkt. 71 at 21-25) and a host of third-party "victims" entirely irrelevant to his claim (*id.* at 8-15).  Notably, Bal also drops ITEX Corporation as a RICO defendant (*see id.* at 2, 4, 27), presumably in an effort to rectify his failure to allege two "distinct entities" as required under 18 U.S.C. § 1962(c).  *See* Mot. 17 n.8 (citing *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013)).

"The RICO Case Statement is not conceived to perform the function of an amended complaint, and so on this motion [this Court] can consider only the allegations of the complaint." *Biddle Sawyer Corp. v. Charkit Chemical Corp.*, 1991 WL 60369, at *4 (S.D.N.Y Apr. 2, 1991). However, even in light of the additional allegations in the RICO Case Statement, Bal fails to surmount his RICO claim's fundamental deficiency: he has alleged no cognizable injury within RICO's four-year limitations period.  As explained in the opening brief, Bal's claims are time barred because his RICO injuries were discovered or discoverable prior to September 24, 2009. *See* Mot. 16 (citing, *inter alia*, *Bingham v. Zolt*, 66 F.3d 553, 559 (2d Cir. 1995)).  The Amended Complaint contains no allegations of injury to Bal not discovered or discoverable prior to that

date (*see* Mot. 16; FAC ¶¶ 66, 70, 73, 87-88), and Bal's lengthy RICO Case Statement adds none. *See* Dkt. 71 at 5-15, 30.[4]

In the RICO Case Statement, Bal relies on *Hoxworth v. Blinder Robinson & Co.*, 980 F.2d 912 (3d Cir. 1990), and *Leroy v. Paytel III Mgmt Assocs., Inc.*, 1992 WL 367090 (S.D.N.Y. Nov. 24, 1992), in arguing that his RICO claim is not time barred. *See* Dkt. 71 at 30-31. But these cases merely stand for the proposition that a RICO claim may be timely if the statute of limitations on the predicate offense has run, but the four-year statute of limitations on RICO claims has not. *See Hoxworth*, 980 F.2d at 924-25; *Leroy*, 1992 WL 367090, at *4. Here, not only have the underlying statutes of limitations run, but the RICO statute of limitations has run as well. Accordingly, and because his RICO Case Statement has shown amendment to be futile, Bal's RICO claim should be dismissed with prejudice.

## VI.
## BAL CANNOT ASSERT A DERIVATIVE CLAIM

Bal does not seriously dispute the ITEX Defendants' argument (Mot. 22-24) that because he is proceeding *pro se*, he cannot assert a shareholder derivative claim on behalf of ITEX. *See* Opp. 11 (asserting without citation to any authority that "as private citizen and Private Attorney General [Bal] has standing to represent ITEX"). Instead, Bal presents another red herring, arguing that undersigned counsel, Frankfurt Kurnit Klein & Selz P.C. ("Frankfurt Kurnit") cannot simultaneously represent ITEX and its directors and officers in defense of the derivative

---

[4] Bal states that he "los[t] $580,000 in profits to September 2014 and continuing," but this alleged injury flowed directly from the alleged embezzlements in 2002 and 2003, which were discovered in 2007. *See* FAC ¶¶ 66, 70, 73, 87-88. As a result, these injuries are not "new and independent" so as to implicate the Second Circuit's separate accrual rule. *See* Mot. 16; *Zahl v. Kosovsky*, 2011 WL 779784, at *12 (S.D.N.Y. Mar. 3, 2011) (where "injuries flowed directly from" conduct discovered more than four years prior to commencement, separate accrual rule did not apply), *aff'd*, 471 F. App'x 34 (2d Cir. 2012); *Pharr v. Evergreen Gardens, Inc.*, 2004 WL 42262, at *2 (S.D.N.Y. Jan. 7, 2004), *aff'd*, 123 F. App'x 420 (2d Cir. 2005) (same).

claim.  *See* Opp. 11-12.  This argument puts the cart before the horse: in order for there to be a

conflict of interest preventing Frankfurt Kurnit from representing ITEX in a shareholder

derivative claim, there must be a validly asserted claim that could conceivably proceed to

discovery.  *Rodriquez v. Wong*, No. 107164/2010, 2011 WL 12449775, at *1 (Sup. Ct. N.Y. Cty

Feb. 9, 2011) (purpose of separate counsel requirement is "to prevent the individual defendants

from thwarting proper inquiry into their actions").  Due to Bal's *pro se* status, there is no such

claim here.

Moreover, a corporation and its directors do not need separate counsel to defend against a

"meritless strike suit" or a suit brought "for purposes of harassment." *Schwartz v. Guterman*, 109

Misc. 2d 1004, 1006 (Sup Ct. N.Y. Cty 1981), *aff'd*, 86 A.D.2d 804 (1st Dep't 1982).  In such

instances, "separate counsel for the corporation or partnership may delay the matter and cause a

needless expense, ultimately borne by the shareholders or partners."  *Id.*  As the Goldman

Declaration sets forth in detail, Bal is a vexatious litigant who has harassed ITEX with meritless

claims for nearly seven years.  *See* Goldman Decl. ¶¶ 2-5.  His derivative claim is part and parcel

of this harassment campaign.  As such, requiring separate counsel to represent ITEX and its

directors and officers would only increase the "needless expense" of this litigation.  *Schwartz*,

109 Misc. 2d at 1006.

## VII.
## BAL'S CONSTITUTIONAL CLAIMS FAIL

As to his constitutional claims, Bal does not counter the ITEX Defendants' argument that

because the ITEX Defendants have not acted "under color of any [state] statute, ordinance,

regulation, custom, or usage," 42 U.S.C. § 1983, they cannot be held liable for the alleged

violation of Bal's constitutional rights.  Nor does Bal allege any additional facts in his two

hundred pages of opposition papers to suggest that the ITEX Defendants have acted under color

of state law.  Bal, does, however, add an entirely new "civil rights" claim, asserting that the ITEX Defendants violated Article 2 § 10 of the New York Civil Rights Law by participating in the State Court Action.  *See* Opp. 12-17.

This new claim must be dismissed.  First, entirely new claims raised for the first time in an opposition to a motion to dismiss may not be considered by the Court.  *See Pandozy v. Segan*, 518 F. Supp. 2d 550, 554 n. 1 (S.D.N.Y 2007) (collecting cases), *aff'd*, 340 F. App'x 723 (2d Cir. 2009).  This is true even where the plaintiff is *pro se.  See id.* (new claims raised in *pro se* plaintiff's opposition papers not considered by Court on motion to dismiss); *Bernstein v. City of N.Y.*, 2007 WL 1573910, at *10 (S.D.N.Y. May 24, 2007) (same).  In any event, Article 2 § 10 of the New York Civil Rights Law provides, in relevant part, that "Neither justice nor right should be sold to any person, nor denied, nor deferred."  Like the rights secured in the federal Bill of Rights, this provision does not allow a private right of action against a private person for action not taken under color of law. *Cf. Madden v. Creative Services, Inc.*, 872 F. Supp. 1205, 1211 (W.D.N.Y. 1993) (dismissing claim alleging that private individual conducted unlawful search and seizure under § 8 of the New York Civil Rights Law because "there are no cases which reveal the existence of a private right of action for damages against a private person who violates this section").  Bal has thus failed to state a constitutional or civil rights claim under federal or New York law.

## CONCLUSION

For the foregoing reasons and those stated in their moving papers, the ITEX Defendants respectfully request that the Court grant its motion to dismiss the Amended Complaint in its entirety, with prejudice.

Dated: September 18, 2014

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By:＿＿＿/s/ Edward H. Rosenthal＿＿＿＿＿＿＿
  Edward H. Rosenthal
  Jeremy S. Goldman
  Andrew D. Jacobs
488 Madison Avenue, 10th Floor
New York, New York 10022
Phone:  (212) 980-0120
Fax:  (212) 593-9175

*Attorneys for Defendants ITEX Corp., Steven White,
Eric Best, John Wade, and Robert Benson*