UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

BUSINESS WATCHDOG, MERGENT
SERVICES, and JOHN ANDRIES BAL, JR.,

        Plaintiffs,

    -against-

ITEX CORPORATION, STEVEN WHITE,
personally and in the capacity of CEO, CFO,
and Chairman of the Board, ERIC BEST,
personally and in the capacity of Director,
JOHN WADE, personally and in the capacity
of Director, ROBERT BENSON, personally
and in the capacity of Vice President, NYTO
TRADE INCORPORATED, JOHN CASTORO
aka NYTO TRADE INCORPORATION aka
NYTO TRADING CORPORATION aka NYTO
TRADE EXCHANGE and 44 TRADE
CORPORATION, aka NYTO TRADE, INC.,
personally and in the capacity of President,
and IZZY GARCIA, personally and in the
capacity of Manager,

        Defendants.

———————————————————————x

No. 13-cv-6794 (CM) (*Pro se*)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/29/14

**MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS
TO DISMISS PLAINTIFF'S COMPLAINT**

McMahon, J.:

    Plaintiffs *pro se* John Andries Bal, Jr. ("Bal"), Business Watchdog ("Watchdog"), and

Mergent Services ("Mergent," and together with Bal and Watchdog, the "Plaintiffs") bring this

action against Defendants ITEX Corporation ("ITEX"), Steven White ("White"), Eric Best

("Best"), John Wade ("Wade"), Robert Benson ("Benson," and together with ITEX, White, Best,

and Wade, the "ITEX Defendants"), NYTO Trade Incorporated ("NYTO"), John Castoro (and

1

Copies mailed/faxed/handed to counsel on 10/29/14

together with various aliases alleged to be NYTO Trade Incorporation, NYTO Trading Corporation, NYTO Trade Exchange, 44 Trade Corporation, and NYTO Trade, Inc., "Castoro"), and Izzy Garcia ("Garcia," and together with NYTO and Castoro, the "NYTO Defendants"). The *pro se* complaint alleges claims in conversion, breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and tortious interference with business relationships against ITEX, White, Benson, and the NYTO Defendants, as well as violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, against the ITEX Defendants, NYTO, and Castoro, and a shareholder derivative action on behalf of ITEX against White, Best, and Wade for breach of fiduciary duty. There are also purported constitutional and civil rights claims against ITEX and the NYTO Defendants.

Currently before the Court are: (1) the ITEX Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6); and (2) the NYTO Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

For the following reasons, the Defendants' motions are granted and the case is dismissed.

## BACKGROUND

Plaintiff Bal, a resident of New York, is the owner of Mergent, a sole proprietorship, and the founder of Watchdog, a "consumer advocacy organization." First Amended Complaint ("FAC") ¶ 1.

Bal is also a current shareholder and member of ITEX, a Nevada corporation with its principal place of business in Bellevue, Washington. *Id.* ¶ 7. Defendants White, Wade, and Best are directors of ITEX, and Defendant Benson serves as a Vice President. *Id.* ¶¶ 8-10. White, Wade, Best, and Benson's principal place of business is in Bellevue, Washington. *Id.* White and Benson are residents of Washington. Decl. of Steven White; Decl. of Robert Benson.

2

NYTO is a Delaware corporation with its principal place of business in Rahway, New Jersey. FAC ¶ 11. Defendant Castoro serves as NYTO's President and Defendant Garcia as its manager. *Id.* ¶¶ 12-13. Castoro and Garcia's principal place of business is in Rahway, New Jersey.

In Count One, Bal pleads multiple state common law claims – all in the same count – against Defendants ITEX, White, Benson, and the NYTO Defendants (the "Count One Defendants"), including conversion, breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and tortious interference with business relationships. The claims arise out of contracts for advertising services entered into between Bal, ITEX, and NYTO, as well as acts of purported wrongdoing and malfeasance allegedly committed by the Count One Defendants. *Id.* ¶¶ 22-47. Obviously, this is an inappropriate pleading — individual claims should have been separately pleaded on separate counts.

In Count Two, Bal alleges that the ITEX Defendants, NYTO, and Castoro (the "Count Two Defendants") violated RICO, 18 U.S.C. §§ 1961-68, by engaging in a pattern of racketeering activity that injured Bal's business or property. *Id.* ¶¶ 49-98. Bal filed a RICO Case Statement dated September 9, 2014 (the "RICO Case Statement") to supplement his claims.

In Count Three, Bal brings a shareholder derivative action on behalf of ITEX against Defendants White, Wade, Best and Benson (the "Count Three Defendants") for breach of fiduciary duty, arising out of numerous acts of alleged corporate malfeasance and negligence of the Count Three Defendants. *Id.* ¶¶ 100-141.

In Count Four, Bal asserts constitutional and civil rights claims against private actors ITEX and the NYTO Defendants (the "Count Four Defendants") (*Id.* ¶ 144), for violating his right to a fair and speedy trial (*Id.* ¶ 145), free speech (*Id.* ¶ 146), and due process (*Id.* ¶ 147).

3

## STATEMENT OF FACTS

For the purposes of this motion to dismiss, the facts alleged in the FAC will be accepted as true.

ITEX is a business-to-business exchange service. ITEX operates the ITEX Marketplace, an online exchange that allows its members, through each other or through a broker, to use "ITEX dollars" to barter goods and services.[1]  Members entrust ITEX with, among other things, transferring funds between members pursuant to member transactions, recording members' sales and purchases, maintaining members' accounts, storing and maintaining members' private identification and financial information, and recording and reporting members' sales to the Internal Revenue Service. Pl.'s Opp'n Affirmation, dated August 11, 2014 ("Bal's Affirm."), ¶ 16. ITEX receives a cash commission on member transactions. *Id.*

Bal is a member and shareholder of ITEX. *Id.* at 3. An entity called eBuy-Sell (not a party, but a corporation in which Bal has a controlling interest), is also a member of ITEX. *See* FAC ¶¶ 30, 72. NYTO is ITEX's broker in New York. Bal's Affirm. ¶ 22.

Bal has long had an acrimonious, indeed litigious, relationship with ITEX and NYTO. The acrimony arises out of the sale of advertising services and other goods to Bal through the ITEX Marketplace, and ITEX and NYTO's alleged failure to keep their end of the bargain. The FAC alleges four instances in which Bal or eBuy-Sell paid for advertising with ITEX dollars but got neither ads nor a refund:

> (1) On December 26, 2002, ITEX sold Bal $24,000 of advertising "under the pretext of selling him advertising in the New York Daily News." Garcia and NYTO brokered

---

[1] "An ITEX dollar is an accounting unit used to record the value of transactions as determined by the members in the [ITEX] Marketplace. ITEX dollars are not intended to constitute legal tender, securities, or commodities and have no readily determinable correlation to USD." ITEX Co., Annual Report (Form 10-K), at 1-2 (Oct. 21, 2013); *see Newman v. Warnaco Grp., Inc.*, 335 F.3d 187, 195 (2d Cir. 2003) (taking judicial notice of corporation's 10-K form).

the transaction and stated that the purchased advertising could be used by Bal in the future as needed. Bal paid for this advertising with an ITEX check payable to the Daily News in the amount of $24,000. ITEX withdrew $24,000, as well as a $720 commission from Bal's ITEX account. FAC ¶ 29. On or about April 7, 2007, the Daily News refused to run Bal's advertising, stating it never received a check from ITEX. Bal alleges ITEX sold him "bogus advertising," and then refused to the return $24,720 he had paid to it. *Id.*

(2) On November 21, 2003, ITEX sold Bal $25,000 of advertising. Garcia and NYTO again brokered the transaction, and again represented that the purchased advertising could be used by Bal in the future as needed. ITEX withdrew $25,000 and its $750 commission from Bal's account. On or about April 7, 2007, ITEX allegedly refused to provide advertising or return $25,750 to Bal's account. *Id.* ¶ 31.

(3) On December 13, 2004, ITEX sold non-party eBuy-Sell $6,000 of advertising in yet another transaction brokered by Garcia. Garcia stated that eBuy-Sell could use this advertising in the future as needed. ITEX withdrew $6,000 and a $180 commission from eBuy-Sell's account. On or about April 7, 2007, ITEX refused either to provide advertising or to return $6,180 to eBuy-Sell's account. *Id.* ¶ 32.

(4) In or about April 2007, ITEX sold eBuy-Sell $700 of Onyx Restaurant gift certificates. ITEX withdrew $700 and its $21 commission from eBuy-Sell's account. The gift certificates were "unusable," but ITEX refused to return $721 to eBuy-Sell. *Id.* ¶ 36.

Bal also alleges that ITEX stole $395 in membership fees from him back in 2002. RICO Case Statement at 5.

Bal further alleges that transactions entered into in the ITEX Marketplace, are governed by a "Member Agreement," and "Marketplace Rules," of which all ITEX members must agree. The Marketplace Rules contain the following terms:

Member Eligibility: We [ITEX] reserve the right to approve, deny, suspend, or terminate membership or use of an Account by any business or individual, in our sole discretion, for any reason or no reason.

Spend Down Status: If either party terminates your Account and your Account has a positive ITEX dollar balance (where sales exceed purchases), the Account may be placed in "Spend Down status," after ITEX is paid any Fees then owing plus the transaction Fee on the positive balance. Spend Down status shall mean you will have twelve months to spend the positive balance in your Account....At the end of the twelve-month period...ITEX, in its sole discretion, may terminate the Account, regardless of any

remaining positive ITEX dollar balance or may opt to assess an annual maintenance fee of $200...until the Account's balance is reduced to zero and the account is closed.

FAC ¶ 42.

The Marketplace Rules also contain an arbitration clause (found in the record before me at Decl. of Jeremy S. Goldman ("Goldman Decl."), Exhibit B, Order of Justice Debra A. James, Supreme Court of New York, New York County, dated January 14, 2008, at 2 (the "State Court Opinion"). The clause states that "[t]he parties agree that in the event of a dispute, the parties will resolve the dispute under the commercial rules of the American Arbitration Association in Bellevue, Washington. Notwithstanding any provision of law, any claim arising out of the creation, performance or termination of this agreement by either party must be brought within one year of the accrual of the cause of action." *Id.*

Bal alleges that ITEX members are not notified of changes to Member Agreement and Marketplace Rules and are not aware of their contents, so ITEX can "embezzle" funds from members' accounts, access members' private information without consent, make unauthorized withdrawals from members' accounts, comingle funds, and give its brokers "priority over members and siphon off desirable merchandise before reaching members." FAC ¶¶ 38, 39.

In addition to injunctive relief, Bal seeks refunds of the sums mentioned in paragraphs (1) – (4) above, plus interest, as well as damages in the amount of $5,100 for dues paid to ITEX from April 18, 2002, to May 7, 2011. *Id.* ¶¶ 34, 35. He also demands $1,686.58 – the current balance in eBuy-Sell's ITEX account – be paid to him. *Id.* ¶¶ 30, 37.

## PROCEDURAL HISTORY

This is not the first time Bal has sought redress for claims based on a similar, if not identical, set of facts. *See id.* ¶ 18.

6

On May 25, 2007, Bal filed a complaint in Supreme Court, New York County, against, among others, ITEX and the NYTO Defendants, asserting claims for breach of contract and conversion (the "State Court Action"). *Id.* ¶ 14; Goldman Decl., Exhibit A, Complaint dated May 25, 2007 (the "State Court Complaint"). Bal alleged that on December 26, 2002, November 21, 2003, and December 13, 2004, Bal purchased advertising services in the ITEX Marketplace through transactions brokered by NYTO and Garcia. State Court Complaint, at 3, 5, 6. He further alleged that in April of 2007, ITEX and the NYTO Defendants breached the sales contracts by refusing to provide Bal with advertising services or a refund. *Id.* at 4, 7.

Shortly thereafter, on June 4, 2007, Castoro purportedly threatened Bal by stating that if Bal did not withdraw the State Court Action, Castoro would "sue [Bal] for millions of dollars and put [Bal] out of business by seizing and freezing [eBuy-Sell's] account." On June 6, 2007, Castoro allegedly executed his threat and froze eBuy-Sell's account due to "pending litigation." FAC ¶¶ 30, 37.

On July 10, 2007, Bal moved for the imposition of provisional remedies in the State Court Action, while ITEX cross-moved to compel arbitration of the dispute pursuant to N.Y. C.P.L.R. § 7503(a) and dismiss or stay the action. State Court Opinion, at 1. On January 14, 2008, the state court issued the State Court Opinion, in which it denied Bal's motion, and granted ITEX's cross-motion, ordering that, pursuant to N.Y. C.P.L.R. § 7503(a), "the parties are compelled to arbitrate their claims pursuant to the terms of their agreement" (i.e., the Marketplace Rules). *Id.* at 4. The state court dismissed the complaint in favor of arbitration "against all defendants pursuant to [N.Y.] C.P.L.R. §3211 (a)(1)." *Id.*

Bal filed a motion to reargue the State Court Opinion, which the state court denied on January 29, 2009. Goldman Decl., Exhibit C. Bal then appealed the State Court Opinion, but

the Appellate Division, First Apartment dismissed his appeal due to some procedural technicality on May 22, 2008. *Id.* at Exhibit D. Bal then moved to reinstate the appeal, or in the alternative, for leave to appeal to the New York Court of Appeals; again, his motion was denied. *Id.* at Exhibit E.

Sometime in 2009, Bal finally commenced an arbitration before the American Arbitration Association in Washington (Case No. 75 148 00320 09 GLO) (the "Washington Arbitration"). FAC ¶ 47. Interestingly, Bal did not name ITEX as a party to the arbitration; he named only NYTO, Castoro, and Garcia. *Id.*

Despite ITEX's non-party status, White, an ITEX associate, sent a letter to the arbitrator on or about March 26, 2010. The letter was, by its terms, an offer to settle Bal's claims for (1) 55,000 ITEX barter dollars, and (2) $1,650, representing a refund of fees paid by Bal/eBuy-Sell to ITEX. Accompanying the letter was a check for $1,650 made out to the American Arbitration Association. Bal's Affirm., Exhibit 3, at 22.

Although Bal – who had previously rejected the identical settlement offer transmitted directly to him – characterizes this as an attempt by ITEX to bribe the arbitrator and influence the outcome of the arbitration, the letter speaks for itself and its text makes clear that no bribe was offered. *Id.* The arbitrator rejected the tender of the check from a non-party, and ITEX apologized for having attempted to resolve a matter into which it did not wish to be drawn. *Id.* at 24, 26.

On September 20, 2011, Bal moved in state court for an order holding Castoro, of NYTO, and non-party Benson, of ITEX, in contempt for failing to arbitrate. Goldman Decl., Exhibit F, at 1. The state court ascertained that what Bal really wanted was to reargue the State

8

Court Opinion compelling arbitration on the ground that ITEX (not a party to the arbitration) had waived its right to arbitrate. *Id.* at 1-2.

On November 17, 2011, the state court issued an order (1) denying Bal's motion to hold Castoro and Benson in contempt; and (2) granting renewal of the State Court Opinion but "only with respect to its grant of defendant ITEX['s] cross-motion to dismiss the Complaint, and such cross motion to dismiss is denied and the Complaint is reinstated." *Id.* at 8.

On April 24, 2012, ITEX moved to reargue this ruling, arguing that since Bal never demanded that ITEX arbitrate, ITEX could not possibly have "waived" its right to the enforcement of the arbitration clause. Goldman Decl., Exhibit G, at 1-2. The state court was constrained to agree and, on March 26, 2013, granted ITEX's motion to reargue, and "vacate[d] its order dated November 17, 2011 and denied [Bal's] motion to vacate this court's prior order dated January 14, 2008, and that order dated January 14, 2008 is reinstated and the complaint against defendant ITEX Corporation is dismissed." *Id.* at 2. Bal moved to reargue this order, as well to recuse the state court judge. Goldman Decl., Exhibit H, at 1. Bal's motions were denied on February 24, 2014. *Id.* Bal's appeal is presently pending. *See* Goldman Decl., at Exhibit I.

On September 24, 2013, Bal commenced the instant action by filing a complaint against the ITEX Defendants, the NYTO Defendants, and ten other defendants.

On October 13, 2013, I dismissed Bal's claims against the ten defendants, *sua sponte*. Order of Service, *Bal v. ITEX et. al.*, No. 13 Civ. 6794 (S.D.N.Y. 2013), Docket No. 5 ("Order of Service"); *see* Goldman Decl., Exhibit K.

On December 20, 2013, the ITEX Defendants, later joined by the NYTO Defendants, moved for a more definite statement of the complaint pursuant to Fed. R. Civ. P. 12(e). Bal

9

responded by seeking leave to file an amended complaint. The Court granted Bal's request, and on April 11, 2014, Bal – together with newly-added plaintiffs, Mergent and Watchdog – filed the amended complaint.

By notice dated June 9, 2014, the ITEX Defendants moved for an order dismissing the FAC pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction as to White and Benson, and Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted as to all Counts against all of the ITEX Defendants.

By notice of the same date, the NYTO Defendants moved for an order dismissing the FAC pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted as to all Counts against all of the NYTO Defendants.

## STANDARD ON A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003); *see also Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007). To survive a motion to dismiss, "a complaint must contain sufficient factual matter…to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555 (internal quotations, citations, and alterations omitted). Unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible," the plaintiff's complaint must be dismissed. *See id.* at 570; *Iqbal*, 556 U.S. at 680.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A court must interpret *pro se* filings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). However, dismissal of a *pro se* complaint is appropriate where the plaintiff has "clearly failed to meet minimum pleading requirements." *Brown v. N.Y.C.*, No. 09-CV-6834, 2010 WL 3565171, at *2 (S.D.N.Y. Mar. 2, 2010).

This pleading is more than just "inartfully" drawn. It does not contain a short, plain statement of the claims, and each "count" asserts multiple causes of action. However, instead of returning the pleading to Bal for massive correction, I will rule on the merits as though each discrete cause of action were a separately pleaded claim.

## I.     The only claims that can be prosecuted in this lawsuit are the claims of Bal and Mergent, his d/b/a.

Throughout his FAC, Bal seeks redress for injuries suffered by eBuy-Sell. All of these claims are dismissed, without prejudice.

"[I]t is established that a corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se*." *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983). This is true even for unincorporated business entities since the rule applies equally to any non-natural person. *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993). Furthermore, "the only agent who can represent such entities

11

in a lawsuit is a lawyer; they cannot be represented at the bar by a stockholder, officer, or employee who is not a lawyer." *Abshier v. Sunset Recordings, Inc.*, Nos. 14-CV-3227, 14-CV-3914, 2014 WL 4230124, at *5 (S.D.N.Y. Aug. 5, 2014).

A non-lawyer is not allowed to represent anyone other than himself. *See id.*; *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001). Thus, Bal, who is proceeding *pro se*, cannot represent eBuy-Sell, a New York corporation. *See Abshier*, 2014 WL 4230124, at *5; *Centrifugal Force, Inc. v. Softnet Comm., Inc.*, No. 08-CV-5463, 2009 WL 1059647, at *1, n.1 (S.D.N.Y. Apr. 17, 2009).

Bal contends he can represent eBuy-Sell because eBuy-Sell assigned this lawsuit to Bal. Pl.'s Mem. at 1. Bal is wrong. Courts in this Circuit routinely disapprove "any circumvention of the rule [that a non-lawyer can represent a corporation] by the procedural device of an assignment of the corporation's claims to the lay individual." *Jones*, 722 F.2d at 23; *see Bell v. Carlsen Motor Cars, Inc.*, No. 06-CV-4974, 2007 WL 2962355, at *1 (S.D.N.Y. Oct. 10, 2007).

Therefore, all claims asserted on behalf of eBuy-Sell or for injuries suffered by eBuy-Sell are dismissed. If eBuy-Sell decides to hire counsel, it (not Bal) may bring such claims.

Bal also asserts claims for injuries suffered by Mergent. On the facts alleged, it appears that Mergent is simply the alter ego of Bal – a "d/b/a" – so while adding it as a party was not strictly necessary, Bal may proceed in Mergent's name, as well as his own. *See Centrifugal Force*, 2009 WL 1059647, at *1, n.1. The real party in interest is, however, Bal. *See id.*

The status of Watchdog is less clear; that is, it is not clear who, other than Bal, might have some interest in Watchdog. However, other than writing its name in the caption, Bal does not assert any claim on its behalf. Because Watchdog has not asserted any claim, I will strike Watchdog as a party plaintiff.

12

## II.    Count One (Bal's common law claims) is dismissed.

Count One (which, as noted above, is in reality four or five different claims) must be dismissed.  As to several of the theories of recovery asserted, it is res judicata that Bal must submit those claims to arbitration; and as to the rest, because they arise under the ITEX Member Agreement and Marketplace Rules, they, too, must be arbitrated – though they are time-barred.

In Count One, Bal asserts common law claims (not federal law) against ITEX and NYTO, and their affiliates, arising out of transactions governed by the ITEX Member Agreement and Marketplace Rules.  The theories of recovery he asserts are (1) breach of contract; (2) conversion; (3) breach of fiduciary duty; (4) breach of the implied covenant of good faith and fair dealing; and (5) tortious interference with business relationships.

In the State Court Complaint, Bal brought claims for breach of contract and conversion arising out of the very transactions that are the subject of the instant complaint.  The state court granted a motion to compel arbitration of those claims, on the ground that the Marketplace Rules contain an enforceable arbitration clause.  State Court Opinion, at 2.  That ruling became final when the Appellate Division dismissed Bal's unperfected appeal.  Bal cannot evade the force of that ruling by commencing an action on the same claims in this court.  The matter is res judicata. Bal has to arbitrate those claims if he is to obtain any relief.  *See, e.g.*, *Harris v. Beth Israel Medical Center*, No. 08-CV-612498, 2009 WL 612498, at *6-8 (S.D.N.Y. Mar. 4, 2009); *U.S. ex rel. Finney v. Nextwave Telecom, Inc.*, 337 B.R. 479, 489-90 (S.D.N.Y. 2006); *Qader v. New York*, 396 F. Supp. 2d 466, 469-70 (S.D.N.Y. 2005).

Although Bal did not assert claims for breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and tortious interference in the State Court Action, the state court's reasoning applies equally to the other theories of recovery asserted in Bal's

13

multiplicitous "Count One." All of the claims he asserts, under whatever rubric or theory of recovery, arise out of the same set of facts and circumstances that undergird his breach of contract and conversion claims — indeed, they are simply variations on the breach of contract and conversion claims. Therefore, all of them are subject to Section F.10 of the Marketplace Rules, which provides that "[t]he parties agree that in the event of a dispute, the parties will resolve the dispute under the commercial rules of the American Arbitration Association in Bellevue, Washington." State Court Opinion, at 2. And it has already been determined that claims arising out of the Marketplace Rules must be arbitrated — a ruling no less binding on Bal in connection with previously unasserted claims than in connection with previously asserted claims, because Bal is collaterally estopped to contend otherwise. *See Vasquez v. Torres-Negron*, No. 06-CV-619, 2007 WL 2244784, at *3-4 (S.D.N.Y. July 11, 2007) *see also Randall's Island Aquarium Leisure, LLC v. City of New York*, No. 12-CV-6039, 2013 WL 2951945, *4 (S.D.N.Y. June 13, 2013); *Snyder v. Yonkers Public School Dist.*, 315 F. Supp. 2d 499, 502 (S.D.N.Y. 2004).

In short, any and every claim arising out of Bal's dealing with his ITEX account or with anyone else's ITEX account under his control (such as eBuy-Sell) must be arbitrated. Why Bal has not commenced such an arbitration is and forever will be a mystery, but unless he does so, he cannot obtain relief.

**III.    Count Two (Bal's RICO claim) must be dismissed because it is time-barred.**

Seeking treble damages pursuant to 18 U.S.C. § 1964(c), Bal alleges violations of the RICO statute against the Count Two Defendants.

14

To "federalize" what are obviously breach of contract claims, in Count Two Bal "dresses

up" his Count One common law claims with fancy language from the RICO statute.  In his FAC

and RICO Case Statement, Bal alleges that:

(1)      For over a decade, the Count Two Defendants are an association-in-fact
enterprise, illegally conducting business in forty-seven states, and laundering
millions of dollars of income from these states by reporting on federal, state, and
local tax returns that this income is obtained legally.  FAC ¶¶ 54, 55, 59-62.  Bal
illustrates ITEX's scheme through numerous examples of embezzlements and
comingling of his funds, and other members' funds.  *Id.* ¶¶ 63-66, 69-81.  To
further this scheme, the Count Two Defendants allegedly conspired to create the
Membership Agreement and Market Rules.  By permitting ITEX to terminate
members' accounts in its sole discretion and place members on "spend down
status," Bal alleges that ITEX is able to launder millions of dollars through tax
returns.  *Id.* ¶¶ 82-85.

(2)      Castoro, on June 4, 2007, extorted Bal and deprived him of his constitutional right
to sue, through Castoro's use of interstate telephone services to issue threats to
Bal.  *Id.* ¶¶ 87-89.  Bal further asserts that he was injured by White and Benson's
attempt to influence the Washington Arbitration, as well as Benson's submission
of a false affidavit in the State Court Action.  RICO Case Statement at 5-6.

(3)      The Count Two Defendants promoted illegal interstate gambling and collected
unlawful debts, through poker tournaments and sports betting.  FAC ¶¶ 90-92.
Bal alleges that when ITEX deducted monies from the accounts of members who
gambled and lost, it collected unlawful debts.  *Id.* ¶ 92.

(4)      Pursuant to a settlement between the SEC and ITEX, the SEC permanently
enjoined ITEX from "defrauding investors by designating the value of many of
ITEX's assets and transactions in trade dollars rather than their far lower U.S-
dollar fair market values on its financial statements."  *Id.* ¶ 94.  Bal contends that
it appears ITEX is again inflating the value of goods and services exchanged on
its marketplace.  *Id.* ¶¶ 95-97.

Bal describes the above events as a "pattern of racketeering" and names various criminal

statutes under which these actions violate.  RICO Case Statement at 15-19.

Bal alleged injuries to himself, Mergent, eBuy-Sell, ITEX, 75 ITEX brokers, over 20,000

ITEX members, the United States of America, forty-seven individual States, and 18 specific

ITEX members.  *Id.* at 4-15.

15

Of course, Bal lacks standing to prosecute RICO claims on behalf of any of these persons except himself (and his d/b/a Mergent). Any injuries allegedly suffered by other persons are not injuries that Bal himself has suffered in "his business or property" from the alleged conduct constituting the RICO violations. 18 U.S.C. § 1964(c); *see Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

The statute of limitations for a civil RICO claim brought pursuant to 18 U.S.C. § 1964(c) is four years. *Agency Holding Corp. v. Malley-Duff & Assoc.*, 483 U.S. 143, 156 (1987). "The limitations period begins to run when the plaintiff discovers or should have discovered the RICO injury." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998) (per curiam). The first step in the statute of limitations analysis is to determine when the plaintiff sustained the alleged injury for which it seeks redress. *Id.* at 59. The second step is to determine when the plaintiff discovered or should have discovered that injury. The four-year statute of limitations begins to run at that time. *Id.*

The statute of limitations is triggered when the plaintiff discovers or should have discovered his RICO injury, not when he discovers or should have discovered the underlying pattern of racketeering activity — even if the pattern of racketeering activity includes fraud. *See Rotella v. Wood*, 528 U.S. 549, 554, 557 (2000).

In order for Bal's claims to move forward, I must determine when Bal discovered, or should have discovered, the injuries alleged against his business or property. Bal filed the initial complaint in this case on September 24, 2013. Thus, if Bal discovered or should have discovered the injuries alleged against his business or property before September 24, 2009 – the applicable four-year window – then Bal's claims are barred by the statute of limitations.

16

In his FAC and RICO Case Statement, Bal identifies the following injuries to him and his business or property:

(1)     The theft of a $395 membership fee as a result of U.S. Mail sent to Bal on February 21, 2002, April 6, 2002, and April 20, 2002 (RICO Case Statement at 5).

(2)     Under the pretext of selling advertising, the embezzlement of $24,720 on December 26, 2002, (FAC ¶ 67) and $25,750 on November 21, 2003, through the use of interstate wires (*Id.* ¶ 69).

(3)     Refusal to return and conspiracy to embezzle Bal's $25,750 on April 7, 2007 (*Id.* ¶ 70).

(4)     Benson's attempt to conceal ITEX's embezzlement of $24,720 of Bal's funds on December 26, 2002, by submitting a fraudulent accounting statement to the Supreme Court, New York County (*Id.* ¶ 67).

Bal discovered all of the injuries caused by theft, embezzlement, conspiracy to embezzle, and mail and wire fraud prior to September 24, 2009. This is evident from a review of the complaint Bal filed in the State Court Action. The first and second causes of action in the State Court Complaint expressly discuss the alleged injuries caused to Bal through embezzlement, conspiracy to embezzle, and use of interstate wires. State Court Complaint, at 3-9. The State Court Complaint also expressly discusses the RICO Defendants' alleged refusal to return Bal's funds. *Id.* at 7. Since Bal knew of these injuries, at the latest, on the date the State Court Complaint was filed – May 25, 2007 – his RICO claim is time-barred.

Additionally, although there is no explicit reference to the theft of Bal's membership fees in the State Court Complaint, it allegedly occurred back in 2002. Furthermore, Bal alleges that he received mail relating to the matter of the theft of membership fees on three occasions during 2002 — on February 21, 2002, April 6, 2002, and April 20, 2002. RICO Case Statement at 5. Bal knew of this injury at the time it occurred, but chose to wait *twelve years* to bring any claim related thereto.

17

## IV.    Count Three is dismissed because Bal cannot prosecute a derivative action *pro se* on behalf of ITEX.

Bal's Count Three is a shareholder derivative action. Under Nevada law (which controls, as ITEX is a Nevada corporation), a derivative action cannot be maintained by a *pro se* shareholder. *See In re Amerco Derivative Litig.*, 252 P.3d 681, 700-03 (Nev. 2011); *Romann ex rel. Yuhe Intern., Inc. v. Zhentao Gao*, No. 2:11-CV-01178, 2013 WL 1811972, at *1 (D. Nev. Apr. 29, 2013) (dismissing *pro se* shareholder derivative action filed by shareholder on behalf of Nevada corporation); *see also Shapiro, Bernstein & Co. v. Cont'l Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967) (per curiam); *Phillips v. Tobin*, 548 F.2d 408, 411-12 (2d Cir. 1976). Therefore, it is dismissed.

## V.    Count Four (Bal's constitutional tort claims) is dismissed because the Defendants are not state actors.

In Count Four, Bal asserts various constitutional and civil rights claims against ITEX and the NYTO Defendants.

The Court construes Bal's claims against the Count Four Defendants as claims brought under 28 U.S.C. § 1983. *See* Order of Service at 6-7. To state a claim under § 1983, a plaintiff must allege both that (1) a right secured by the Constitution or laws of the United States was violated; and (2) the right was violated by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Bal alleges that ITEX and the NYTO Defendants failed to advise the New York Supreme Court that ITEX and NYTO were unauthorized foreign corporations illegally doing business in New York, and that this failure "led to a denial of plaintiff's right to a fair and speedy resolution of the issues presented to the Supreme Court." FAC ¶ 145. Bal further alleges (1) a due process violation based upon ITEX's "sewer service" of Bal, which denied Bal his right to appeal the

18

State Court Opinion; and (2) a First Amendment violation based upon the NYTO Defendants'
"attempt to chill [and] silent [Bal's] legitimate speech" by "maliciously filing requests for a
Temporary Restraining Order and Preliminary Injunction." *Id.* ¶¶ 146, 147.

ITEX and the NYTO Defendants are not state actors. There are no allegations that ITEX
or the NYTO Defendants acted under color of state law. Thus, Bal has failed to state a § 1983
claim against any of the Count Four Defendants.

As a general proposition, the use of state courts by private litigants and their attorneys
does not, by itself, amount to state action, for purposes of a claim under § 1983. *See Rosen v.
County of Suffolk*, 53 F. App'x 578, 580 (2d Cir. 2002); *Spear v. Town of West Hartford*, 954
F.2d 63, 68 (2d Cir. 1992). "The complaint must allege facts demonstrating that the private
entity acted in concert with the state actor," which Bal did not do. *Spear*, 954 F.2d at 68.
Therefore, Bal's § 1983 claims fail.

In his opposition brief, Bal purports to add a new civil rights claim pursuant to New York
Civil Rights Law, Article 2 § 10.[2] *See* Pl.'s Mem. at 12-13. This claim is not pleaded in the
FAC. A plaintiff – even one proceeding *pro se* – may not amend a pleading by asserting a new
claim in a brief, so I will simply ignore this claim. *See, e.g.*, *Pandozy v. Segan*, 518 F. Supp. 2d
550, 554 (S.D.N.Y. 2007), *aff'd* 340 F. App'x 723 (2d Cir. 2009); *Bernstein v. City of New York*,
No. 06-CV-895, 2007 WL 1573910, at *10 (S.D.N.Y. May 24, 2007); *Southwick Clothing LLC
v. GFT (USA) Corp.*, No. 99-CV-10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004). In
any event, this is not a claim.

---

[2] "Neither justice nor right should be sold to any person, nor denied, nor deferred; and writs and
process ought to be granted freely and without delay, to all persons requiring the same, on
payment of the fees established by law."

## CONCLUSION

For the foregoing reasons, the ITEX Defendants' and the NYTO Defendants' motions are granted.   The Clerk of the Court is directed to remove Docket Nos. 37 and 48 from the Court's list of pending motions and to close the file.

Dated: October 29, 2014

_____
U.S.D.J.

BY ECF TO ALL COUNSEL

20