COURTESY COPY

CLo

*The lack of merit to plaintiff's claim is palpable from a review of the record. I certify that an appeal from this rule could not be taken in good faith.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

MERGENT SERVICES and JOHN ANDRIES
BAL, JR.,

                      Plaintiffs,

          -against-

ITEX CORPORATION, STEVEN WHITE
personally and in the capacity of CEO, CFO,
and Chairman of the Board, ERIC BEST,
personally and in the capacity of Director,
JOHN WADE, personally and in the capacity
of Director, ROBERT BENSON, personally
and in the capacity of Vice President, NYTO
TRADE INCORPORATED, JOHN CASTORO
aka NYTO TRADE INCORPORATION aka
NYTO TRADING CORPORATION aka NYTO
TRADE EXCHANGE and 44 TRADE
CORPORATION, aka NYTO TRADE, INC.,
personally and in the capacity of President,
and IZZY GARCIA, personally and in the
capacity of Manager,

                      Defendants.

------------------------------------------------------------x

13 Civ. 6794 (CM)

RECEIVED
NOV 12 2014
PRO SE OFFICE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/17/14

MEMO ENDORSED

Copies ___ Faxed ___ Handed to counsel on 11/1/14

Notice of Motion for Reconsideration and Reargument

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR RECONSIDERATION AND REARGUMENT**

Plaintiff *pro se* John Andries Bal, Jr. ("Bal") is the owner of Mergent Services

("Mergent"), a sole proprietorship (collectively, the "plaintiffs") and a shareholder of

defendant ITEX Corporation ("ITEX"). Bal also brings this action in the capacity of

Private Attorney General.

*11/14/2014 The motion for reconsideration is DENIED, sua sponte and with no need for any response from defendants. The motion does no more than rehash the arguments previously rejected by this court. The related application for appointment of counsel*

The defendants are ITEX, Steven White ("White"), Eric Best ("Best"), John Wade ("Wade"), Robert Benson ("Benson") (collectively the "ITEX defendants") and NYTO Trade Incorporated ("NYTO"), John Castoro ("Castoro"), various aliases alleged to be Castoro, and Izzy Garcia ("Garcia") (collectively the "NYTO defendants").

Plaintiffs allege claims in conversion, breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and tortuous interference with business relationships against ITEX, White, Benson, and the NYTO Defendants, as well as violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, against the ITEX defendants, NYTO, and Castoro, and a shareholder derivative action on behalf of ITEX against White, Best, and Wade for breach of fiduciary duty. Plaintiffs also raise constitutional and civil rights claims against ITEX and the NYTO defendants.

**STANDARD ON A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 44 (2d Cir. 2003); *see also Roth v. Jennings,* 489 F .3d 499, 510 (2d Cir. 2007). To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). "While a complaint attacked by a Rule 12(b )( 6) motion to

- 2 -

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal quotations, citations, and alterations omitted).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). A court must interpret *pro se* filings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006).

**Standard of Review for Motions for Reconsideration and Reargument**

Motions for *reconsideration* are governed by Local Civil Rule 6.3 which states, in part, that the motion shall "set forth concisely the matters or controlling decisions which counsel believes the court has overlooked." To prevail on a motion for reconsideration, the movant must "point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.,* 70 F.3d 255, 257 (2d Cir 1995).

New arguments may not be raised on a motion for reconsideration. *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir. 1998).

A party may move for *reargument* pursuant to Local Civil Rule 3(j) only upon an assertion that "the court has overlooked 'matters or controlling decisions' which, had they been considered, might reasonably have altered the result

- 3 -

reached by the court." *Adams v. United States,* 686 F.Supp. 417, 418 (S.D.N.Y.

1988) (quoting Local Civil Rule 3(j), USDC, SDNY), quoted in *Schonberger v.*

*Serchuk*, 742 F.Supp. 108, 119 (SDNY 1990).

      In addition, "a party making a motion for reargument may not, under [Local]

Civil Rule 3(j) advance new facts, issues or arguments not previously presented to

the court." *Schonberger v. Serchuk*, 742 F.Supp. at 119.

**The Court overlooked the controlling law for unauthorized foreign corporations**

      Bal is a resident of the county, city, and state of New York and the owner of

Mergent Services, a sole proprietorship.  The transactions in question occurred in

the county, city, and state of New York.

      Although the ITEX defendants and NYTO defendants may defend

themselves against the instant action, they are prohibited from taking affirmative

steps such as a Motion to Dismiss.

> "A motion to dismiss is a special proceeding.  ITEX and NYTO are
> *unauthorized foreign corporations* unlawfully conducting business in New
> York State ("NYS") that forfeited their right to file motions to dismiss the
> complaint as a result of evading payment of NYS taxes and tax filings.  New
> York Business Corporation Law ("BCL"), *Actions or Special Proceedings by*
> *Unauthorized Foreign Corporations § 1312,* states:
>
>> '(a) A foreign corporation doing business in this state without
>> authority **shall not maintain any action or special proceeding in**
>> **this state** . . .'" (emphasis added).
>
> On June 26, 2002, the DOS annulled ITEX's authority to do business in
> NYS *as a* foreign corporation for evading payment of taxes and tax filings
> (Plaintiffs' Aff. at Exhibit 7).  NYTO, located in Rahway, New Jersey, never
> obtained the authority from the DOS to do business in NYS (Plaintiffs' Aff. at
> Exhibit 8)."  (Memo of Law at pg. 2)[1].

---

1 Memo of Law at _____ refers to Plaintiffs' Memorandum of Law dated August 11, 2014.

The purpose of BCL § 1312 is punitive.  Unauthorized foreign corporations

unlawfully doing business in NYS are prohibited from "maintain[ing] any action or special

proceeding in this state."  Any other reading of BCL § 1312 would undermine its intent.

## The Court mischaracterized Bal's statements

The Court stated:

> "Although Bal - who had previously rejected the identical settlement offer
> transmitted directly to him - characterizes this as an attempt by ITEX to bribe the
> arbitrator and influence the outcome of the arbitration, the letter speaks for itself
> and its text makes clear that no bribe was offered." (Decision at pg. 8)[2].

Bal stated that defendant White attempted to "influence" the arbitrator, he *did not*

claim that White attempted to "bribe" the arbitrator.

## In effect, the Court has directed the parties down a dead-end street

> "The State Court previously ordered the parties to arbitrate their
> dispute.  The arbitration was halted because NYTO, Castoro, and Garcia
> claimed they were unable to pay the arbitration fees.  [Bal's] financial
> situation has worsened and [he is] also unable to pay the arbitration fees."
> (Memo of Law at pg. 7).

The administrative fees, excluding trial and post-trial fees, for the arbitration

exceeded $2,000 and the arbitrator's fees were $400 per hour.  The arbitrator's

trial and post-trial fees alone would exceed $12,800.

In the instant action, the Court recognized Bal's financial hardship and

approved his *In Forma Pauperis* application.  Accordingly, Bal and defendants

NYTO, Castoro, and Garcia, are financially unable to participate in an arbitration.

Directing the parties to arbitration would not serve the interests of justice

and would add further delay and frustration.

---

2 Decision at _____ refers to the Court's decision dated October 29, 2014.

**The Court overlooked that ITEX waived its right to arbitration**

In 2007, ITEX filed a demand for arbitration.  On January 14, 2008, the

State Court granted ITEX's request.  Since January 14, 2008, ITEX has not

commenced the arbitration that it demanded.  Accordingly, ITEX waived it right to

arbitrate.

CPLR § 7502(c) states:

> If an arbitration is not commenced within thirty days of the granting of
> the provisional relief, the order granting such relief shall expire and be null
> and void and costs, including reasonable attorney's fees, awarded to the
> respondent [Bal]."

**The Court overlooked the controlling decision and law for fraud**

The Court stated:

> "The Marketplace Rules also contain an arbitration clause (found in the
> record before me at Decl. of Jeremy S. Goldman ("Goldman Decl."), Exhibit B,
> Order of Justice Debra A. James, Supreme Court of New York, New York County,
> dated January 14, 2008, at 2 (the 'State Court Opinion'). The clause states that
> "[t]he parties agree that in the event of a dispute, the parties will resolve the
> dispute under the commercial rules of the American Arbitration Association in
> Bellevue, Washington."  (Decision at pg. 6).

The Marketplace Rules ("contract") between Bal and ITEX submitted by ITEX in

the State Court action and cited in the Decision is fraudulent and void by its own terms.

ITEX "sewer served" the Notice of Entry and, as a result, prevented Bal from appealing

the State Court's acceptance of the contract.

The contract is also void due to fraud.  In March 2014, Bal discovered ITEX's

fraud.  ITEX fraudulently induced Bal into becoming an ITEX member by concealing a

significant material fact that *ITEX is unlawfully doing business throughout the United*

*States* (except for Nevada, California, and Washington).  Under New York Civil Practice

- 6 -

Law and Rules ("CPLR") §213(8) there is a two-year statute of limitations from the date

the fraud is discovered.  Bal is well within the statute of limitations.

Bal raised ITEX's fraud in the FAC submitted to the Court o April 9, 2014.

It is well settled in New York that "a misrepresentation of material fact, which is collateral to the contract and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud". See Deerfield Communications Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954, 956 (1986); First Bank of Americas v. Motor Car Funding, 257 A.D.2d 287, 690 N.Y.S.2d 17 (1st Dep't 1999)." (see Memo of Law at pgs. 14-17).

## The Court overlooked CPLR § 205(a) and the controlling decisions for the statute of limitations for RICO predicate offenses

Bal stated:

"Initially, in 2007, I sought the return of $56,650 that the defendants embezzled from my account.  My efforts for the return of my funds were unsuccessful and, as I researched ITEX, I discovered systemic patterns of criminality and harm being done to shareholders, brokers, and members." (Plaintiffs' Aff. at para. #5).

None of Bal's claims, whether in common law or the RICO statute, are time-

barred.  Under New York law, the statute of limitations for breach of contract claims is six

years and the controlling decision for the statute of limitations for RICO violations is four

years.  The Court incorrectly determined when Bal discovered, or should have

discovered, the RICO predicate offenses.  Bal did not discover the ITEX defendants' and

the NYTO defendants' RICO predicate offenses until 2012.  Beginning in 2012, well

within RICO's four-year statute of limitations, approximately 18 ITEX members reported

to Bal that ITEX embezzled funds from their account.  The consistency of the reports

established a pattern of criminality.  Subsequently, Bal discovered the RICO predicate

acts of mail and wire fraud and money laundering surrounding the embezzlements.

Furthermore, even if Bal discovered the RICO predicate offenses in 2007 they

would not be time-barred.

"The defendants incorrectly assert that several of Bal's claims are beyond
either a three-year or six-year statute of limitations. However, applying the
statutory tolling period, only 8 months and 3 days have run. Therefore, Bal's
claims are well within a three-year or six-year statute of limitations [and RICO four-
year statute of limitations].

On May 25, 2007, Bal filed an action in the New York State Supreme Court
– New York County against the defendants that, among other claims, sought the
return of $56,650 because ITEX refused to provide the advertising that Bal
purchased (Mergent Services and John Bal v. ITEX Corporation, NYTO Trade
Incorporation, John Castoro, Izzy Garcia, et al.) ('State Court' or 'State Court
lawsuit').

The clock began to run on April 7, 2007 when ITEX breached the
agreement to provide Bal with advertising. Bal filed the State Court action
on May 25, 2007 (this did not stop the clock). The clock stopped on June
12, 2007 when the defendants filed an arbitration demand in the State
Court lawsuit (an elapsed period of 2 months and 5 days).

The clock started again on March 26, 2013 when the State Court
dismissed the lawsuit regarding the issue of arbitrability (Plaintiffs' Aff. at
Exhibit 14). The clock stopped again on September 24, 2013 when Bal
filed the instant action presently before the court (an elapsed period of 5
months and 28 days).

Combining both periods, only 8 months and 3 days can be counted
towards the running of any statute of limitations. This defeats the
defendants' assertions that Bal's claims are beyond either a 3-year or 6-
year statute of limitations.

The period in which the arbitrability of a claim is being determined by
the courts is statutorily tolled. The Court of Appeals has held that the time
arbitrability is being argued is a tolling period. See Joseph Francese, Inc. v.
Enlarged City School District of Troy, 95 N.Y.2d 59, 710 N.Y.S.2d 315
(2000).

Bal submitted a motion to reargue the State Court's March 26, 2013
decision.

On February 24, 2014, the State Court granted Bal's motion to
reargue several issues, including the issue of arbitrability, but adhered to
the decision of March 26, 2013. Using the State Court's final termination on
February 24, 2014, only 2 months and 5 days can be counted towards a
statute of limitations.

On September 24, 2013, *less than six months after the State Court dismissed Bal's complaint*, Bal filed the instant action presently before this court. The State Court's dismissal was not based on 'a final judgment upon the merits.' The instant action is based upon the same 'series of transactions or occurrences' as those raised in the State Court lawsuit and independent claims.

New York Civil Practice Law and Rules ('CPLR') § 205(a), in part, states:

> 'New action by plaintiff. If an action timely commenced is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the **plaintiff . . . may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months . . .'** (emphasis added)" (Memo of Law at pgs. 5-6).

The ITEX defendants' and the NYTO defendants' RICO predicate acts of mail and

wire fraud continue to this day.

> "From at least 2003, to date, and likely continuing into the future the RICO defendants have caused ITEX to send out millions of emails throughout the United States promoting sales and purchases *without advising that ITEX cannot lawfully do business in 47 states.*" (RICO Statement at Exhibit 17).

Charles Cruikshank, Esq., a NYTO attorney, admited:

> "NYTO sends approximately 10 email broadcasts per day to its members and thousands of other communications per month, some of which or the other deal with the availability of products and services (Exhibit 12)" (RICO Statement at pgs. 15-16).

## The interests of justice and equity required the Court to allow Bal an opportunity to obtain an attorney before dismissing his claims

The Decision advised Bal that, as a *pro se* litigant, he can neither pursue claims

on behalf of eBuy-Sell.com, Inc. ("eBuy-Sell"), a company wholly owned by Bal, nor a

derivative action on behalf of ITEX.

Submitted simultaneously with this Motion for Reconsideration and Reargument is Plaintiffs' Application for the Court to Request *pro bono* Counsel or, *in the alternative,* Application for the Court to Request Counsel Pursuant to 18 USC § 3006A(g).

If the applications for counsel are denied, plaintiffs respectfully request ahe period of sixty (60) days to obtain counsel.

## The Court is respectfully requested to recognize New York law

eBuy-Sell .com, Inc. ("eBuy-Sell") assigned its claims to Bal. All the transactions in question between ITEX and eBuy-Sell were executed in NYS. According, the Court respectfully requested to recognize NYS law.

New York's First Department and the Second Department each have held that an individual assignee of a corporation may sue without a lawyer, "despite the fact that the assignment may have been made to circumvent the statutory prohibition against a corporation appearing pro se." Traktman v. City of New York, 182 A.D.2d 814, 815 (2d Dep't 1992); see also Kinlay v. Henley, 57 A.D.3d 219, 220, 868 N.Y.S.2d 62 (1st Dep't 2008); Kamp v. In Sportswear Inc., 39 A.D.2d 869, 332 N.Y.S.2d 983 (1st Dep't 1972), rev'g on dissenting opinion below, 70 Misc.2d 898, 335 N.Y.S.2d 306 (App. Term 1972).

In addition, permitting Bal to represent eBuy-Sell would conserve the Court's, Bal's, and ITEX's resources by avoiding eBuy-Sell having to institute a separate action.

## Private Attorney General

Bal brings this action in the capacity of a Private Attorney General ("PAG"). PAG is an equitable doctrine that allows a private citizen to bring a lawsuit in the public's

- 10 -

interest.  As Bal understands his capacity as a PAG, he has standing to represent the

claims contained in hisFAC.

The private attorney general doctrine first appeared in the decision of the

Honorable Jerome Frank of the 2nd Circuit U.S. Court of Appeals (*Assoc. Indus. of New*

*York* v. *Ickes*, 134 F.2d 694, 704 (2d Cir. 1943).  More recently, in *Holmes v. SIPC*, 503

U.S. 283 (1992), a RICO case, Justice O'Connor pointed to Congress' purpose of

bringing "the pressure of 'private attorneys general'" on a serious national problem for

which public prosecutorial resources" are inadequate.

## ITEX has misled this Court and the SEC regarding the value of an ITEX dollar

The Court, *taking judicial notice*, quoted the following portion of ITEX's annual 10-

K  report submitted to the SEC (October 21, 2013 at 1-2), stated:

> "An ITEX dollar is an accounting unit used to record the value of
> transactions  as determined by the members in the [ITEX] Marketplace.  ITEX
> dollars are not intended to constitute legal tender, securities, or commodities and
> have no readily determinable correlation to USD."  (Decision pg. 4 at footnote).

ITEX is wrong.

> "Itex processes the transactions of its members using, interchangeably,
> United States dollars and Itex-issued dollars.  The Internal Revenue Service ('IRS')
> officially determined that United States dollars and Itex-issued dollars are equal."
> (FAC at pg. 4).

It is widely known in the barter industry and by ITEX members that an ITEX dollar

(also known as a "Barter dollar") is the equivalent of a United States dollar ("USD").  The

IRS determined that an ITEX dollar and a USD are equal.  As ITEX must know, ITEX,

ITEX's brokers and franchisees, and ITEX members report ITEX dollars as USDs on their

federal, state, and county tax returns.  Furthermore, the IRS taxes ITEX dollars the same

as USDs.

- 11 -

## The Court's October 29, 2014 decision

The Decision, dated October 29, 2014, dismissed plaintiffs' First Amended

Complaint ("FAC") against the ITEX defendants and NYTO defendants and dismissed

eBuy-Sell.com, Inc.'s ("eBuy-Sell") claims "without prejudice" (Decision at page 11).  "If

eBuy-Sell decides to hire counsel, it (not Bal) may bring such claims." (Decision at pg.

12).

### Count I
### Breaches of Contract

The Court stated:

> "The acrimony [between Bal and ITEX] arises out of the sale of advertising
> services and other goods to Bal through the ITEX Marketplace, and ITEX and
> NYTO's alleged failure to keep their end of the bargain. The FAC alleges four
> instances in which Bal or eBuy-Sell paid for advertising with ITEX dollars but got
> neither ads nor a refund." (Decision at pgs. 4-5).

Then Court recited ("recitation") the heart of Bal's Count I claim as follows:

> (1) On December 26, 2002, ITEX sold Bal $24,000 of advertising "under the
> pretext of selling him advertising in the New York Daily News." Garcia and NYTO
> brokered the transaction and stated that the purchased advertising could be used
> by Bal in the future as needed. Bal paid for this advertising with an ITEX check
> payable to the Daily News in the amount of $24,000. ITEX withdrew $24,000, as
> well as a $720 commission from Bal's ITEX account. FAC ii 29. On or about April
> 7, 2007, the Daily News refused to run Bal's advertising, stating it never received a
> check from ITEX. Bal alleges ITEX sold him "bogus advertising," and then refused
> to the return $24, 720 he had paid to it.

> (2) On November 21, 2003, ITEX sold Bal $25,000 of advertising. Garcia
> and NYTO again brokered the transaction, and again represented that the
> purchased advertising could be used by Bal in the future as needed. ITEX
> withdrew $25,000 and its $750 commission from Bal' s account. On or about April
> 7, 2007, ITEX allegedly refused to provide advertising or return $25,750 to Bal's
> account.

> (3) On December 13, 2004, ITEX sold non-party eBuy-Sell $6,000 of
> advertising in yet another transaction brokered by Garcia. Garcia stated that eBuy-
> Sell could use this advertising in the future as needed. ITEX withdrew $6,000 and

a $180 commission from eBuy-Sell's account. On or about April 7, 2007, ITEX refused either to provide advertising or to return $6, 180 to eBuy-Sell 's account.

(4) In or about April 2007, ITEX sold eBuy-Sell $700 of Onyx Restaurant gift certificates. ITEX withdrew $700 and its $21 commission from eBuy-Sell's account. The gift certificates were "unusable," but ITEX refused to return $721 to eBuy-Sell." (Decision at pgs. 4-5).

## The Court has incorrectly concluded that Bal's pleading is more than "inartfully drawn"

The Court stated that Bal's "pleading is more than just 'inartfully' drawn. It does not

contain a short, plain statement of the claims. . . (Decision at pg. 11). However, the

Court's recitation in the preceding paragraphs numbered (1) to (4) clearly contains "a

short, plain statement" of the heart of Bal's Count I claim. Accordingly, Bal met the

threshold for providing a short, plain statement of his Count I claims.

## The Court has overlooked the controlling decisions for breach of contract

"Bal has met the threshold to state a claim for breach of contract. To state a claim for breach of contract, New York law requires that a Bal allege: (1) the existence of an agreement between Bal and defendant; (2) due performance of the contract by the Bal; (3) breach of the contract by the defendant; and (4) damages resulting from the breach. *Command Cinema Corp. v. VCA Labs, Inc., 464 F.Supp.2d 191, 198 (S.D.N.Y.2006)* (citing *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir.2000)." (Memo of Law atpg. 9).

Bal met this threshold.

## Count II
## RICO Claims

"Bal alleged injuries to himself, Mergent, eBuy-Sell, ITEX, 75 ITEX brokers, over 20,000 ITEX members, the United States of America, forty-seven individual States, and 18 specific ITEX members." (Decision at pg. 15).

18 USC § 1961 (5) defines a pattern of racketeering activity as "requir[ing] at least

two acts of racketeering activity, one of which occurred after the effective date of this

chapter and the last of which occurred within ten years after the commission of a prior act

of racketeering activity.  Bal has met this threshold.

**The Court incorrectly assumed when Bal "discovered, or should have discovered" the RICO predicate offenses**

The Court stated:

> "Bal discovered all of the injuries caused by theft, embezzlement, conspiracy to embezzle, and mail and wire fraud prior to September 24, 2009. This is evident from a review of the complaint Bal filed in the State Court action. The first and second causes of action in the State Court Complaint expressly discuss the alleged injuries caused to Bal through embezzlement, conspiracy to embezzle, and use of <u>interstate wires</u>. (Emphasis added) (Decision at pg. 17).

*Firstly*, the Court incorrectly assumed that "Bal discovered [the ITEX defendants'

and NYTO defendnats'] . . . mail and wire fraud prior to September 24, 2009."  The Court

also stated "This is evident from a review of the complaint Bal filed in the State Court

action. The first and second causes of action in the State Court Complaint expressly

discuss the alleged injuries caused to Bal through . . . interstate wires."  This is incorrect,

*there is no discussion, express or otherwise, of interstate wires in Bal's State Court*

*complaint.*

*Secondly*, the Court apparently incorrectly assumed that "theft, embezzlement,

conspiracy to embezzle. . ." are RICO predicate offenses.  *They are not RICO predicate*

*offenses*.  Therefore, they do not support that Bal knew of the RICO predicate offenses

"prior to September 24, 2009."

Bal did not discover the ITEX defendants' and NYTO defendants' RICO predicate

offenses until early 2012.  In 2012, as a result of researching the issues in the State

Court action and receiving 18 complaints (several additional ITEX members asked not to

be included in this action) from ITEX members, a pattern of RICO predicate offenses

emerged.

Accordingly, the Court erred when it concluded that Bal discovered, or should have discovered, any RICO offenses "prior to September 24, 2009."

**The Court overlooked the controlling decisions regarding time-barred RICO predicate offenses**

Even if Bal knew of these RICO predicate offenses prior to September 24, 2009 they would not be time-barred.

> "Courts have uniformly held that a cause of action that would be time-barred if it was brought independently may nevertheless serve as a predicate offense for an otherwise timely RICO claim. *Hoxworth v. Blinder Robinson & Co.,* 980 F.2d 912, 924-25, (3d Cir. 1990); *Leroy v. Paytel III Mgmt. Assocs., Inc.,* No. 91 Civ. 1933, 1992 WL 367090 at *4 (S.D.N.Y. Nov. 24, 1992)." (RICO Statement at pg. 30, para. b)).

**The Court overlooked the controlling decisions that allow Bal to use predicate offenses that targeted other victims**

> "Bal may use predicate offenses targeting other victims to show evidence of 'pattern' of racketeering. Bal needs only to be injured by a single predicate offense committed in furtherance of the scheme. See *Sedima, S.P.R.L.,* 473 U.S. at 488-93; *Deppe v. Tripp,* 863 F.2d 1356, 1366-67 (7th Cir. 1988); *Marshall & Ilsley Trust Co. v. Pate,* 819 F.2d 806, 809-10 (7th Cir. 1987); *Corley v. Rosewood Care Ctr., Inc.,* 388 F.3d 990, 1004 (7th Cir. 2004). (RICO Statement at pg. 30 para. c)).

**Bal did not "dress up" his Count I common law claims**

Although a few of Bal's Count I claims were repeated in Count II as qualifying RICO predicate offenses, he denies "'dress[ing] up' his Count One common law claims with fancy language from the RICO statute." (Decision at pg. 15).

The Court is respectfully referred to Bal's FAC and the RICO Statement for short and plain statements of his RICO claims.contained in paragraphs 54-89 of plaintiffs' FAC:

**The Court overlooked the controlling RICO statutes regarding illegal interstate gambling and debt collection**

Each of the below RICO Wire Fraud violations (18 USC 1343) occurred in 2011

and 2012 and were submitted in plaintiffs' FAC on April 9, 2014, *well within RICO's four-year statute of limitations*.

ITEX, Castoro, and Garcia distributed the following emails promoting unlawful interstate gambling on February 11, 2011, May 10, 2011, June 1, 2011, June 7, 2011, and February 1, 2012.  Subsequently, also in violation of the RICO statute, ITEX collected unlawful debts as a result of this unlawful interstate gambling.

"On February 11, 2011, Castoro emailed approximately 669 Itex members in NYS and NJ, including plaintiff, to promote an 'ITEX Texas Holdem Tournamen'" held at Fire & Ice in NJ on February 17, 2011.  The email stated "don't miss out!!!!!" and to call Castoro or Garcia at 732-669-9300 for details. Gamblers each paid Itex a $500 'buy-in' fee and Itex 'cut the pot' by charging gamblers up to 15% on the amounts they both won and lost.  In excess of five (5) persons participated in the promotion and organizing of this gambling event and the proceeds exceeded $5,000.  Itex's emails promoting this gambling event crossed state lines and the proceeds were laundered by reporting on Itex's 2011 federal, state, and local tax returns these funds were legally obtained."  (FAC at para. #90).

"On May 10, 2011, June 1, 2011, and June 7, 2011, Itex emailed approximately 669 Itex members in NYS and NJ, including plaintiff, on each of these days to promote an 'ITEX Hold-Em Poker Tournament' held at Fire & Ice in NJ on June 9, 2011.  The email stated 'don't miss out!!!!!' and to call Castoro or Garcia at 732-669-9300 for details.  Gamblers each paid Itex a $500 'buy-in' fee and Itex 'cut the pot' by charging gamblers up to 15% on the amounts they both won and lost.  In excess of five (5) persons participated in the promotion and organizing of this gambling event and the proceeds exceeded $5,000.  Itex's emails promoting this gambling event crossed state lines and the proceeds were laundered by reporting on Itex's 2011 federal, state, and local tax returns these funds were legally obtained."  (FAC at para. #91).

"On February 1, 2012, Garcia emailed approximately 669 Itex members in NYS and NJ, including Patricia Adams and plaintiff, to promote gambling on sports Super Bowl XLVI that was held on February 5, 2012.  These emails crossed state lines.  Itex received bets in multiples of $250 and promoted this gambling by stating three (3) winners would receive $5,000, one (1) winner would receive $10,000, and that gamblers 'had a chance of turning $250 into $25,000.'  In addition to receiving bets in multiples of $250, Itex 'cut the pot' by charging gamblers up to 15% on the amounts they both won and lost.  On February 6, 2012, Itex members, including Patricia Adams, were emailed notice of the winners.  This email crossed state lines.  Patricia Adams was not a winner and Itex

deducted two unlawful debts of $250 each ($500) from her account plus a cut of approximately 10% of her $500 loss. In excess of five (5) persons participated in the promotion and organizing of this sports gambling event. Itex laundered the proceeds, which were in excess of $5,000, by reporting on its 2012 federal, state, and local tax returns these funds were legally obtained." (FAC at para. #92).

**The Court overlooked the controlling law regarding the collection of unlawful debts**

The collection of an unlawful debt alone rising from illegal gambling triggers the

RICO statute even without a pattern of racketeering activity.

> "The RICO defendants can violate any subsection of 18 USC § 1962 if it collects or conspires to collect 'an unlawful debt.' 18 USC § 1961(6) defines 'unlawful debt' to include debt arising from the operation of illegal gambling. In other words, the collection of an unlawful debt itself violates RICO even without a 'pattern' of 'racketeering activity.'" (RICO Statement at pg. 19).

**The Court overlooked the intent of Congress and the controlling decisions**

> "Congress mandated that RICO 'shall be liberally construed to effectuate its remedial purposes.' See section 904(a) of Pub.L. No. 91-452, 84 Stat. 922, 923, 947. The Supreme Court has repeatedly emphasized that courts are vested with extensive equitable powers to fashion appropriate remedies to redress unlawful conduct. See *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1 (1971). (RICO Statement at pg. 30 para. f)).

> Moreover, the Supreme Court has pointedly ruled that where "the public interest is involved . . . those equitable powers assume even broader and more flexible character than when only a private controversy is at stake." See *Porter v. Warner Holding, Co.*, 328 U.S. 395, 398 (1946), *Accord Virginian Ry. Co. v. Sys. Fed'n. No. 40*, 300 U.S. 515, 552 (1937)." (RICO Statement at pg. 31 para. g)).

**Count III**
**A derivative action on behalf of ITEX and individual claims on behalf of Bal**

The Decision stated "Count Three is dismissed because Bal [as a *pro se* litigant]

cannot prosecute a derivative action *pro se* on behalf of ITEX." (Decision at pg. 18).

**The Court overlooked the controlling decisions requiring ITEX to hire an independent attorney to represent ITEX**

ITEX's hiring of an independent  attornry to represent ITEX would allow the derivative action to go forward

"Case law and practice dictate that it is Frankfurt Kurnit Klein & Selz, . a law firm that has represented ITEX for many years, which cannot represent ITEX.

An issue that recurs is the extent to which the same lawyer or law firm can represent the corporation, the alleged wrongdoers, both the corporation   and the alleged wrongdoers, or some other combination of parties.  When serious claims that directors or officers have harmed the corporation, as herein, the corporation needs counsel separate from the directors and officers.

It would be is a conflict-of-interest for Frankfurt Kurnit Klein & Selz ['FKKS'] to represent ITEX.  The Model Rules of Professional Conduct as adopted by the House of Delegates of the American Bar Association afford some guidance.  Under Rule 1.7(b):

'A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to client or to a third person . . .' (Memo of Law at pgs. 10-11).

'In *Lewis v. Shaffer Stores Company,* 218 F. Supp. 238, 239 (S.D.N.Y. 1963), a derivative shareholder action, plaintiff moved for an order striking the subject corporation's answer and the appearance of Breed Abbott Morgan, a law firm that represented the corporation for many years [an identical situation with ITEX's law firm FKKS].  Plaintiff demanded 'the Corporation to appear by genuinely independent counsel.'  The question before the court is whether Breed Abbott Morgan should appear for the corporation.  The court concluded that 'under the circumstances, including the [serious] nature of the charges, and the vigor with which they are apparently being pressed and defended, I believe that it would be wise for the Corporation to retain independent counsel, who have had no previous connection with the Corporation, to advise it as to the position which it should take in this controversy.  See *Garlen v. Green Mansions, Inc.*, 9 A.D.2d 760, 193 N.Y.S.2d 116 (1st Dept. 1959); *Marco v. Dulles,* 169 F. Supp. 622 (S.D.N.Y. 1959), appeal dismissed 268 F.2d 192 (2d  Cir. 1959).'" (Memo of Law at pgs. 11-12).

**The Court overlooked claims presented on behalf of Bal**

Bal is a qualifying shareholder of ITEX and asserted *individual claims.* The court

overlooked Bal's following claims:

1) The ITEX defendants rigged the shareholder elections and suppressed

    Bal's shareholder democracy.  Bal alleged:

> "The defendants violated their fiduciary duty to Itex by suppressing
> shareholder democracy [including plaintiff Bal's shareholder
> democracy] ] of the election and voting held on December 13, 2013."
> (FAC at para. #107).

2) The ITEX defendants failed to provide Bal with information pursuant to

    U.S. Securities and Exchange Commission ("SEC") Rule 14a-7:

> "On May 4, 2013, in accordance with SEC Rule 14a-7, plaintiff
> demanded the contact information of Itex's shareholders to
> democratically communicate with shareholders prior to the election of
> directors and the voting upon other matters held on December 13,
> 2013" (FAC at para. #108).

3) The ITEX defendants failed to provide Bal with an accounting.

> "Plaintiff is a shareholder and demands an independent
> evaluation of Itex's internal controls and methods of financial
> accounting."  (FAC at para. #123).

4) ITEX has refused Bal's:

> "Demand for the settlement reached on behalf of ITEX and its
> shareholders.  David Polonitza, an ITEX shareholder, filed a derivative
> action against White, Best, and Wade (*David Polonitza v. Steven White,
> Eric Best, and John Wade,* Superior Court of the State of Washington
> for King County, No. 11-2-30760-3 SEA) (the 'Polonitza action')."
> (Plaintiffs Aff. at para. #87).

> "On December 28, 2012, a settlement was reached between the
> parties in the Polonitza action on behalf of ITEX and its shareholders.
> White, Best, and Wade have concealed the terms of the settlement.
> (Plaintiffs Aff. at para. #88).  On behalf of ITEX, its shareholders, and
> [Bal], [Bal] demand[ed] that shareholders, including [him]self, be

provided with a copy of that settlement." (Plaintiffs Aff. at para. #89).

Dated:  November 12, 2014

\s\

John Andries Bal, Jr., Agent
85 Kenmare Street #35
New York, NY 10012
(212) 966-7576
nycjohn123@msn.com

- 20 -