## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Mergent Services and

John Andries Bal, Jr.
(List the full name(s) of the plaintiff(s)/petitioner(s).)

13 CV 6794 (CM)(    )

-against-

See attached list

(List the full name(s) of the defendant(s)/respondent(s).)

NOTICE OF APPEAL

RECEIVED
DEC - 9 2014
PRO SE OFFICE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: DEC 03 2014

Notice is hereby given that the following parties: John Andries Bal, Jr.

(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the  ☐ judgment  ☒ order  entered on:  November 17, 2014
(date that judgment or order was entered on docket)

that:

Denying my motion for reconsideration and

reargument
(If the appeal is from an order, provide a brief description above of the decision in the order.)

December 3, 2014
Dated

John Andries Bal, J.
Signature

Bal, John A.
Name (Last, First, MI)

85 Kenmare Street #35, New York, NY 10012
Address                    City              State           Zip Code

(212) 966-7576
Telephone Number

nycjohn123@msn.com
E-mail Address (if available)

---

* Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case. Fed. R. App. P. 3(c)(2). Attach additional sheets of paper as necessary.

Rev. 12/23/13

MERGENT SERVICES and JOHN ANDRIES
BAL, JR.,

           13 Civ. 6794 (CM)

                Plaintiffs,

        -v-

ITEX CORPORATION, STEVEN WHITE,
personally and in the capacity of CEO, CFO,
and Chairman of the Board, ERIC BEST,
personally and in the capacity of Director,
JOHN WADE, personally and in the capacity
of Director, ROBERT BENSON, personally
and in the capacity of Vice President, NYTO
TRADE INCORPORATED, JOHN CASTORO
aka NYTO TRADE INCORPORATION aka
NYTO TRADING CORPORATION aka NYTO
TRADE EXCHANGE and 44 TRADE
CORPORATION, aka NYTO TRADE, INC.,
personally and in the capacity of President,
and IZZY GARCIA, personally and in the
capacity of Manager,

                Defendants.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## CIVIL APPEAL TRANSCRIPT INFORMATION (FORM D-P)
## FOR PRO SE APPELLANTS

A PRO SE APPELLANT MUST FILE THE ORIGINAL OF THIS FORM WITH THE CLERK OF THE SECOND CIRCUIT IN ALL
CIVIL APPEALS WITHIN 14 CALENDAR DAYS AFTER FILING A NOTICE OF APPEAL.

| THIS SECTION MUST BE COMPLETED BY COUNSEL FOR APPELLANT | | |
|---|---|---|
| **CASE TITLE**<br>Morgent Services and John Andries Bal, Jr. v. Itex Corporation, et al. | **DISTRICT** SDNY | **DOCKET NUMBER** 13 CV 6794 (CM) |
| | **JUDGE** Colleen McMahon | **APPELLANT** John Andries Bal, Jr. |
| | **COURT REPORTER** | **PRO SE APPELLANT** John Andries Bal, Jr. |

| Check the applicable provision: | PROVIDE A DESCRIPTION, INCLUDING DATES, OF THE PROCEEDINGS FOR WHICH A TRANSCRIPT IS REQUIRED (*i.e.*, oral argument, order from the bench, etc.) |
|---|---|
| ☐ **I am ordering a transcript.** | |
| ☒ **I am not ordering a transcript** | |
| **Reason for not ordering a transcript:** | |
|    ☐ **Copy is already available** | |
|    ☒ **No transcribed proceedings** | |
|    ☐ **Other (Specify in the space below):** | **METHOD OF PAYMENT**    ☐ Funds     ☐ CJA Voucher (CJA 21) |
| **INSTRUCTIONS TO COURT REPORTER:** | **DELIVER TRANSCRIPT TO: (COUNSEL'S NAME, ADDRESS, TELEPHONE)** |
| ☐ **PREPARE TRANSCRIPT OF PRE-TRIAL PROCEEDINGS** | |
| ☐ **PREPARE TRANSCRIPT OF TRIAL** | |
| ☐ **PREPARE TRANSCRIPT OF OTHER POST-TRIAL PROCEEDINGS** | |
| ☐ **OTHER (Specify in the space below):** | |

**I certify that I have made satisfactory arrangements with the court reporter for payment of the cost of the transcript.
*See* FRAP 10(b). I understand that unless I have already ordered the transcript, I shall order its preparation at the
time required by FRAP and the Local Rules.**

| PRO SE APPELLANT'S SIGNATURE<br>John Andries Bal, Jr. | DATE December 3, 2014 |
|---|---|

**COURT REPORTER ACKNOWLEDGMENT:** This section is to be completed by the court reporter. Return one copy to the Clerk of the Second Circuit.

| DATE ORDER RECEIVED | ESTIMATED COMPLETION DATE | ESTIMATED NUMBER OF PAGES |
|---|---|---|
| SIGNATURE OF COURT REPORTED | | DATE |

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Mergent Services and John Andries

Bal, Jr.

(List the full name(s) of the plaintiff(s)/petitioner(s).)

13 CV 6794 (CM)(    )

-against-

**MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

See attached list

(List the full name(s) of the defendant(s)/respondent(s).)

I move under Federal Rule of Appellate Procedure 24(a)(1) for leave to proceed *in forma pauperis* on appeal. This motion is supported by the attached affidavit.

December 3, 2014

Dated

Signature

Bal, John A.

Name (Last, First, MI)

85 Kenmare Street #35, New York NY 10012

Address         City         State         Zip Code

(212) 966-7576

Telephone Number

nycjohn123 @ m sn. com

E-mail Address (if available)

① Mergent Services is a sole proprietorship owned by John Bal. It has no bank account.

MERGENT SERVICES and JOHN ANDRIES
BAL, JR.,                                          13 Civ. 6794 (CM)

                    Plaintiffs,

        -v-

ITEX CORPORATION, STEVEN WHITE,
personally and in the capacity of CEO, CFO,
and Chairman of the Board, ERIC BEST,
personally and in the capacity of Director,
JOHN WADE, personally and in the capacity
of Director, ROBERT BENSON, personally
and in the capacity of Vice President, NYTO
TRADE INCORPORATED, JOHN CASTORO
aka NYTO TRADE INCORPORATION aka
NYTO TRADING CORPORATION aka NYTO
TRADE EXCHANGE and 44 TRADE
CORPORATION, aka NYTO TRADE, INC.,
personally and in the capacity of President,
and IZZY GARCIA, personally and in the
capacity of Manager,

                    Defendants.

**Application to Appeal In Forma Pauperis**

Mergent Services v. ITEX Corporation Appeal No. pending

District Court or Agency No. USDC, SDNY

| Affidavit in Support of Motion | Instructions |
|---|---|
| I swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. I believe I am entitled to redress. I swear or affirm under penalty of perjury under United States laws that my answers on this form are true and correct. (28 U.S.C. § 1746; 18 U.S.C. § 1621.) | Complete all questions in this application and then sign it.  Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number. |
| Signed: John Andres Bol, Jr. | Date: December 3, 2014 |

My issues on appeal are: (required):

1.    *For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.*

| Income source | Average monthly amount during the past 12 months | | Amount expected next month | |
|---|---|---|---|---|
| | You | Spouse | You | Spouse |
| Employment | $ 0 | $ 0 | $ 0 | $ 0 |
| Self-employment | $ 0 | $ 0 | $ 0 | $ 0 |
| Income from real property (such as rental income) | $ 0 | $ 0 | $ 0 | $ 0 |

- 1 -

| Interest and dividends | $ 0 | $ 0 | $ 0 | $ 0 |
|---|---|---|---|---|
| Gifts | $ 0 | $ 0 | $ 0 | $ 0 |
| Alimony | $ 0 | $ 0 | $ 0 | $ 0 |
| Child support | $ 0 | $ 0 | $ 0 | $ 0 |
| Retirement (such as social security, pensions, annuities, insurance) | $ 0 | $ 0 | $ 0 | $ 0 |
| Disability (such as social security, insurance payments) | $ 985 ② | $ 0 | $ 0 | $ 0 |
| Unemployment payments | $ 0 | $ 0 | $ 0 | $ 0 |
| Public-assistance (such as welfare) | $ 0 | $ 0 | $ 0 | $ 0 |
| Other (specify): | $ 0 | $ 0 | $ 0 | $ 0 |
| **Total monthly income:** | $ 985 | $ 0 | $ 0 | $ 0 |

② Vietnam veterans disability payments.
I receive residual payments for past work as as union actor. These payments
are deducted from my disability
payments dollar for dollar.

2.   *List your employment history for the past two years, most recent employer first. (Gross
      monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| 0 | 0 | 0 | $ 0 |
| 0 | 0 | 0 | $ 0 |
| 0 | 0 | 0 | $ 0 |

3.   *List your spouse's employment history for the past two years, most recent employer first.
      (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| 0 | 0 | 0 | $ 0 |
| 0 | 0 | 0 | $ 0 |
| 0 | 0 | 0 | $ 0 |

4.  *How much cash do you and your spouse have? $* **232.40**

    *Below, state any money you or your spouse have in bank accounts or in any other financial institution.*

| Financial Institution | Type of Account | Amount you have | Amount your spouse has |
|---|---|---|---|
| Bank of America | checking | $ 1,477.56 | $ 0 |
| 0 | 0 | $ 0 | $ 0 |
| 0 | 0 | $ 0 | $ 0 |

*If you are a prisoner seeking to appeal a judgment in a civil action or proceeding, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts. If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.*

5.  *List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishings.*

| Home | Other real estate | Motor vehicle #1 |
|---|---|---|
| (Value) $ | (Value) $   0 | (Value) $   0 |
|  |  | Make and year:   0 |
| 0 | 0 | Model:   0 |
|  |  | Registration #:   0 |

| Motor vehicle #2 | Other assets | Other assets |
|---|---|---|
| (Value) $ | (Value) $   0 | (Value) $   0 |
| Make and year: | 0 | 0 |
| Model: | 0 | 0 |
| Registration #: | 0 | 0 |

6.   *State every person, business, or organization owing you or your spouse money, and the amount owed.*

| Person owing you or your spouse money | Amount owed to you | Amount owed to your spouse |
|---|---|---|
| O | $        O | $      O |
| O | $        O | $      O |
| O | $        O | $      O |
| O | $        O | $      O |

7.   *State the persons who rely on you or your spouse for support.*

| Name [or, if a minor (i.e., underage), initials only] | Relationship | Age |
|---|---|---|
| O | O | O |
| O | O | O |
| O | O | O |

8.   *Estimate the average monthly expenses of you and your family. Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.*

|  | You | Your Spouse |
|---|---|---|
| Rent or home-mortgage payment (including lot rented for mobile home)<br>Are real estate taxes included?        Yes ☑No<br>Is property insurance included?        Yes ☑No | $ 270 | $<br><br>O |
| Utilities (electricity, heating fuel, water, sewer, and telephone) | $ 68 | $    O |
| Home maintenance (repairs and upkeep) | $ 40 | $    O |
| Food | $ 280 | $    O |
| Clothing | $ 65 | $    O |
| Laundry and dry-cleaning | $ 38 | $    O |
| Medical and dental expenses | $ 120 | $    O |

- 4 -

| | | |
|---|---|---|
| Transportation (not including motor vehicle payments) | $ 60 | $ 0 |
| Recreation, entertainment, newspapers, magazines, etc. | $ 30 | $ 0 |
| Insurance (not deducted from wages or included in mortgage payments) | | |
|    Homeowner's or renter's: | $ 0 | $ 0 |
|    Life: | $ 0 | $ 0 |
|    Health: | $ 0 | $ 0 |
|    Motor vehicle: | $ 0 | $ 0 |
|    Other: | $ 0 | $ 0 |
| Taxes (not deducted from wages or included in mortgage payments) (specify): | $ 0 | $ 0 |
| Installment payments | | |
|    Motor Vehicle: | $ 0 | $ 0 |
|    Credit card (name): | $ 0 | $ 0 |
|    Department store (name): | $ 0 | $ 0 |
|    Other: | $ 0 | $ 0 |
| Alimony, maintenance, and support paid to others | $ 0 | $ 0 |
| Regular expenses for operation of business, profession, or farm (attach detailed statement) | $154 | $ 0 |
| Other (specify): | $ 0 | $ 0 |
| **Total monthly expenses:** | $ 1,125 | $ 0 |

9. *Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?*

   ☑ Yes     ☐ No    If yes, describe on an attached sheet.

   My Vietnam veterans disability was raised to $1,054

10. *Have you spent — or will you be spending —any money for expenses or attorney fees in connection with this lawsuit?* ☐ Yes ☑ No

   *If yes, how much?* $ _____

- 5 -

11.  *Provide any other information that will help explain why you cannot pay the docket fees
for your appeal.*

There are no transcript fees.
The USDC denied IFP status under 28 USC 1915. I have
a meritorious appeal (see attached motion for reargument
and reconsideration.

12.  *Identify the city and state of your legal residence.*

City  New York          State  New York

Your daytime phone number:  (212) 966-7576

Your age:  69     Your years of schooling:  16

Last four digits of your social-security number:  6706

-6-

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:   11/12/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

MERGENT SERVICES and JOHN ANDRIES      :
BAL, JR.,

                                       :

                 Plaintiffs,

                                         :

         -against-

                                         :

ITEX CORPORATION, STEVEN WHITE
personally and in the capacity of CEO, CFO,      :
and Chairman of the Board, ERIC BEST,
personally and in the capacity of Director,      :
JOHN WADE, personally and in the capacity
of Director, ROBERT BENSON, personally      :
and in the capacity of Vice President, NYTO
TRADE INCORPORATED, JOHN CASTORO      :
aka NYTO TRADE INCORPORATION aka
NYTO TRADING CORPORATION aka NYTO      :
TRADE EXCHANGE and 44 TRADE
CORPORATION, aka NYTO TRADE, INC.,      :
personally and in the capacity of President,
and IZZY GARCIA, personally and in the      :
capacity of Manager,

                                         :

               Defendants.

                                         :

---------------------------------------------------------------x

13 Civ. 6794 (CM)

*Notice of Motion for Reconsideration and Reargument*

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR RECONSIDERATION AND REARGUMENT

Plaintiff *pro se* John Andries Bal, Jr. ("Bal") is the owner of Mergent Services

("Mergent"), a sole proprietorship (collectively, the "plaintiffs") and a shareholder of

defendant ITEX Corporation ("ITEX").  Bal also brings this action in the capacity of

Private Attorney General.

The defendants are ITEX, Steven White ("White"), Eric Best ("Best"), John Wade ("Wade"), Robert Benson ("Benson") (collectively the "ITEX defendants") and NYTO Trade Incorporated ("NYTO"), John Castoro ("Castoro"), various aliases alleged to be Castoro, and Izzy Garcia ("Garcia") (collectively the "NYTO defendants").

Plaintiffs allege claims in conversion, breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and tortuous interference with business relationships against ITEX, White, Benson, and the NYTO Defendants, as well as violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, against the ITEX defendants, NYTO, and Castoro, and a shareholder derivative action on behalf of ITEX against White, Best, and Wade for breach of fiduciary duty. Plaintiffs also raise constitutional and civil rights claims against ITEX and the NYTO defendants.

## STANDARD ON A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 44 (2d Cir. 2003); *see also Roth v. Jennings,* 489 F .3d 499, 510 (2d Cir. 2007). To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)( 6) motion to

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal quotations, citations, and alterations omitted).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). A court must interpret *pro se* filings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006).

**Standard of Review for Motions for Reconsideration and Reargument**

Motions for *reconsideration* are governed by Local Civil Rule 6.3 which states, in part, that the motion shall "set forth concisely the matters or controlling decisions which counsel believes the court has overlooked." To prevail on a motion for reconsideration, the movant must "point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.,* 70 F.3d 255, 257 (2d Cir 1995).

New arguments may not be raised on a motion for reconsideration. *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir. 1998).

A party may move for *reargument* pursuant to Local Civil Rule 3(j) only upon an assertion that "the court has overlooked 'matters or controlling decisions'" which, had they been considered, might reasonably have altered the result

- 3 -

reached by the court." *Adams v. United States,* 686 F.Supp. 417, 418 (S.D.N.Y.

1988) (quoting Local Civil Rule 3(j), USDC, SDNY), quoted in *Schonberger v.*

*Serchuk*, 742 F.Supp. 108, 119 (SDNY 1990).

In addition, "a party making a motion for reargument may not, under [Local]

Civil Rule 3(j) advance new facts, issues or arguments not previously presented to

the court." *Schonberger v. Serchuk*, 742 F.Supp. at 119.

**The Court overlooked the controlling law for unauthorized foreign corporations**

Bal is a resident of the county, city, and state of New York and the owner of

Mergent Services, a sole proprietorship. The transactions in question occurred in

the county, city, and state of New York.

Although the ITEX defendants and NYTO defendants may defend

themselves against the instant action, they are prohibited from taking affirmative

steps such as a Motion to Dismiss.

> "A motion to dismiss is a special proceeding. ITEX and NYTO are
> *unauthorized foreign corporations* unlawfully conducting business in New
> York State ("NYS") that forfeited their right to file motions to dismiss the
> complaint as a result of evading payment of NYS taxes and tax filings. New
> York Business Corporation Law ("BCL"), *Actions or Special Proceedings by*
> *Unauthorized Foreign Corporations § 1312,* states:
>
> > '(a) A foreign corporation doing business in this state without
> > authority **shall not maintain any action or special proceeding in**
> > **this state** . . .'" (emphasis added).
>
> On June 26, 2002, the DOS annulled ITEX's authority to do business in
> NYS *as a* foreign corporation for evading payment of taxes and tax filings
> (Plaintiffs' Aff. at Exhibit 7). NYTO, located in Rahway, New Jersey, never
> obtained the authority from the DOS to do business in NYS (Plaintiffs' Aff. at
> Exhibit 8)." (Memo of Law at pg. 2)[1].

---

1 Memo of Law at _____ refers to Plaintiffs' Memorandum of Law dated August 11, 2014.

The purpose of BCL § 1312 is punitive.  Unauthorized foreign corporations unlawfully doing business in NYS are prohibited from "maintain[ing] any action or special proceeding in this state."  Any other reading of BCL § 1312 would undermine its intent.

### The Court mischaracterized Bal's statements

The Court stated:

> "Although Bal - who had previously rejected the identical settlement offer transmitted directly to him - characterizes this as an attempt by ITEX to bribe the arbitrator and influence the outcome of the arbitration, the letter speaks for itself and its text makes clear that no bribe was offered." (Decision at pg. 8)[2].

Bal stated that defendant White attempted to "influence" the arbitrator, he *did not* claim that White attempted to "bribe" the arbitrator.

### In effect, the Court has directed the parties down a dead-end street

> "The State Court previously ordered the parties to arbitrate their dispute.  The arbitration was halted because NYTO, Castoro, and Garcia claimed they were unable to pay the arbitration fees.  [Bal's] financial situation has worsened and [he is] also unable to pay the arbitration fees." (Memo of Law at pg. 7).

The administrative fees, excluding trial and post-trial fees, for the arbitration exceeded $2,000 and the arbitrator's fees were $400 per hour.  The arbitrator's trial and post-trial fees alone would exceed $12,800.

In the instant action, the Court recognized Bal's financial hardship and approved his *In Forma Pauperis* application.  Accordingly, Bal and defendants NYTO, Castoro, and Garcia, are financially unable to participate in an arbitration.

Directing the parties to arbitration would not serve the interests of justice and would add further delay and frustration.

---

2 Decision at \_\_\_\_\_ refers to the Court's decision dated October 29, 2014.

**The Court overlooked that ITEX waived its right to arbitration**

In 2007, ITEX filed a demand for arbitration. On January 14, 2008, the

State Court granted ITEX's request. Since January 14, 2008, ITEX has not

commenced the arbitration that it demanded. Accordingly, ITEX waived it right to

arbitrate.

CPLR § 7502(c) states:

> If an arbitration is not commenced within thirty days of the granting of
> the provisional relief, the order granting such relief shall expire and be null
> and void and costs, including reasonable attorney's fees, awarded to the
> respondent [Bal]."

**The Court overlooked the controlling decision and law for fraud**

The Court stated:

> "The Marketplace Rules also contain an arbitration clause (found in the
> record before me at Decl. of Jeremy S. Goldman ("Goldman Decl."), Exhibit B,
> Order of Justice Debra A. James, Supreme Court of New York, New York County,
> dated January 14, 2008, at 2 (the 'State Court Opinion'). The clause states that
> "[t]he parties agree that in the event of a dispute, the parties will resolve the
> dispute under the commercial rules of the American Arbitration Association in
> Bellevue, Washington." (Decision at pg. 6).

The Marketplace Rules ("contract") between Bal and ITEX submitted by ITEX in

the State Court action and cited in the Decision is fraudulent and void by its own terms.

ITEX "sewer served" the Notice of Entry and, as a result, prevented Bal from appealing

the State Court's acceptance of the contract.

The contract is also void due to fraud. In March 2014, Bal discovered ITEX's

fraud. ITEX fraudulently induced Bal into becoming an ITEX member by concealing a

significant material fact that _ITEX is unlawfully doing business throughout the United_

_States_ (except for Nevada, California, and Washington). Under New York Civil Practice

Law and Rules ("CPLR") §213(8) there is a two-year statute of limitations from the date

the fraud is discovered.  Bal is well within the statute of limitations.

Bal raised ITEX's fraud in the FAC submitted to the Court o April 9, 2014.

It is well settled in New York that "a misrepresentation of material fact, which is collateral to the contract and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud". See Deerfield Communications Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954, 956 (1986); First Bank of Americas v. Motor Car Funding, 257 A.D.2d 287, 690 N.Y.S.2d 17 (1st Dep't 1999)." (see Memo of Law at pgs. 14-17).

## The Court overlooked CPLR § 205(a) and the controlling decisions for the statute of limitations for RICO predicate offenses

Bal stated:

"Initially, in 2007, I sought the return of $56,650 that the defendants embezzled from my account.  My efforts for the return of my funds were unsuccessful and, as I researched ITEX, I discovered systemic patterns of criminality and harm being done to shareholders, brokers, and members." (Plaintiffs' Aff. at para. #5).

None of Bal's claims, whether in common law or the RICO statute, are time-

barred.  Under New York law, the statute of limitations for breach of contract claims is six

years and the controlling decision for the statute of limitations for RICO violations is four

years.  The Court incorrectly determined when Bal discovered, or should have

discovered, the RICO predicate offenses.  Bal did not discover the ITEX defendants' and

the NYTO defendants' RICO predicate offenses until 2012.  Beginning in 2012, well

within RICO's four-year statute of limitations, approximately 18 ITEX members reported

to Bal that ITEX embezzled funds from their account.  The consistency of the reports

established a pattern of criminality.  Subsequently, Bal discovered the RICO predicate

acts of mail and wire fraud and money laundering surrounding the embezzlements.

Furthermore, even if Bal discovered the RICO predicate offenses in 2007 they would not be time-barred.

"The defendants incorrectly assert that several of Bal's claims are beyond either a three-year or six-year statute of limitations. However, applying the statutory tolling period, only 8 months and 3 days have run. Therefore, Bal's claims are well within a three-year or six-year statute of limitations [and RICO four-year statute of limitations].

On May 25, 2007, Bal filed an action in the New York State Supreme Court – New York County against the defendants that, among other claims, sought the return of $56,650 because ITEX refused to provide the advertising that Bal purchased (*Mergent Services and John Bal v. ITEX Corporation, NYTO Trade Incorporation, John Castoro, Izzy Garcia, et al.*) ('State Court' or 'State Court lawsuit').

*The clock began to run on April 7, 2007* when ITEX breached the agreement to provide Bal with advertising. Bal filed the State Court action on May 25, 2007 (this did not stop the clock). *The clock stopped on June 12, 2007* when the defendants filed an arbitration demand in the State Court lawsuit (an elapsed period of 2 months and 5 days).

*The clock started again on March 26, 2013* when the State Court dismissed the lawsuit regarding the issue of arbitrability (Plaintiffs' Aff. at Exhibit 14). *The clock stopped again on September 24, 2013* when Bal filed the instant action presently before the court (an elapsed period of 5 months and 28 days).

Combining both periods, only *8 months and 3 days* can be counted towards the running of any statute of limitations. This defeats the defendants' assertions that Bal's claims are beyond either a 3-year or 6-year statute of limitations.

The period in which the arbitrability of a claim is being determined by the courts is statutorily tolled. The Court of Appeals has held that the time arbitrability is being argued is a tolling period. See *Joseph Francese, Inc. v. Enlarged City School District of Troy,* 95 N.Y.2d 59, 710 N.Y.S.2d 315 (2000).

Bal submitted a motion to reargue the State Court's March 26, 2013 decision.

On February 24, 2014, the State Court granted Bal's motion to reargue several issues, including the issue of arbitrability, but adhered to the decision of March 26, 2013. Using the State Court's final termination on February 24, 2014, only 2 months and 5 days can be counted towards a statute of limitations.

- 8 -

On September 24, 2013, *less than six months after the State Court dismissed Bal's complaint*, Bal filed the instant action presently before this court. The State Court's dismissal was not based on 'a final judgment upon the merits.' The instant action is based upon the same 'series of transactions or occurrences' as those raised in the State Court lawsuit and independent claims.

New York Civil Practice Law and Rules ('CPLR') § 205(a), in part, states:

> 'New action by plaintiff. If an action timely commenced is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the **plaintiff . . . may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months . . .'** (emphasis added)"
> (Memo of Law at pgs. 5-6).

The ITEX defendants' and the NYTO defendants' RICO predicate acts of mail and wire fraud continue to this day.

> "From at least 2003, to date, and likely continuing into the future the RICO defendants have caused ITEX to send out millions of emails throughout the United States promoting sales and purchases *without advising that ITEX cannot lawfully do business in 47 states.*" (RICO Statement at Exhibit 17).

Charles Cruikshank, Esq., a NYTO attorney, admited:

> "NYTO sends approximately 10 email broadcasts per day to its members and thousands of other communications per month, some of which or the other deal with the availability of products and services (Exhibit 12)" (RICO Statement at pgs. 15-16).

## The interests of justice and equity required the Court to allow Bal an opportunity to obtain an attorney before dismissing his claims

The Decision advised Bal that, as a *pro se* litigant, he can neither pursue claims on behalf of eBuy-Sell.com, Inc. ("eBuy-Sell"), a company wholly owned by Bal, nor derivative action on behalf of ITEX.

Submitted simultaneously with this Motion for Reconsideration and Reargument is Plaintiffs' Application for the Court to Request *pro bono* Counsel or, *in the alternative,* Application for the Court to Request Counsel Pursuant to 18 USC § 3006A(g).

If the applications for counsel are denied, plaintiffs respectfully request ahe period of sixty (60) days to obtain counsel.

**The Court is respectfully requested to recognize New York law**

eBuy-Sell .com, Inc. ("eBuy-Sell") assigned its claims to Bal. All the transactions in question between ITEX and eBuy-Sell were executed in NYS. According, the Court respectfully requested to recognize NYS law.

New York's First Department and the Second Department each have held that an individual assignee of a corporation may sue without a lawyer, "despite the fact that the assignment may have been made to circumvent the statutory prohibition against a corporation appearing pro se." Traktman v. City of New York, 182 A.D.2d 814, 815 (2d Dep't 1992); see also Kinlay v. Henley, 57 A.D.3d 219, 220, 868 N.Y.S.2d 62 (1st Dep't 2008); Kamp v. In Sportswear Inc., 39 A.D.2d 869, 332 N.Y.S.2d 983 (1st Dep't 1972), rev'g on dissenting opinion below, 70 Misc.2d 898, 335 N.Y.S.2d 306 (App. Term 1972).

In addition, permitting Bal to represent eBuy-Sell would conserve the Court's, Bal's, and ITEX's resources by avoiding eBuy-Sell having to institute a separate action.

**Private Attorney General**

Bal brings this action in the capacity of a Private Attorney General ("PAG"). PAG is an equitable doctrine that allows a private citizen to bring a lawsuit in the public's

- 10 -

interest.  As Bal understands his capacity as a PAG, he has standing to represent the

claims contained in hisFAC.

The private attorney general doctrine first appeared in the decision of the

Honorable Jerome Frank of the 2nd Circuit U.S. Court of Appeals (*Assoc. Indus. of New*

*York* v. *Ickes*, 134 F.2d 694, 704 (2d Cir. 1943).  More recently, in *Holmes v. SIPC*, 503

U.S. 283 (1992), a RICO case, Justice O'Connor pointed to Congress' purpose of

bringing "the pressure of 'private attorneys general'" on a serious national problem for

which public prosecutorial resources" are inadequate.

**ITEX has misled this Court and the SEC regarding the value of an ITEX dollar**

The Court, *taking judicial notice*, quoted the following portion of ITEX's annual 10-

K  report submitted to the SEC (October 21, 2013 at 1-2), stated:

> "An ITEX dollar is an accounting unit used to record the value of
> transactions  as determined by the members in the [ITEX] Marketplace. ITEX
> dollars are not intended to constitute legal tender, securities, or commodities and
> have no readily determinable correlation to USD."  (Decision pg. 4 at footnote).

ITEX is wrong.

> "Itex processes the transactions of its members using, interchangeably,
> United States dollars and Itex-issued dollars.  The Internal Revenue Service ('IRS')
> officially determined that United States dollars and Itex-issued dollars are equal."
> (FAC at pg. 4).

It is widely known in the barter industry and by ITEX members that an ITEX dollar

(also known as a "Barter dollar") is the equivalent of a United States dollar ("USD").  The

IRS determined that an ITEX dollar and a USD are equal.  As ITEX must know, ITEX,

ITEX's brokers and franchisees, and ITEX members report ITEX dollars as USDs on their

federal, state, and county tax returns.  Furthermore, the IRS taxes ITEX dollars the same

as USDs.

## The Court's October 29, 2014 decision

The Decision, dated October 29, 2014, dismissed plaintiffs' First Amended

Complaint ("FAC") against the ITEX defendants and NYTO defendants and dismissed

eBuy-Sell.com, Inc.'s ("eBuy-Sell") claims "without prejudice" (Decision at page 11).  "If

eBuy-Sell decides to hire counsel, it (not Bal) may bring such claims." (Decision at pg.

12).

### Count I
### Breaches of Contract

The Court stated:

> "The acrimony [between Bal and ITEX] arises out of the sale of advertising
> services and other goods to Bal through the ITEX Marketplace, and ITEX and
> NYTO's alleged failure to keep their end of the bargain. The FAC alleges four
> instances in which Bal or eBuy-Sell paid for advertising with ITEX dollars but got
> neither ads nor a refund." (Decision at pgs. 4-5).

Then Court recited ("recitation") the heart of Bal's Count I claim as follows:

> (1) On December 26, 2002, ITEX sold Bal $24,000 of advertising "under the
> pretext of selling him advertising in the New York Daily News." Garcia and NYTO
> brokered the transaction and stated that the purchased advertising could be used
> by Bal in the future as needed. Bal paid for this advertising with an ITEX check
> payable to the Daily News in the amount of $24,000. ITEX withdrew $24,000, as
> well as a $720 commission from Bal's ITEX account. FAC ii 29. On or about April
> 7, 2007, the Daily News refused to run Bal's advertising, stating it never received a
> check from ITEX. Bal alleges ITEX sold him "bogus advertising," and then refused
> to the return $24, 720 he had paid to it.

> (2) On November 21, 2003, ITEX sold Bal $25,000 of advertising. Garcia
> and NYTO again brokered the transaction, and again represented that the
> purchased advertising could be used by Bal in the future as needed. ITEX
> withdrew $25,000 and its $750 commission from Bal' s account. On or about April
> 7, 2007, ITEX allegedly refused to provide advertising or return $25,750 to Bal's
> account.

> (3) On December 13, 2004, ITEX sold non-party eBuy-Sell $6,000 of
> advertising in yet another transaction brokered by Garcia. Garcia stated that eBuy-
> Sell could use this advertising in the future as needed. ITEX withdrew $6,000 and

a $180 commission from eBuy-Sell's account. On or about April 7, 2007, ITEX refused either to provide advertising or to return $6, 180 to eBuy-Sell 's account.

(4) In or about April 2007, ITEX sold eBuy-Sell $700 of Onyx Restaurant gift certificates. ITEX withdrew $700 and its $21 commission from eBuy-Sell's account. The gift certificates were "unusable," but ITEX refused to return $721 to eBuy-Sell." (Decision at pgs. 4-5).

## The Court has incorrectly concluded that Bal's pleading is more than "inartfully drawn"

The Court stated that Bal's "pleading is more than just 'inartfully' drawn. It does not

contain a short, plain statement of the claims. . . (Decision at pg. 11). However, the

Court's recitation in the preceding paragraphs numbered (1) to (4) clearly contains "a

short, plain statement" of the heart of Bal's Count I claim. Accordingly, Bal met the

threshold for providing a short, plain statement of his Count I claims.

## The Court has overlooked the controlling decisions for breach of contract

"Bal has met the threshold to state a claim for breach of contract. To state a claim for breach of contract, New York law requires that a Bal allege: (1) the existence of an agreement between Bal and defendant; (2) due performance of the contract by the Bal; (3) breach of the contract by the defendant; and (4) damages resulting from the breach. *Command Cinema Corp. v. VCA Labs, Inc., 464 F.Supp.2d 191, 198 (S.D.N.Y.2006)* (citing *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir.2000)." (Memo of Law at pg. 9).

Bal met this threshold.

### Count II
### RICO Claims

"Bal alleged injuries to himself, Mergent, eBuy-Sell, ITEX, 75 ITEX brokers, over 20,000 ITEX members, the United States of America, forty-seven individual States, and 18 specific ITEX members." (Decision at pg. 15).

18 USC § 1961 (5) defines a pattern of racketeering activity as "requir[ing] at least

two acts of racketeering activity, one of which occurred after the effective date of this

chapter and the last of which occurred within ten years after the commission of a prior act

of racketeering activity.  Bal has met this threshold.

**The Court incorrectly assumed when Bal "discovered, or should have discovered" the RICO predicate offenses**

The Court stated:

> "Bal discovered all of the injuries caused by theft, embezzlement, conspiracy to embezzle, and mail and wire fraud prior to September 24, 2009. This is evident from a review of the complaint Bal filed in the State Court action. The first and second causes of action in the State Court Complaint expressly discuss the alleged injuries caused to Bal through embezzlement, conspiracy to embezzle, and use of <u>interstate wires</u>. (Emphasis added) (Decision at pg. 17).

*Firstly*, the Court incorrectly assumed that "Bal discovered [the ITEX defendants' and NYTO defendnats'] . . . mail and wire fraud prior to September 24, 2009."  The Court also stated "This is evident from a review of the complaint Bal filed in the State Court action. The first and second causes of action in the State Court Complaint expressly discuss the alleged injuries caused to Bal through . . . interstate wires."  This is incorrect, *there is no discussion, express or otherwise, of interstate wires in Bal's State Court complaint*.

*Secondly*, the Court apparently incorrectly assumed that "theft, embezzlement, conspiracy to embezzle. . ." are RICO predicate offenses.  *They are not RICO predicate offenses*.  Therefore, they do not support that Bal knew of the RICO predicate offenses "prior to September 24, 2009."

Bal did not discover the ITEX defendants' and NYTO defendants' RICO predicate offenses until early 2012.  In 2012, as a result of researching the issues in the State Court action and receiving 18 complaints (several additional ITEX members asked not to be included in this action) from ITEX members, a pattern of RICO predicate offenses emerged.

- 14 -

Accordingly, the Court erred when it concluded that Bal discovered, or

should have discovered, any RICO offenses "prior to September 24, 2009."

### The Court overlooked the controlling decisions regarding time-barred RICO predicate offenses

Even if Bal knew of these RICO predicate offenses prior to September 24, 2009

they would not be time-barred.

> "Courts have uniformly held that a cause of action that would be time-barred if it was brought independently may nevertheless serve as a predicate offense for an otherwise timely RICO claim. See *Hoxworth v. Blinder Robinson & Co.*, 980 F.2d 912, 924-25, (3d Cir. 1990); *Leroy v. Paytel III Mgmt. Assocs., Inc.*, No. 91 Civ. 1933, 1992 WL 367090 at *4 (S.D.N.Y. Nov. 24, 1992)." (RICO Statement at pg. 30, para. b)).

### The Court overlooked the controlling decisions that allow Bal to use predicate offenses that targeted other victims

> "Bal may use predicate offenses targeting other victims to show evidence of 'pattern' of racketeering. Bal needs only to be injured by a single predicate offense committed in furtherance of the scheme. See *Sedima, S.P.R.L.*, 473 U.S. at 488-93; *Deppe v. Tripp*, 863 F.2d 1356, 1366-67 (7th Cir. 1988); *Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806, 809-10 (7th Cir. 1987); *Corley v. Rosewood Care Ctr., Inc.*, 388 F.3d 990, 1004 (7th Cir. 2004). (RICO Statement at pg. 30 para. c)).

### Bal did not "dress up" his Count I common law claims

Although a few of Bal's Count I claims were repeated in Count II as qualifying

RICO predicate offenses, he denies "'dress[ing] up' his Count One common law claims

with fancy language from the RICO statute." (Decision at pg. 15).

The Court is respectfully referred to Bal's FAC and the RICO Statement for short

and plain statements of his RICO claims.contained in paragraphs 54-89 of plaintiffs' FAC:

### The Court overlooked the controlling RICO statutes regarding illegal interstate gambling and debt collection

Each of the below RICO Wire Fraud violations (18 USC 1343) occurred in 2011

and 2012 and were submitted in plaintiffs' FAC on April 9, 2014, _well within RICO's four-year statute of limitations_.

ITEX, Castoro, and Garcia distributed the following emails promoting unlawful interstate gambling on February 11, 2011, May 10, 2011, June 1, 2011, June 7, 2011, and February 1, 2012. Subsequently, also in violation of the RICO statute, ITEX collected unlawful debts as a result of this unlawful interstate gambling.

"On February 11, 2011, Castoro emailed approximately 669 Itex members in NYS and NJ, including plaintiff, to promote an 'ITEX Texas Holdem Tournamen'" held at Fire & Ice in NJ on February 17, 2011. The email stated "don't miss out!!!!!" and to call Castoro or Garcia at 732-669-9300 for details. Gamblers each paid Itex a $500 'buy-in' fee and Itex 'cut the pot' by charging gamblers up to 15% on the amounts they both won and lost. In excess of five (5) persons participated in the promotion and organizing of this gambling event and the proceeds exceeded $5,000. Itex's emails promoting this gambling event crossed state lines and the proceeds were laundered by reporting on Itex's 2011 federal, state, and local tax returns these funds were legally obtained." (FAC at para. #90).

"On May 10, 2011, June 1, 2011, and June 7, 2011, Itex emailed approximately 669 Itex members in NYS and NJ, including plaintiff, on each of these days to promote an 'ITEX Hold-Em Poker Tournament' held at Fire & Ice in NJ on June 9, 2011. The email stated 'don't miss out!!!!!' and to call Castoro or Garcia at 732-669-9300 for details. Gamblers each paid Itex a $500 'buy-in' fee and Itex 'cut the pot' by charging gamblers up to 15% on the amounts they both won and lost. In excess of five (5) persons participated in the promotion and organizing of this gambling event and the proceeds exceeded $5,000. Itex's emails promoting this gambling event crossed state lines and the proceeds were laundered by reporting on Itex's 2011 federal, state, and local tax returns these funds were legally obtained." (FAC at para. #91).

"On February 1, 2012, Garcia emailed approximately 669 Itex members in NYS and NJ, including Patricia Adams and plaintiff, to promote gambling on sports Super Bowl XLVI that was held on February 5, 2012. These emails crossed state lines. Itex received bets in multiples of $250 and promoted this gambling by stating three (3) winners would receive $5,000, one (1) winner would receive $10,000, and that gamblers 'had a chance of turning $250 into $25,000.' In addition to receiving bets in multiples of $250, Itex 'cut the pot' by charging gamblers up to 15% on the amounts they both won and lost. On February 6, 2012, Itex members, including Patricia Adams, were emailed notice of the winners. This email crossed state lines. Patricia Adams was not a winner and Itex

deducted two unlawful debts of $250 each ($500) from her account plus a cut of approximately 10% of her $500 loss. In excess of five (5) persons participated in the promotion and organizing of this sports gambling event. Itex laundered the proceeds, which were in excess of $5,000, by reporting on its 2012 federal, state, and local tax returns these funds were legally obtained." (FAC at para. #92).

## The Court overlooked the controlling law regarding the collection of unlawful debts

The collection of an unlawful debt alone rising from illegal gambling triggers the

RICO statute even without a pattern of racketeering activity.

> "The RICO defendants can violate any subsection of 18 USC § 1962 if it collects or conspires to collect 'an unlawful debt.' 18 USC § 1961(6) defines 'unlawful debt' to include debt arising from the operation of illegal gambling. In other words, the collection of an unlawful debt itself violates RICO even without a 'pattern' of 'racketeering activity.'" (RICO Statement at pg. 19).

## The Court overlooked the intent of Congress and the controlling decisions

> "Congress mandated that RICO 'shall be liberally construed to effectuate its remedial purposes.' See section 904(a) of Pub.L. No. 91-452, 84 Stat. 922, 923, 947. The Supreme Court has repeatedly emphasized that courts are vested with extensive equitable powers to fashion appropriate remedies to redress unlawful conduct. See *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1 (1971). (RICO Statement at pg. 30 para. f)).

> Moreover, the Supreme Court has pointedly ruled that where "the public interest is involved . . . those equitable powers assume even broader and more flexible character than when only a private controversy is at stake." See *Porter v. Warner Holding, Co.*, 328 U.S. 395, 398 (1946), *Accord Virginian Ry. Co. v. Sys. Fed'n. No. 40*, 300 U.S. 515, 552 (1937)." (RICO Statement at pg. 31 para. g)).

### Count III
### A derivative action on behalf of ITEX and individual claims on behalf of Bal

The Decision stated "Count Three is dismissed because Bal [as a *pro se* litigant]

cannot prosecute a derivative action *pro se* on behalf of ITEX." (Decision at pg. 18).

**The Court overlooked the controlling decisions requiring ITEX to hire an independent attorney to represent ITEX**

ITEX's hiring of an independent  attornry to represent ITEX would allow the derivative action to go forward

"Case law and practice dictate that it is Frankfurt Kurnit Klein & Selz, a law firm that has represented ITEX for many years, which cannot represent ITEX.

An issue that recurs is the extent to which the same lawyer or law firm can represent the corporation, the alleged wrongdoers, both the corporation   and the alleged wrongdoers, or some other combination of parties.  When serious claims that directors or officers have harmed the corporation, as herein, the corporation needs counsel separate from the directors and officers.

 It would be is a conflict-of-interest for Frankfurt Kurnit Klein & Selz ['FKKS'] to represent ITEX.  The Model Rules of Professional Conduct as adopted by the House of Delegates of the American Bar Association afford some guidance.  Under Rule 1.7(b):

'A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to client or to a third person . . .' (Memo of Law at pgs. 10-11).

'In *Lewis v. Shaffer Stores Company,* 218 F. Supp. 238, 239 (S.D.N.Y. 1963), a derivative shareholder action, plaintiff moved for an order striking the subject corporation's answer and the appearance of Breed Abbott Morgan, a law firm that represented the corporation for many years [an identical situation with ITEX's law firm FKKS].  Plaintiff demanded 'the Corporation to appear by genuinely independent counsel.'  The question before the court is whether Breed Abbott Morgan should appear for the corporation.  The court concluded that 'under the circumstances, including the [serious] nature of the charges, and the vigor with which they are apparently being pressed and defended, I believe that it would be wise for the Corporation to retain independent counsel, who have had no previous connection with the Corporation, to advise it as to the position which it should take in this controversy.  See *Garlen v. Green Mansions, Inc.*, 9 A.D.2d 760, 193 N.Y.S.2d 116 (1st Dept. 1959); *Marco v. Dulles*, 169 F. Supp. 622 (S.D.N.Y. 1959), appeal dismissed 268 F.2d 192 (2d  Cir. 1959).'" (Memo of Law at pgs. 11-12).

**The Court overlooked claims presented on behalf of Bal**

Bal is a qualifying shareholder of ITEX and asserted *individual claims.* The court overlooked Bal's following claims:

1) The ITEX defendants rigged the shareholder elections and suppressed

   Bal's shareholder democracy. Bal alleged:

> "The defendants violated their fiduciary duty to Itex by suppressing shareholder democracy [including plaintiff Bal's shareholder democracy] ] of the election and voting held on December 13, 2013." (FAC at para. #107).

2) The ITEX defendants failed to provide Bal with information pursuant to

   U.S. Securities and Exchange Commission ("SEC") Rule 14a-7:

> "On May 4, 2013, in accordance with SEC Rule 14a-7, plaintiff demanded the contact information of Itex's shareholders to democratically communicate with shareholders prior to the election of directors and the voting upon other matters held on December 13, 2013" (FAC at para. #108).

3) The ITEX defendants failed to provide Bal with an accounting.

> "Plaintiff is a shareholder and demands an independent evaluation of Itex's internal controls and methods of financial accounting." (FAC at para. #123).

4) ITEX has refused Bal's:

> "Demand for the settlement reached on behalf of ITEX and its shareholders. David Polonitza, an ITEX shareholder, filed a derivative action against White, Best, and Wade (*David Polonitza v. Steven White, Eric Best, and John Wade,* Superior Court of the State of Washington for King County, No. 11-2-30760-3 SEA) (the 'Polonitza action')." (Plaintiffs Aff. at para. #87).

> "On December 28, 2012, a settlement was reached between the parties in the Polonitza action on behalf of ITEX and its shareholders. White, Best, and Wade have concealed the terms of the settlement. (Plaintiffs Aff. at para. #88). On behalf of ITEX, its shareholders, and [Bal], [Bal] demand[ed] that shareholders, including [him]self, be

provided with a copy of that settlement." (Plaintiffs Aff. at para.
#89).

Dated:  November 12, 2014

John Andries Bal, Jr.
John Andries Bal, Jr., Agent
85 Kenmare Street #35
New York, NY 10012
(212) 966-7576
nycjohn123@msn.com